# EXHIBIT B

**Wagstaff Declaration**

33085454.5

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LEISURE INVESTMENTS HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10606 (LSS)<br><br>(Jointly Administered) |

**DECLARATION OF ROBERT WAGSTAFF IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ENFORCING (A) THE
AUTOMATIC STAY AND (B) THE COURT'S ORDER COMPELLING DEBTORS'
FORMER OFFICERS AND OTHER REQUIRED PERSONS TO TURN
OVER RECORDS, AND (II) GRANTING RELATED RELIEF**

I, Robert Wagstaff, under penalty of perjury, declare as follows:

1. I am a Managing Director at Riveron Management Services, LLC ("**Riveron**"), and am duly authorized to execute this declaration (this "**Declaration**") on behalf of the Debtors. In addition, I have been employed and retained to serve as the Chief Restructuring Officer ("**CRO**") of the Debtors. By an order of the Court, dated April 3, 2025, I have also been authorized to serve as the Debtors' foreign representative in any court where recognition of the Chapter 11 Cases is deemed appropriate. I submit this Declaration in support of the *Debtors' Motion for Entry of an Order (I) Enforcing (A) the Automatic Stay and (B) the Court's Order Compelling Debtors' Former Officers and Other Required Persons to Turn Over Records and (II) Granting Related Relief* (the "**Motion**").[2]

---

[1] Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors is not provided herein. A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://veritaglobal.net/dolphinco, or by contacting counsel for the Debtors. For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

33084936.6

2.      I am familiar with the day-to-day operations and business and financial affairs of the Debtors, to the extent that information is currently available with respect thereto.  All facts set forth in the Declaration are based upon my personal knowledge of the Debtors' operations and financing, information learned from my review of relevant documents, information supplied to me from members of the Debtors' management or the Debtors' advisors, or my understanding based on my knowledge, experience, and information concerning the Debtors' operations.  If called to testify, I could and would testify competently to the matters set forth in this Declaration.

3.      On March 31, 2025 (the "**Commencement Date**"), certain of the Debtors commenced voluntary cases (collectively, the "**Chapter 11 Cases**") for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  On the Commencement Date, the Debtors submitted the *Declaration of Steven Robert Strom in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 10] (the "**First Day Declaration**").  On April 16, 2025, Controladora Dolphin, S.A. de C.V. ("**Controlodora**") also filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

4.      As discussed in the First Day Declaration and at the "first day" hearing held on April 2, 2025, the Debtors' existing board of directors/managers and officers, including myself, were recently appointed after the Prepetition First Lien Noteholders exercised their collateral rights to remove the Debtors' prior management (the "**Prior Management**"), as led by former Chief Executive Officer, Eduardo Albor (the "**Former CEO**").  Following the new board and officers' appointment, the Debtors have been diligently attempting to identify and obtain access to the Debtors' books, records, and facilities, including those located in Mexico.  One of the most pressing items necessary to obtain operational control over the Debtors is to gain access to the Debtors' Mexican headquarters (the "**Headquarters**"), which is an office building located at

Banco Chinchorro 87, 77504 Cancún, Q.R., Mexico. It is my belief and understanding that the Former CEO leased the Headquarters to Debtor Controladora, which has a possessory interest in such property.

5.     I understand that, on April 3, 2025, the Court entered its *Interim Order (I) Compelling Debtors' Former Officers and Other Required Persons to Turn Over Records and (II) Granting Related Relief* [Docket No. 38] (the "**Turnover Order**"). I am aware that the Debtors served the Turnover Order on various parties, including counsel to the Former CEO. Specifically, on April 4, 2025, the Debtors' counsel served the Turnover Order on the Former CEO's counsel by email and first-class mail, along with a letter (the "**Turnover Letter**"), demanding turnover of the Records. I was copied on the April 4 email from Debtors' counsel. A true and correct copy of the Turnover Letter and the email correspondence related thereto is attached to the Motion as **Exhibit C**. I understand that, in accordance with the Turnover Order, the Former CEO was required to provide the Records to the Debtors on or before April 11, 2025. The Debtors received no response from the Former CEO or his counsel prior to such deadline.

6.     The Riveron team and I have attempted to gain access to certain pertinent information through various means, but all attempts were either ignored or otherwise blocked by Prior Management or others acting on their behalf. For example, based on conversations with American Debtor operations team members, I understand that the Debtors' employees have been selectively instructed not to provide the management team with access to information. I am also aware that Riveron's emails to Debtors' employees have periodically been blocked. For example, the Riveron team also attempted a "test" email to Edwin Gonzalez, the Regional Director for the Debtors' U.S. operations, but the email was blocked due to an email "security policy," leading to

the conclusion that the Riveron email addresses were being blocked. A copy of the test email is attached hereto as **Exhibit 1**.

7. In furtherance of the Debtors' efforts to access and take control over their property and other necessary records, the Debtors have obtained the assistance of local Mexican attorneys from the law firms, Guerra Gonzalez Abogados and Nassar Lozano y Asociados (collectively, the "**Mexican Counsel**") to, among other things, ensure the Debtors are complying with local laws.

8. On April 4, 2025, the Superior Court of Justice of Mexico City issued an order (the "**Injunction**") authorizing Steven Strom, myself, and Riveron to access and control the bank accounts, records, tokens, documents, contracts, servers, computer programs, business software, human resources controls, and any instrument or document and resources that are necessary to carry out the Debtors' business obligations and operations. I understand that the Injunction also ordered the Former CEO and the Prior Management not to present themselves as representatives of the Debtors, carry out or instruct any act to be carried out on behalf of the Debtors, or allow the Debtors access to the resources necessary to carry out the Debtors' business obligations and operations. A copy of the Injunction (including an unofficial English translation) is attached to the Motion as **Exhibit E**.[3]

9. The Headquarters contains books, records, and other property, including servers that I understand house critical operational information, especially with respect to the Debtors' Mexican operations. Such records and other property are crucial to the Debtors' operations and ability to effectively prosecute the Chapter 11 Cases. I understand that the records stored at the Headquarters include, but are not limited to, accounting and financial information and history,

---

[3] Exhibit E attached to the Motion is not a certified translation but is true and accurate to my understanding.

33084936.6

4

vendor lists, contracts, employee history and records, and payroll information. I also understand that the Debtors' domestic and foreign locations do not have access to most, if not all, of the financial reporting and other data available at the Headquarters. It is critical that the Debtors gain access to their Headquarters so that they may properly operate their businesses and fulfill their roles as debtors-in-possession in bankruptcy.

10. On April 11, 2025, myself and others at Riveron, under the guidance of Mexican Counsel and other local authorities, attempted to gain access to and control of the Headquarters in accordance with the Injunction and applicable Mexican laws. The timeline of events pertinent to that attempt follows.

11. I arrived in Mexico on April 11, 2025. At 2:00 p.m. (local time), I left the airport for the hotel. I met my colleague from Riveron, Matías Marambio Calvo, at the hotel at which we were staying.

12. At approximately 3:45 p.m. (local time), Mr. Calvo and I met with Mexican Counsel, who had organized the procedures for gaining control of the Headquarters (the "**Procedures**") and assembled the team for carrying out the Procedures. In addition to Mr. Calvo, Mexican Counsel, and me, the team comprised: (i) three patrol cars of local police; (ii) two locksmiths; (iii) personal security guards for Mr. Calvo and me; (iv) five members of an outsourced building security firm; (v) an actuary; and (vi) a notary. It is my understanding that, under Mexican law, the actuary essentially acts as an extension of the Mexican court and is responsible for the enforcement of the court's orders. It is my understanding that the notary is a legal witness who documents the proceedings.

13. The team initiated the Procedures at 4:30 p.m. (EST). As legal representatives for the Debtors, Mr. Calvo and I were required to bring identification cards. I understand that one of us was required to be present while the Procedures were implemented.

14. We entered the Headquarters without any resistance from the employees at the street-front entrance.

15. Accompanied by the actuary and Mexican counsel, Mr. Calvo and I went through the building looking for employees. As we did this, the locksmiths on our team began changing the locks in the building.

16. I encountered several groups of employees, including data analytics staff, hardware support staff, purchasing agents, and reservations and group sales representatives. I instructed them to stop working on the company computers and briefly explained why I was in the building. I was not met with resistance from any of the employees I encountered. The process of looking for and speaking to employees took approximately one hour.

17. Eventually I came across Alfonso Delgado, the Debtors' former Chief Operating Officer. Mr. Delgado was advised by Mexican Counsel that his powers had been revoked and that he was to leave the building. However, after being asked to leave, I understand that Mr. Delgado re-entered the building, went upstairs, and began printing documents from the printer. I also understand that Mr. Delgado remained in the building along with other staff members, who at that point had brought their own notary to record the events taking place.

18. I also met with an employee who worked for the Debtors' legal department. While speaking to the employee, she was on her phone texting the entire time and was not responsive to my questioning.

19. I observed Mexican Counsel enter a security room where security cameras were located. I understand that they disabled outside access to the closed video network for the purposes of preventing others from monitoring, modifying, or otherwise tampering with evidence.

20. After a short period of time, I then went to the entrance of the building to wait for Mexican Counsel, locksmiths, notary, and actuary to complete the Procedures. Several employees and Mr. Delgado were also present and observing. I saw Mr. Delgado and other employees making phone calls. I also observed at least two people across the street watching the building.

21. At one point, a white car arrived at the Headquarters. After coming to a stop, three well-dressed men exited the car and approached local police officers. The men represented themselves as senior operations representatives for the Debtors.

22. Later, a local police vehicle drove by the building. The vehicle honked its horn and came to a stop. One of the police officers outside of the Headquarters went over to the vehicle and spoke to the driver.

23. At that point, my personal security guards recommended that I leave the Headquarters and return to the hotel for my safety. I left the Headquarters around 6:45 p.m. (local time), at which time changing the remaining locks was the only remaining task required to complete the Procedures and effectuate control of the Headquarters. Personal security guards remained at the Headquarters with Mr. Calvo.

24. At approximately 7:30 p.m. (ET), I confirmed with Mr. Calvo that all employees and local police had left the Headquarters, and the Debtors' hired security guards were the only individuals that remained onsite.

25. Later that evening, Mr. Delgado texted me to purportedly ask logistical questions about employees' ability to enter the building the following morning. I cannot recall how Mr. Delgado obtained my phone number.

26. After I answered his question, Mr. Delgado, on instruction from the Former CEO, contacted Mexican Counsel to invite Mexican Counsel and me back to the Headquarters to "see if we could work something out." After discussing the offer with Mexican Counsel, we determined not to return to the building. Instead, Mexican Counsel offered to meet the Former CEO at Mexican Counsel's office in Mexico City the following Monday. To my knowledge, that meeting never occurred.

27. I went to sleep at 11:30 p.m. (local time), and did not wake up until approximately 6:30 a.m. (local time) on April 12, 2025. When I woke up, I checked my phone and saw a series of text messages beginning at approximately 12:45 a.m. (local time). The email messages described in real time the Former CEO returning to and re-taking control of Headquarters (including the Records located therein). These text messages attached photos taken while the Former CEO re-took the Headquarters.

28. As a result of these communications, it is my understanding that the Former CEO returned to the Headquarters at 12:45 a.m. (local time) on April 12, 2025 accompanied by approximately twenty armed men purporting to be state police officers. The Former CEO and these men forcibly entered the Headquarters, and the Debtors' security guards were forced to leave.

29. Pursuant to Mexican Counsel's advice, my team and I have not attempted to go back to the Headquarters. Neither I, nor anyone else on the Riveron team, have heard from the Former CEO since he re-took control of the Headquarters.

30. It is my understanding based on conversations with Mexican Counsel that all of the Procedures were properly executed in accordance with Mexican law. Considering the number of local police officers that arrived at the Headquarters with the Former CEO and the potential for serious (possibly violent) confrontation, I believe there was nothing that I or the others on my team could have done differently to have changed the outcome.

31. I further understand that Mexican counsel is analyzing the remedies available to us under Mexican law and undertaking steps to pursue such remedies with local authorities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 21, 2025                                                           */s/ Robert Wagstaff*

                                                                                                Robert Wagstaff
                                                                                                Chief Restructuring Officer

# **EXHIBIT 1**

**Test Email**

33084936.6

| | |
|---|---|
| **From:** | Michael Flynn |
| **To:** | Greecher, Sean |
| **Cc:** | Mielke, Allison S.; Steven Strom; Robert Wagstaff; Kochenash, Jared W. |
| **Subject:** | FW: Sending you a test message |
| **Date:** | Monday, April 7, 2025 1:53:35 PM |
| **Attachments:** | Sending you a test message.msg |
| | Image.jpeg |

Sean,

It appears that the company has blocked Edwin from receiving emails from Riveron. See below from my attempt, and attached from Mike Flynn. I tried sending one form my Gmail and it didn't bounce back.

Rob

**ROBERT WAGSTAFF** *Restructuring & Turnaround*
Riveron I riveron.com
C: +1.305.586.5558
600 Brickell Avenue, Suite 2550, Miami, FL 33131, USA

**From:** Microsoft Outlook <MicrosoftExchange329e71ec88ae4615bbc36ab6ce41109e@riveron.com>
**Sent:** Monday, April 7, 2025 13:41
**To:** egonzalez@msq.cc <egonzalez@msq.cc>
**Subject:** Undeliverable: Sending you a test message

Your message to egonzalez@msq.cc couldn't be delivered.

## Security or policy settings at msq.cc have rejected your message.

| **Robert.Wagstaff** | **Office 365** | **msq.cc** |
|---|---|---|
| Sender | | **Action Required** |
| | | Security or policy violation |

### How to Fix It

The recipient's email server won't accept your message because it appears to violate their security or policy settings. Check the **Reported error** below to see if you can determine why it was blocked. Then try one or more of the following:

- If the error mentions SPF, DKIM, or DMARC issues, forward this message to your email admin for assistance.
- The recipient's email server might suspect that your message is spam. Follow the guidance in this article: E-mailing Best Practices for Senders. Then resend your message.
- If the error suggests your message is too large, try to reduce the size of your attachment. If that isn't possible, place the file on a publicly accessible cloud storage location, like OneDrive. Then add a link to the file in your message, and resend the message.
- Contact the recipient (by phone, for example) and tell them to ask their email admin to add you or your email domain to their allowed senders list.

If the problem continues, forward this message to your email admin. If you're an email admin, refer to the **More Info for Email Admins** section below.

Was this helpful? *Send feedback to Microsoft*.

### More Info for Email Admins
*Status code: 550 5.7.1*

This error occurs when the recipient's domain has security or policy settings that reject the sender's message. However, we were unable to determine the specific setting that's causing this rejection. Usually the error is reported by an email server outside of Office 365. Common issues include the following: the receiving server suspects the message is malicious or spam; the Sender Policy Framework (SPF) record for riveron.com is incorrectly configured or doesn't exist; or the message includes an attachment larger than the receiving server will accept. Try one or more of the following:

**Review the reported error** - Check the **Reported error** shown below to help determine what the issue might be. For example, if the issue is related to an SPF failure, the reported error will usually include the acronym "SPF" or the phrase "Sender Policy Framework."

**Correctly configure your SPF records** - If you're the sender's email admin, make sure your domain's SPF records at your domain registrar are properly configured. Office 365 supports only one SPF record (a TXT record that defines SPF) for your domain. Include the following domain name: **spf.protection.outlook.com**. If you have a hybrid configuration (some mailboxes in the cloud and some mailboxes on premises) or if you're an Exchange Online Protection standalone customer, add the outbound IP address of your on-premises servers to the TXT record. To learn how, see Customize an SPF record to validate outbound email sent from your domain and External Domain Name System records for Office 365.

**Unable to relay** - If the **Reported error** indicates a problem with relaying (e.g. "unable to relay"), then the email server that reported the error likely isn't set up correctly to receive and relay messages from the sender's domain. This server will usually be one of your on-premises servers in a hybrid environment, a smart host email service that you're trying to route messages through, or possibly even an email hosting service you used in the past yet still have mail flow settings pointing to (e.g. your MX

record at your domain registrar still points to your previous email service provider). Check **Error reported by** shown below to determine what domain, service, or server is reporting the error. The email server needs to be configured to either accept messages from anonymous users or to include the sending domain or IP in its list of authenticated senders. On an Exchange server, you can set this up in the server's receive connector. If it's a smart host managed by another service or partner, contact the service or partner to configure their servers to accept and relay messages from your senders. Also, work with your domain registrar to make sure your MX records are properly configured.

**Contact the recipient's email admin** - For some scenarios, you can fix the issue by contacting the email admin at the recipient domain to ask them to add the sender's email address or your domain to their allowed senders list, or to relax the setting that's causing the rejection.

For more information and tips for fixing this issue, see [Fix email delivery issues for error code 5.7.1 in Office 365](#).

## Original Message Details
| | |
|---|---|
| Created Date: | 4/7/2025 5:41:21 PM |
| Sender Address: | Robert.Wagstaff@riveron.com |
| Recipient Address: | egonzalez@msq.cc |
| Subject: | Sending you a test message |

## Error Details
| | |
|---|---|
| Error: | 550 5.7.1 550 5.1.1 Delivery failed due to unknown error. - gcdp e9e14a558f8ab-3d703c07cfcsi481305ab.88 - gsmtp |
| Message rejected by: | mx.google.com |

## Notification Details
| | |
|---|---|
| Sent by: | DM4PR14MB6325.namprd14.prod.outlook.com |

## Message Hops

| HOP | TIME (UTC) | FROM | TO | WITH | RELAY TIME |
|---|---|---|---|---|---|
| 1 | 4/7/2025 5:41:21 PM | BN9PR14MB5035.namprd14.prod.outlook.com | BN9PR14MB5035.namprd14.prod.outlook.com | mapi | * |
| 2 | 4/7/2025 5:41:21 PM | BN9PR14MB5035.namprd14.prod.outlook.com | DM4PR14MB6325.namprd14.prod.outlook.com | Microsoft SMTP Server (version=TLS1_2, cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) | * |

## Original Message Headers

```
ARC-Seal: i=1; a=rsa-sha256; s=arcselector10001; d=microsoft.com; cv=none;
 b=w+AvTYnHAaQY8VlPMRM2mIN/453i0EVDpkgeOMHjT4xyZ6RE0+7NX5SmcSfrxV6tECIrHrCyMT/yy3S8uRIYiz13bHiaW3Pk9LLCxJjRwxECAUvG/DV6JgdIJvO
 k1qgUvBxngTYXkYFu5sDriAR9RPValPGSu+K1v64dy7XOTYIjNBgMryWac5zKjwZC27bcuC4amejax7L85u1c9i71jqI5E8rkG0YY3F7FU1PmF+4p7ELIyVIoM9JR5
 D0pXdAoPCp3avaxlJLYSffAFL6v/WyxwIuDOgRYKhwrR7lAEwK8MdsnNpJi4DM3CS5DM3YTZhbqim7yvpLY0JScrYS/2g==
ARC-Message-Signature: i=1; a=rsa-sha256; c=relaxed/relaxed; d=microsoft.com;
 s=arcselector10001;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-Exchange-AntiSpam-MessageData-ChunkCount:X-MS-Exchange-
 AntiSpam-MessageData-0:X-MS-Exchange-AntiSpam-MessageData-1;
 bh=s+NkVwD5EqNzfbW7Cgb5ZPKtrnC7sjwvG2VJ7Quu38g=;
 b=ahuqIY9rVXDxgpkki+FZxbI31iE1IksTb48ZgBL14dyiLdQXTUIAGbqRYIqhFcFb414+51B0ZW7YggPjaUUwLbbxMJY2MO7/h5atx6jx7h97YptgrfmyvY+oMfC
 zqATi1VHCzU66pHH5zNJRtK6mGE9J6ttHpAfAkyvuKZm5rOJRMNXb8cLrAsI5Y6Gd91umx99QQeC+2P9sq9nZawAr2ki7aiTZ7VOYasAsG1dMBo7tNkwsmnRr7XVad
 n16Z4VXsNAPwixND3q68kvTb5ML6QeeqbbRFknjGkEVAt2MqgueS6Jx3OxMZAwUanNC5r+emVTkOt7fZ0IX+PiIJB3X8g==
ARC-Authentication-Results: i=1; mx.microsoft.com 1; spf=pass
 smtp.mailfrom=riveron.com; dmarc=pass action=none header.from=riveron.com;
 dkim=pass header.d=riveron.com; arc=none
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=riveron.com;
 s=selector2;
 h=From:Date:Subject:Message-ID:Content-Type:MIME-Version:X-MS-Exchange-SenderADCheck;
 bh=s+NkVwD5EqNzfbW7Cgb5ZPKtrnC7sjwvG2VJ7Quu38g=;
 b=UjYsQYUVMkbMvbhMc8S13cJfp5neRjnUO2uqDPb1M449KYE3XKASU6WqjE/ZGp8QbG8FdaX/K4OjAcBl04RYKolNKih/99IF6ofmwo/EJtDkzZfgoEsorxIKYK4
 DszSACXGyDUP1QkFemCzv57g/VtZkI2IpHkcrTbcCRIdB7s7f8SHexgoMSH/OBacn7G3dCECpQ/1yd5DbyZ1Wj5SiXAYjWs/Qz+CuUJPSkaunJX57vIbMvpPxqT8VE
 vQra95GOkmupp4MXoPIcdhLELJAVBVCOL+pHim8TLQUwtXiFV3p9VLjXfUN41r5jWbyYBBE8BgCBQm1Z4hSwFsUKaV5ng==
Received: from BN9PR14MB5035.namprd14.prod.outlook.com (2603:10b6:408:100::10)
 by DM4PR14MB6325.namprd14.prod.outlook.com (2603:10b6:8:106::15) with
 Microsoft SMTP Server (version=TLS1_2,
 cipher=TLS_ECDHE_RSA_WITH_AES_256_GCM_SHA384) id 15.20.8606.35; Mon, 7 Apr
 2025 17:41:21 +0000
Received: from BN9PR14MB5035.namprd14.prod.outlook.com
 ([fe80::4a61:2990:b092:199]) by BN9PR14MB5035.namprd14.prod.outlook.com
 ([fe80::4a61:2990:b092:199%3]) with mapi id 15.20.8606.033; Mon, 7 Apr 2025
 17:41:21 +0000
From: Robert Wagstaff <Robert.Wagstaff@riveron.com>
To: "egonzalez@msq.cc" <egonzalez@msq.cc>
Subject: Sending you a test message
Thread-Topic: Sending you a test message
Thread-Index: AQHbp+QzWbH1RcUPbE2DFIImz1c6Ig==
Date: Mon, 7 Apr 2025 17:41:21 +0000
Message-ID: <BN9PR14MB503502D39A80899A6D559DB3EBAA2@BN9PR14MB5035.namprd14.prod.outlook.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
x-ms-reactions: allow
authentication-results: dkim=none (message not signed)
 header.d=none;dmarc=none action=none header.from=riveron.com;
x-ms-publictraffictype: Email
x-ms-traffictypediagnostic: BN9PR14MB5035:EE_|DM4PR14MB6325:EE_
x-ms-office365-filtering-correlation-id: e9df395e-ff9e-492e-3e47-08dd75fb68d8
x-ms-exchange-senderadcheck: 1
```

```
x-ms-exchange-antispam-relay: 0
x-microsoft-antispam: BCL:0;ARA:13230040|1800799024|376014|366016|8096899003|38070700018;
x-microsoft-antispam-message-info: =?us-ascii?Q?pux5eKpIpUhnwJr+xAQ7fBLd5hK9/4j5dg35IOMVC0uhAww2DfQYs8grVm2h?=
 =?us-ascii?Q?XTgUKWcgzpRUZA775Nmx3NfszE39qh2cTtZQNrsEVCV8n24aQoYYNBG1KRtC?=
 =?us-ascii?Q?B2fM3Dfcmh3wn8eABH3RF5+/0K2zHrLICMRbUcy0+DdKW3mp3663n8rHD8JM?=
 =?us-ascii?Q?m+rLZ7vSrG5xIHamR+QY3YdaN69cH6ZfpzcdyDd6bVvlN0+v5lMLohx+5w1G?=
 =?us-ascii?Q?0FGBtYeyR8TWOX4YLa+kBL4A/2zrFI18kWyV3Ot2Hj5//ycQdRvSF7Ps8tjS?=
 =?us-ascii?Q?IFuNvc/uZtIZuCYXWEhWehPDKTb/LJQerVWHjGhUbgyR4UFWVy7W5lB/i87d?=
 =?us-ascii?Q?1J3q+cUs57T0hrnhRw5DMw+EAX1ZtfzJTsv4n1kVlUwIbIGPDlhGE5aYUnOS?=
 =?us-ascii?Q?bVPm8GmqzMCD1eLqllGI5VKHe//vrVxMshiT8IBFXLbPfXnIkGpWafrcP0Be?=
 =?us-ascii?Q?pMEWLo22y5nLMV/CtqH4BlkcQWLSdBeFUnH0PuZkU3mvDFQlCejYJk6O3/lZ?=
 =?us-ascii?Q?ISfyVZ88RmpU0W+zBNP4Zx75ubnXTeToLBluvNc4PEOO6TX8i1JYXy23yELZ?=
 =?us-ascii?Q?3X8A0e7B8vFfLUdtk4S1V5LKNJ/ZfSXNp4KNyQpsXGyZ15AeZpYd4S02xfDS?=
 =?us-ascii?Q?3jjDZFb3vUaF70TmVVTIGPPQLPc4m6lFXKLYEFjflY3mrbVge3/UwZLjU78p?=
 =?us-ascii?Q?EPYsa6w3p7WX4ZnHAhqK/r9XQ0oU3UnyzYrFF5E+Ku7v+Rf9wZRIMkEn1Fnz?=
 =?us-ascii?Q?l5KT2QxLICSdblbrpWG2RGOME8sjflb+a6jscupNW+CTJctUmxEvH/IvJmfz?=
 =?us-ascii?Q?xsSB85eSJJX/MxBPxa8t6M4yKt0rkgEoxRjt+uEULXlRAM25lbDYy2QEZrzQ?=
 =?us-ascii?Q?WeUgsPEHd06FxQJF9RW6xNRm7wQa1LGRjKbPVDUPs+ZmY5zYuJPdiQrnpFXF?=
 =?us-ascii?Q?HHelOtDNBWNKgMfJCzx1v4X8n1S1pop9NKtPpOfo9pKdGmjAX1VexqsvQNqI?=
 =?us-ascii?Q?XUDvU+w+xzzNvcfPyyk3iFOWyBf3e88D/dI5joFeQl+LMqI9OoiGKVvupiJy?=
 =?us-ascii?Q?+hlq2sWIFCACFCug6zDoCRHU+qvwUNe5nsLN9YRYhmFydfx6Siz0Mm0MRxUn?=
 =?us-ascii?Q?rqJ7+MEjkr1vmbAevu/T9d5lz572HT+ri3Y/dZkwXXzYQ3asqtretUQwTSBs?=
 =?us-ascii?Q?YJ8s0DWVLkT/y6mavG0iUPt6mLCPGOH32RrDM69HfGtrSBbP1hpLs/GzAXmf?=
 =?us-ascii?Q?IMXqfAfriElntJWiLQJb5RrQ7vpssHCbz3WDj5wMgzjr7hoGoa9mCP6Iw8cb?=
 =?us-ascii?Q?cctnCNsVNOnpRvoHKqRLFCe/tyx9uTPXfgso0bU5d6udgaeodwC1Tzr0OX2R?=
 =?us-ascii?Q?m0Cg1lVeEt92T5rxI1LDFHoU5ZU0zuEW53kH3Mc20IY+p8pCN1N6pMOb1NcS?=
 =?us-ascii?Q?thVreVcG3dE5yhj34QuehEoFiTye62kb?=
x-forefront-antispam-report:
CIP:255.255.255.255;CTRY:;LANG:en;SCL:1;SRV:;IPV:NLI;SFV:NSPM;H:BN9PR14MB5035.namprd14.prod.outlook.com;PTR:;CAT:NONE;SFS:(13230040)(1800799024)(376014)(366016)(8096899003)(38070700018);DIR:OUT;SFP:1102;
x-ms-exchange-antispam-messagedata-chunkcount: 1
x-ms-exchange-antispam-messagedata-0: =?us-ascii?Q?ugrUC8CzbB6795PZ0A3hdOM8CApvyDLi8BEbfjF+PaOjOHOeseLGhIT72PQo?=
 =?us-ascii?Q?KcsFM4q3MkaaTkNQC29xYfkWuaOLu+fQ+4xqCMhDya3oAm71rs1k1RiuwZ1d?=
 =?us-ascii?Q?gqYRFsTmIDbcHhxscbV2ivRTnMLs28OsXTjUW0QouKHg5MVL5JCged9/wKjs?=
 =?us-ascii?Q?OP/ITDXhyEkFalON4Gv6sWXJLrYl29gZuLywDK7QdrjpCto9kN/9S3XIZEGr?=
 =?us-ascii?Q?z+xmzYWQi2sAMp+iPk6i/ckJwAkb69yGe3GHjN6bcI4umAkpN2FvXgrlgs52?=
 =?us-ascii?Q?rUXE50wUSwU9HcqsPX1fRwKTReskfSkO6BfEJEaNuv8remO+BTuSx9rzf5C6?=
 =?us-ascii?Q?lcG1461upUaV1bWO70i/SPj2Ar1dvudBPsUxZCarWxdyycN1dnKICpmR+v3C?=
 =?us-ascii?Q?QHxTghgQekkaK/5kcFAsgeE1mCXErg85o2Mh3TYLck8dNt5t19FJiDkNR4c9?=
 =?us-ascii?Q?aSRhfxWo/QJlIEPsG3OFM9eR+XF8xCqQSo4wK4X3UwmpH1vTGtqwmxpetaXs?=
 =?us-ascii?Q?lgV5iv9KbUvRjvvGEDkUZ71J+fulk5XoDrqf3RwCS3vs2zWuqqTnD2aXy2yS?=
 =?us-ascii?Q?EPj65kHmjGhLWpXDfqt454ZOLL9v5AoE/qw9FKvTxe1+9MzENHC0x5fRowoI?=
 =?us-ascii?Q?sQzvYNlbHZiWyowJGMpklK3+lcNr5j1tENAWA2RVAq62PgBcq9pYTgsnAVW/?=
 =?us-ascii?Q?LFBboYqaQCGdiJWhGFk9J8DM7WkXWaD1TysDhYcQr8ius4ea75THxggpnk3N?=
 =?us-ascii?Q?t/riQT2z4z0ZpLsenR8At/rAHi21WJ9pSTwnNTn5DKRA+J/5aGEzuCTiHTt5?=
 =?us-ascii?Q?oaPQDI9DmPHzxuYY7p7mnMd48NIQ2FlTgAMj3y+2GS5OFz7c62KQYCPwF3pE?=
 =?us-ascii?Q?35V6MGsLNSGFEHz24Ind0C0Ad/mMeBAbSqAVWQmhN1NHxilOoIEkyM4KWtm7?=
 =?us-ascii?Q?e228dpSHYRZmp/uG5yDtOgyMJcj0/bq9a4/4QhAoP0EvjqYao1qTm509EGeG?=
 =?us-ascii?Q?8cok2xLiqz4e3z47Wh1ryIR+F3TZsV0ed1pRqDt1BXtIrGoWOy6umx/NcwGo?=
 =?us-ascii?Q?rpMxg6BvPfNws7BgD//exDHkzLanhtngufxOOvAm9Q+GJQ9FYy6RNtbyaxn7?=
 =?us-ascii?Q?T/ms7J7sKyri8uvO0AD2DP37rH4XL2zMo+K1o2nXd2l+YRrW6W6GttMQTuEw?=
 =?us-ascii?Q?POEtqWW5FRYBQaqu8aEjBKWMdaz2eoc31Ao03BtPAIHQOGSRewBj1XNkdw1w?=
 =?us-ascii?Q?os+QjwkdCCsL3CWFV2k6FvmuQ1DthxU1kmB5+laF5kVayY4rjr0U1uStLd3C?=
 =?us-ascii?Q?vnLNJ5bcrLUVsdJd47T0plm5zEOJkuJA/ltiraN8Otj7Pt2a2aNj6RLSDqpk?=
 =?us-ascii?Q?PKrHe0N4VY7+WYedZ7dMpmNnPX5DWSu9ZgXBVv1yXmwAbinb2RzUFBVT3+V7?=
 =?us-ascii?Q?T32I5jgsEdlUm4/4CGEChFcASi2C/GBggyY005y2QpDDcB3O6rCMPDOubC3hN?=
 =?us-ascii?Q?SchVi6yvXZXJ5ROgphZ+lvnv5b2qCWAoacHqF831L5WOjK+sh4kUcBmS8BRX?=
 =?us-ascii?Q?CAduIJnJakx7e8qD3ixp7BLek5K7Hhe8sRt0YwxaZgq0G/0PbvOf6dwGM/TL?=
 =?us-ascii?Q?40epmZiJqUEJUNLm4HV7d+4=3D?=
Content-Type: multipart/alternative;
        boundary="_000_BN9PR14MB503502D39A80899A6D559DB3EBAA2BN9PR14MB5035namp_"
MIME-Version: 1.0
X-OriginatorOrg: riveron.com
X-MS-Exchange-CrossTenant-AuthAs: Internal
X-MS-Exchange-CrossTenant-AuthSource: BN9PR14MB5035.namprd14.prod.outlook.com
X-MS-Exchange-CrossTenant-Network-Message-Id: e9df395e-ff9e-492e-3e47-08dd75fb68d8
X-MS-Exchange-CrossTenant-originalarrivaltime: 07 Apr 2025 17:41:21.2128
 (UTC)
X-MS-Exchange-CrossTenant-fromentityheader: Hosted
X-MS-Exchange-CrossTenant-id: 9ce475dd-134b-4608-a9e3-0fa8db7271ad
X-MS-Exchange-CrossTenant-mailboxtype: HOSTED
X-MS-Exchange-CrossTenant-userprincipalname:
JfQWLqQ7Io2rIpBlrxn+04nJMoWkayj841dJig5jnKvdYxD01LudvT0PY4fC6MmqktZ73n7mK/oUl6jRQQ7nRnYBUINcVyUErcY7SjK5pY4=
X-MS-Exchange-Transport-CrossTenantHeadersStamped: DM4PR14MB6325
```

NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution of this e-mail is prohibited. If you have received this message in error, please contact the sender and destroy all copies (and attachments) of the original message.