## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LEISURE INVESTMENTS HOLDINGS LLC, *et al.*,[1] | Case No. 25-10606 (LSS) |
| | (Jointly Administered) |
| Debtors. | **Ref. Docket Nos. 9, 40, 134, and 213** |

**FOURTH INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE, (IV) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (V) MODIFYING THE AUTOMATIC STAY, AND (VI) SCHEDULING A FINAL HEARING**

Upon the motion, dated March 31, 2025 [Docket No. 9] (the "**DIP Motion**"), of Leisure Investments Holdings LLC ("**Intermediate Parent**") and certain of its affiliates that are debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Cases**"), seeking entry of an interim order [Docket No. 40] (the "**First Interim Order**") and a final order (the "**Final Order**") pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(l), 364(c)(2), 364(c)(3), 364(d)(l), 364(e), 507, and 552 of chapter 11 of title 11 of the United States

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are as follows: Leisure Investments Holdings LLC (7260); Triton Investments Holdings LLC (6416); MS Leisure Company (7257); Icarus Investments Holdings LLC (2636); Ejecutivos de Turismo Sustentable S.A. de C.V. (5CA4); Dolphin Capital Company, S. de R.L. de C.V. (21H8); Dolphin Leisure, Inc. (7073); Dolphin Austral Holdings, S.A. de C.V. (6A13); Aqua Tours, S.A. de C.V. (6586); Viajero Cibernético, S.A. de C.V. (1CZ7); Promotora Garrafón, S.A. de C.V. (0KA2); Marineland Leisure, Inc. (7388); GWMP, LLC (N/A); Gulf World Marine Park, Inc. (0348); and The Dolphin Connection, Inc. (0322). For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

Code (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1, 4001-1, 4001-2 and

9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware

(the "**Local Rules**"), that, among other things:

>    (i)    authorizes the Debtor designated as "Borrower" under, and as defined in, the DIP Credit Agreement (as defined below) (the "**Borrower**") to obtain, and the other Debtors as guarantors (the "**DIP Guarantors**") under the DIP Loan Documents (as defined below) to unconditionally guaranty, jointly and severally, the Borrower's obligations in respect of, senior secured priming and superpriority postpetition financing, which if approved on a final basis would consist of a term loan facility for up to $18,000,000 (the "**DIP Term Loan Facility**" and together with the Roll Up DIP Facility (as defined below), collectively, the "**DIP Facility**" and loans extended under the DIP Facility, including the Roll Up DIP Loans (as defined below), the "**DIP Loans**"), pursuant to the terms of (x) this Interim Order (as defined below), (y) that certain Debtor-In-Possession Credit Agreement, dated on or around April 7, 2025 (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with its terms, the "**DIP Credit Agreement**", attached as **Exhibit A** hereto),[2] by and among the Borrower, the DIP Guarantors, GLAS USA LLC, as administrative agent for the DIP Lenders (in such capacity, and as administrative agent under the Roll Up DIP Facility, collectively, the "**DIP Administrative Agent**"), GLAS Americas LLC, as collateral agent (in such capacity, and as collateral agent under the Roll Up DIP Facility and together with the DIP Administrative Agent, the "**DIP Agent**"), and the other financial institutions party to the DIP Credit Agreement as "Lenders" under, and as defined in, the DIP Credit Agreement (together with the Roll Up DIP Lenders (as defined below), collectively, the "**DIP Lenders**," and together with the DIP Agent and any other party to which DIP Obligations (as defined below) are owed, the "**DIP Secured Parties**"), in substantially the form attached to the DIP Motion, and (z) any and all other Loan Documents (as defined in the DIP Credit Agreement, and together with the DIP Credit Agreement, collectively, the "**DIP Loan Documents**"), to: (A) fund, among other things, to pay costs, fees, and expenses related to the care and welfare of animals, ongoing working capital, general corporate expenditures and other financing needs of the Debtors, (B) subject to entry of a Final Order (as defined below), convert $36,000,000 of the outstanding principal amount of the Prepetition First Lien Secured Obligations (as defined below) to DIP Obligations under the DIP Loan Documents, as provided in such Final Order (the holders of such rolled up Prepetition Secured Obligations (as defined below), the "**Roll Up DIP Lenders**", and the administrative agent and collateral agent for the Roll Up DIP Lenders, the "**Roll Up DIP Agent**", and together with the Roll Up DIP Lenders, collectively, the "**Roll Up DIP Secured Parties**"); and such converted Prepetition Secured Obligations, (the "**Roll Up DIP Loans**," and such credit facility, the "**Roll Up DIP Facility**" and the obligations

---

[2] Unless otherwise specified herein, all capitalized terms used herein without definition shall have the respective meanings given to such terms in the DIP Credit Agreement.

thereunder, the "**Roll-Up DIP Obligations**"), (C) pay certain adequate protection amounts to the Prepetition First Lien Secured Parties (as defined below) as described below, (D) pay certain transaction fees and other costs and expenses of administration of the Cases, and (E) pay fees and expenses (including reasonable attorneys' fees and expenses) and interest owed to the DIP Secured Parties under the DIP Loan Documents and this Interim Order;

(ii)    approves the terms of, and authorizes the Debtors to execute and deliver, and perform under, the DIP Loan Documents and authorizes and directs the Debtors to perform such other and further acts as may be required in connection with the DIP Loan Documents and this Interim Order;

(iii)    subject to the Carve-Out (as defined below), grants (x) to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, Liens on all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, which Liens shall be senior to the Primed Liens (as defined below) and shall be junior solely to any valid, enforceable and non-avoidable Liens that are (A) in existence on the Petition Date (as defined below), (B) either perfected as of the Petition Date or perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code, and (C) senior in priority to the Prepetition First Lien Secured Liens (as defined below) after giving effect to any intercreditor or subordination agreement (all such Liens, collectively, the "**Prepetition Prior Liens**") and (y) to the DIP Secured Parties, pursuant to section 364(c)(1) of the Bankruptcy Code, superpriority administrative claims having recourse to all prepetition and postpetition property of the Debtors' estates, now owned or hereafter acquired and the proceeds of each of the foregoing, including,[3] upon entry of this Interim Order, any Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof, and upon entry of the Final Order, the proceeds of any Avoidance Actions (as defined below);

(iv)    authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including Cash Collateral in which the Prepetition First Lien Secured Parties and/or the DIP Secured Parties have a Lien or other interest, in each case whether existing on the Petition Date, arising pursuant to this Interim Order or otherwise, which liens shall have the priority set forth herein and shall be subject to the Carve-Out;

(v)    vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order;

(vi)    authorizes the Borrower at any time prior to the earlier of 9 months from the Petition Date and the entry of the Final Order to borrow under the DIP Facility in an aggregate outstanding principal amount that will not exceed $18,000,000, and authorizes the DIP Guarantors to unconditionally guaranty such obligations jointly and severally;

---

[3] As used herein, the words "including" or "include" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

(vii)    grants the Prepetition First Lien Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition First Lien Adequate Protection (as defined below), to the extent of and as compensation for any diminution of value, which consists of, among other things, Prepetition First Lien Secured Party Adequate Protection Liens (as defined below), Prepetition First Lien Secured Party Adequate Protection Superpriority Claims (as defined below), and current payment of accrued and unpaid prepetition and postpetition reimbursable fees and expenses;

(viii)    grants the Prepetition Second Lien Secured Parties, as of the Petition Date and in accordance with the relative priorities set forth herein, the Prepetition Second Lien Adequate Protection (as defined below), to the extent of and as compensation for, any diminution of value, which consists of, among other things, Prepetition Second Lien Secured Party Adequate Protection Liens (as defined below), Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims (as defined below);

(ix)    schedules a final hearing on the DIP Motion (the "**Final Hearing**") to be held no later than two Business Days prior to the deadline for the Final Order to consider entry of a final order that grants all of the relief requested in the DIP Motion on a final basis and which final order shall be in form and substance (including with respect to any subsequent modifications to the form or substance made in response to objections of other creditors or this Court (as defined below)) acceptable to the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (as defined below) (the "**Final Order**");

(x)    waives, upon entry of the Final Order, certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code; and

(xi)    provides for the immediate effectiveness of this Interim Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the DIP Motion, the DIP Credit Agreement, the *Declaration of Steven Robert Strom, Independent Director, in Support of Debtors' Chapter 11 Petitions and First Day Motions*, dated April 1, 2025, [Docket No. 10] in support of the DIP Motion, the *Debtors' Supplement to the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition Secured Parties Pursuant to Sections 361, 362, 363, and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims,*

*(V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. {●}] (the "**Supplement**"), the declaration of Robert Wagstaff in support of the Supplement [Docket No. {●}], the evidence submitted or proffered at a hearing held on April 2, 2025 (the **"First Interim Hearing"**), and the further evidence submitted or proffered at a second interim hearing held on May 5, 2025 (the "**Second Interim Hearing**"), and this Court having entered the First Interim Order on April 4, 2025 [Docket No. 40], a second interim order on May 9, 2025 [Docket No. 134] (the "**Second Interim Order**"), and a third interim order on June 10, 2025 [Docket No. 213]; and this Court having considered the further evidence submitted or proffered by counsel to the Debtors prior to the date hereof to seek entry of this interim order (this "**Interim Order**"); and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), and 4001(d) and 9014 and Local Rules 2002-1, 4001-1 and 4001-2, notice of the DIP Motion and the hearings in respect thereof having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); the First Interim Hearing having been held and concluded on April 2, 2025; the Second Interim Hearing having been held and concluded on May 5, 2025; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtors, their creditors, their estates and all parties in interest, and is essential for the continued operation of the Debtors' business and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

A.    **Petition Date**.   On March 31, 2025 (the "**Petition Date**"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (this "**Court**").   The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.   No trustee or examiner has been appointed in the Cases.

B.    **Jurisdiction and Venue**.   This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.   Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014 and the Local Rules.

C.    **Committee Formation**.   On May 6, 2025, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").   *See* Docket Nos. 128 & 151.

D.    **Notice**.   Notice of the DIP Motion, the Supplement, and the relief requested thereby, including notice of any hearing in connection therewith, has been provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including:  (a) the Office of the United States Trustee for the District of Delaware, Attn:

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

33271570.3

Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); (b) the Internal Revenue Service; (c) the United States Attorney's Office for the District of Delaware and all other states in which the Debtors operate; (d) the DIP Lenders and counsel to the DIP Lenders, Baker & McKenzie LLP, Attn: Paul J. Keenan Jr. (paul.keenan@bakermckenzie.com), 452 Fifth Avenue, New York, New York 10018); (e) the DIP Agent, (Re: Triton Investments Holdings, LLC; 3 Second Street, Suite 206 Jersey City, NJ 07311 (clientservices.usadcm@glas.agency); (f) counsel to the DIP Agent, Foley & Lardner, LLP, Attn: Adrienne K. Walker (awalker@foley.com), 111 Huntington Avenue Boston, MA 02199; (g) the Prepetition First Lien Agent, Attn: Controladora Dolphin, S.A. de C.V-Collateral Agent (clientservices.usadcm@glas.agency), 3 Second Street, Suite 206 Jersey City, NJ 07311; (h) Foley & Lardner, LLP, counsel to the Prepetition First Lien Agent, Attn: Adrienne K. Walker (awalker@foley.com), 111 Huntington Avenue Boston, MA 02199; (i) the Prepetition Second Lien Agent (as defined below), Attn: Controladora Dolphin, S.A. de C.V-Collateral Agent (clientservices.usadcm@glas.agency), 3 Second Street, Suite 206 Jersey City, NJ 07311; (j) Foley & Lardner, LLP, counsel to the Prepetition Second Lien Agent, Attn: Adrienne K. Walker (awalker@foley.com), 111 Huntington Avenue Boston, MA 02199; (k) purported counsel to Dolphin in Mexico; (l) counsel to the Committee, Raines Feldman Littrell LLP, Attn: Thomas J. Francella, Jr. (tfrancella@raineslaw.com), 433 Plaza Real, Suite 275, Boca Raton, FL 33432; (m) all other known lienholders; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. Under the circumstances, such notice complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules, and no other notice need be provided for entry of this Interim Order.

E.     **Debtors' Stipulations Regarding the Prepetition Secured Liens**. Subject only to the rights of parties in interest that are specifically set forth in Paragraph 5 below, the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and agree

33271570.3

(paragraph E hereof shall be referred to herein as the "**Debtors' Stipulations**") as follows:

(i)    Prepetition First Lien Note Purchase and Guarantee Obligations.  Pursuant to that certain Second Amended and Restated Note Purchase and Guarantee Agreement, dated as of June 27, 2022 (as amended, modified, amended and restated or supplemented from time to time prior to the date hereof, the "**Prepetition First Lien Note Purchase Agreement**" and collectively with any other agreements and documents executed in connection therewith, including the "Finance Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition First Lien Notes Documents**"), between, *inter alios*, (a) Controladora Dolphin, S.A. de C.V. ("**Dolphin**"), a corporation organized under the laws of Mexico, as issuer, (b) Intermediate Parent, as a guarantor, and (c) GLAS Americas LLC, as collateral agent (a successor collateral agent to Wilmington Trust, National Association, a national banking association, in such capacity, the "**Prepetition First Lien Agent**" and together with the Prepetition First Lien Noteholders (as defined below), the "**Prepetition First Lien Secured Parties**"), Dolphin issued $100,000,000 of 8.5% Guaranteed Senior Secured Notes due April 8, 2026 (collectively, the "**Prepetition First Lien Notes**", the obligations thereunder, the "**Prepetition First Lien Secured Obligations**" and, the holders of the Prepetition First Lien Notes, the "**Prepetition First Lien Noteholders**").  The Prepetition First Lien Secured Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(ii)    Prepetition First Lien Notes Secured Liens.  Pursuant to the Collateral Documents (as defined in the Prepetition First Lien Notes Purchase Agreement), by and among

each of the grantors party thereto (the "**Prepetition First Lien Grantors**") and the Prepetition First Lien Agent, each Prepetition First Lien Grantor (other than Dolphin), joint and severally guaranteed, as a primary obligor, the Prepetition First Lien Secured Obligations, and each Prepetition First Lien Grantor granted to the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, to secure the Prepetition First Lien Secured Obligations, a first priority security interest in and continuing Lien (the "**Prepetition First Lien Secured Liens**") on substantially all of such Prepetition First Lien Grantor's assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising.  All "Collateral" as defined in the Prepetition First Lien Note Purchase Agreement granted or pledged by such Prepetition First Lien Grantors pursuant to any Prepetition First Lien Notes Documents shall collectively be referred to herein as the "**Prepetition First Lien Collateral**." As of the Petition Date, (I) the Prepetition First Lien Secured Liens (a) are legal, valid, binding, enforceable, and perfected Liens, (b) were granted to, or for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out, and (C) the Prepetition Prior Liens, and (II) (w) the Prepetition First Lien Secured Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition First Lien Notes Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition First Lien Secured

Obligations exist, (y) no portion of the Prepetition First Lien Secured Obligations or any payments made to any or all of the Prepetition First Lien Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) each of the Guarantees (as defined in the Prepetition First Lien Note Purchase Agreement) shall continue in full force and effect to unconditionally guaranty the Prepetition First Lien Secured Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(iii)    <u>Prepetition Second Lien Note Purchase and Guarantee Obligations</u>. Pursuant to that certain Prepetition Second Lien Note Purchase and Guarantee Agreement, dated as of June 27, 2022 (as amended, modified, amended and restated or supplemented from time to time prior to the date hereof, the "**Prepetition Second Lien Note Purchase Agreement**", and collectively with any other agreements and documents executed in connection therewith, including the "Finance Documents" as defined therein, each as may be amended, restated, supplemented, or otherwise modified from time to time, the "**Prepetition Second Lien Notes Documents**", and together with the Prepetition First Lien Notes Documents, the "**Prepetition Notes Documents**"), between, *inter alios*, (a) Intermediate Parent, as issuer, (b) Dolphin, as a guarantor, and (c) GLAS Americas LLC, as collateral agent (a successor collateral agent to Wilmington Trust, National Association, a national banking association, in such capacity, the "**Prepetition Second Lien Agent**" and together with the Prepetition Second Lien Noteholders (as defined below), the "**Prepetition Second Lien Secured Parties**", and together with the Prepetition First Lien Secured

Parties, the "**Prepetition Secured Parties**"), Intermediate Parent issued (x) U.S. $75,000,000 of Second Lien Guaranteed Secured Floating Rate Series A Notes, and (y) approximately U.S. $3,000,000 of Second Lien Guaranteed Secured Floating Rate Series A Notes (collectively, the "**Prepetition Second Lien Notes**", the obligations thereunder, the "**Prepetition Second Lien Secured Obligations**" and, together with the Prepetition First Lien Secured Obligations, the "**Prepetition Secured Obligations**", and the holders of the Prepetition Second Lien Notes, the "**Prepetition Second Lien Noteholders**").  The Prepetition Second Lien Secured Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(iv)    <u>Prepetition Second Lien Notes Liens</u>.  Pursuant to the Collateral Documents (as defined in the Prepetition Second Lien Notes Purchase Agreement), by and among each of the grantors party thereto (the "**Prepetition Second Lien Grantors**") and the Prepetition Second Lien Agent, each Prepetition Second Lien Grantor (other than Intermediate Parent), joint and severally guaranteed, as a primary obligor, the Prepetition Second Lien Secured Obligations, and each Prepetition Second Lien Grantor granted to the Prepetition Second Lien Agent, for the benefit of itself and the other Prepetition Second Lien Secured Parties, to secure the Prepetition Second Lien Secured Obligations, a second priority security interest in and continuing Lien (the "**Prepetition Second Lien Secured Liens**" and together with the Prepetition First Lien Secured Liens, the **"Prepetition Secured Liens"**) on the Prepetition Collateral.  All "Collateral" as defined in the Prepetition Second Lien Note Purchase Agreement granted or pledged by such Prepetition Second Lien Grantors pursuant to any Prepetition Second Lien Notes Documents shall collectively, with

the Prepetition First Lien Collateral, constitute "**Prepetition Collateral**".  As of the Petition Date, (I) the Prepetition Second Lien Secured Liens (a) are legal, valid, binding, enforceable, and perfected Liens, (b) were granted to, or for the benefit of, the Prepetition Second Lien Secured Parties for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (except for the priming contemplated herein), and (d) are subject and subordinate only to (A) the DIP Liens, (B) the Carve-Out, (C) the Prepetition Prior Liens, and (D) the Prepetition First Lien Secured Liens, and (II) (w) the Prepetition Second Lien Secured Obligations constitute legal, valid, and binding obligations of the applicable Debtors, enforceable in accordance with the terms of the applicable Prepetition Second Lien Notes Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Prepetition Second Lien Secured Obligations exist, (y) no portion of the Prepetition Second Lien Secured Obligations or any payments made to any or all of the Prepetition Second Lien Secured Parties are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) each of the Guarantees (as defined in the Prepetition Second Lien Note Purchase Agreement) shall continue in full force and effect to unconditionally guaranty the Prepetition Second Lien Secured Obligations notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Secured Parties to the Debtors pursuant to the terms of this Interim Order or the DIP Loan Documents.

(v)        <u>Intercreditor Agreement</u>.  As of the Petition Date, the Prepetition First Lien Agent and the Prepetition Second Lien Agent are party to that certain Subordination and Intercreditor Agreement, dated as of June 27, 2022 (as amended, supplemented, amended and restated or otherwise modified from time to time prior to the date hereof, the "**Intercreditor Agreement**").  The Intercreditor Agreement governs the respective rights, interests, obligations, and positions of the Prepetition Secured Parties with respect to the Prepetition Collateral and the Prepetition Secured Obligations.  The Debtors have acknowledged and agreed to recognize all rights granted to the parties to the Intercreditor Agreement.

(vi)       <u>Amounts Owed under Prepetition First Lien Note Purchase Agreements</u>.  As of the Petition Date, the applicable Debtors owed the Prepetition First Lien Secured Parties, pursuant to the Prepetition First Lien Notes Documents, without defense, counterclaim, reduction or offset of any kind, in respect of loans made, letters of credit issued and other financial accommodations made by the Prepetition First Lien Secured Parties, an aggregate principal amount of not less than $100 million with respect to the Prepetition First Lien Secured Obligations under the Prepetition First Lien Note Purchase Agreements, *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and restructuring advisors' fees and expenses that are chargeable or reimbursable under the Prepetition First Lien Note Purchase Agreements or any other letter agreement with the Debtors), and other amounts now or hereafter due under the Prepetition First Lien Note Purchase Agreements.

(vii)      <u>Amounts Owed under Prepetition Second Lien Note Purchase Agreements</u>.  As of the Petition Date, the applicable Debtors owed the Prepetition Second Lien Secured Parties, pursuant to the Prepetition Second Lien Notes Documents, without defense, counterclaim,

reduction or offset of any kind, in respect of loans made, letters of credit issued and other financial accommodations made by the Prepetition Second Lien Secured Parties, an aggregate principal amount of not less than $105.9 million with respect to the Prepetition Second Lien Secured Obligations under the Prepetition Second Lien Note Purchase Agreements, *plus* all accrued and hereafter accruing and unpaid interest thereon and any additional fees, expenses (including any reasonable attorneys', accountants', appraisers', and restructuring advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Second Lien Note Purchase Agreements or any other letter agreement with the Debtors), and other amounts now or hereafter due under the Prepetition Second Lien Note Purchase Agreements.

(viii)    <u>Release of Claims</u>.    Subject to the reservation of rights set forth in Paragraph 5 below, each Debtor and its estate shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties and their respective affiliates, assigns or successors and the respective members, managers, equity holders, affiliates, agents, attorneys, restructuring advisors, consultants, officers, directors, employees and other representatives of the foregoing (all of the foregoing, collectively, the "**Prepetition Secured Party Releasees**") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights and other rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, occurring at any time prior to the date of this Interim Order, in each case, relating to and/or otherwise in connection with the Prepetition Secured Obligations, the Prepetition Secured Liens, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Debtors, on the other hand, including (I) any recharacterization, subordination, avoidance, disallowance or other claim arising

under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, or municipal law and (II) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Secured Obligations or any payments or other transfers made on account of the Prepetition Secured Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Secured Liens securing the Prepetition Secured Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Secured Party Releasees.

(ix)    _Cash Collateral_.  All of the Debtors' cash, including any cash in deposit accounts of the Debtors (other than cash held in Excluded Accounts (as defined in the DIP Credit Agreement)), wherever located, constitutes Cash Collateral of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties.

F.    **Findings Regarding the DIP Facility**.

(i)    _Need for Postpetition Financing_.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, and customers, to make payroll, to make capital expenditures, to satisfy other working capital and operational needs, pay costs, fees, and expenses related to the care and welfare of animals, to complete the Debtors' marketing and sale process and to otherwise preserve the value of the Debtors' estates.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the enterprise value of the Debtors' estates.  Immediate and irreparable harm will be caused to the Debtors and their estates if immediate financing is not obtained and

permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Interim Order and the DIP Loan Documents.

       (ii)      <u>No Credit Available on More Favorable Terms</u>.  Based on the facts and circumstances of these Cases, the Debtors are presently unable to obtain financing on more favorable terms from sources other than the DIP Secured Parties under the DIP Loan Documents and this Interim Order.  The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.  The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (as defined below), (b) allowing the DIP Secured Parties to provide the loans, and other financial accommodations under the DIP Facility (including the Roll Up DIP Loans) on the terms set forth herein and in the DIP Loan Documents, (c) granting to the Prepetition First Lien Secured Parties the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the Prepetition First Lien Adequate Protection and the conversion of certain Prepetition First Lien Secured Obligations into the Roll Up DIP Facility, and (d) granting to the Prepetition Second Lien Secured Party Prepetition Second Lien Adequate Protection (all of the foregoing described in clauses (a), (b), (c) and (d) above, collectively, the "**DIP Protections**").

       (iii)      <u>Roll Up</u>. Subject to the Final Order, the Roll Up DIP Facility shall be authorized as compensation for, in consideration for, and solely on account of the agreement of the Prepetition First Lien Noteholders, in their capacities as DIP Lenders, to fund amounts and provide other consideration to the Debtors under the DIP Facility and not as payments under,

adequate protection for, or otherwise on account of any of the Prepetition First Lien Secured Obligations.  The Prepetition First Lien Secured Parties would not otherwise consent to the use of their Cash Collateral and the DIP Agent and DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtors thereunder, without the inclusion of the Roll Up DIP Loans upon entry of the Final Order.

G.  **Interim Financing**.  During the Interim Period (as defined below), the DIP Secured Parties and, as applicable, the Prepetition First Lien Secured Parties are willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, subject to (i) the entry of this Interim Order, and (ii) the terms and conditions of the DIP Loan Documents.

H.  **Adequate Protection for Prepetition Secured Parties**.

(i)  The Prepetition First Lien Agent has consented to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, during the Interim Period, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code.  In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition First Lien Secured Liens pursuant to section 364(d) of the Bankruptcy Code.  The Prepetition First Lien Secured Parties are entitled to adequate protection to the extent of any aggregate diminution of value of their respect interest in Prepetition Collateral, as set forth herein.  Based on the DIP Motion and on the record presented to this Court at the First Interim Hearing and the Second Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the extension of credit under the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition First Lien Secured Parties. None of

the Prepetition First Lien Noteholders has filed an objection to the entry of this Interim Order or the relief provided herein, and in any event, the prepetition Liens and security interests of such parties are adequately protected pursuant to the terms of this Interim Order. Notwithstanding anything to the contrary herein, the Prepetition First Lien Secured Parties' consent to the DIP Facility and to the priming of the Prepetition First Lien Secured Liens by the DIP Liens is expressly limited to the present DIP Facility and the DIP Liens securing same and shall not be applicable to any other debtor-in-possession credit facility, even if it contains substantially the same economic terms as this DIP Facility.

(ii)     The Prepetition Second Lien Agent has consented to the Debtors' use of the Prepetition Collateral, including the Cash Collateral, during the Interim Period, subject to the terms and conditions set forth herein, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code. In addition, the DIP Facility contemplated hereby provides for a priming of the Prepetition Second Lien Secured Liens pursuant to section 364(d) of the Bankruptcy Code. The Prepetition Second Lien Secured Parties are entitled to adequate protection to the extent of any aggregate diminution of value of their respect interest in Prepetition Collateral, as set forth herein. Based on the DIP Motion and on the record presented to this Court at the First Interim Hearing, the terms of the proposed adequate protection arrangements, use of the Cash Collateral, and the extensions of credit under the DIP Facility contemplated hereby are fair and reasonable, reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the consent of the Prepetition Second Lien Secured Parties. None of the Prepetition Second Lien Noteholders has filed an objection to the entry of this Interim Order or the relief provided herein, and in any event, the prepetition Liens and security interests of such

parties are adequately protected pursuant to the terms of this Interim Order.  Notwithstanding anything to the contrary herein, the Prepetition Second Lien Secured Parties' consent to the DIP Facility and to the priming of the Prepetition Second Lien Secured Liens by the DIP Liens is expressly limited to the present DIP Facility and the DIP Liens securing same and shall not be applicable to any other debtor-in-possession credit facility, even if it contains substantially the same economic terms as this DIP Facility.

       I.      **Section 552(b)**.  In light of (i) the DIP Agent's and DIP Lenders' agreement that their liens and superpriority claims shall be subject to the Carve-Out and (ii) the Prepetition Secured Parties' agreement that their respective liens and claims, including any adequate protection liens and claims, shall be subject to the Carve-Out and subordinate to the DIP Liens, subject to and effective only upon entry of a Final Order, each of the Prepetition Secured Parties is entitled to a waiver of any "equities of the case" exception under Section 552(b) of the Bankruptcy Code.

       J.      **Business Judgment and Good Faith Pursuant to Section 364(e)**.

       (i)      The DIP Secured Parties have indicated a willingness to provide postpetition secured financing via the DIP Facility to the Debtors in accordance with the DIP Loan Documents and this Interim Order.

       (ii)      The extensions of credit under the DIP Facility (including, subject to the entry of the Final Order, the Roll Up DIP Facility) as set forth in the DIP Loan Documents and this Interim Order, and the fees, expenses and other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, and the best available under the circumstances, and the Debtors' agreement to the terms and conditions of the DIP Loan Documents and to the payment of such fees reflect the Debtors' exercise of prudent business judgment consistent with their

33271570.3

fiduciary duties. Such terms and conditions are supported by reasonably equivalent value and fair consideration.

(iii)    The DIP Secured Parties, the Prepetition Secured Parties and the Debtors, with the assistance and counsel of their respective advisors, have acted in good faith and at arms' length in, as applicable, negotiating, consenting to, and/or agreeing to, the DIP Facility (including, subject to the entry of the Final Order, the Roll Up DIP Facility), the Debtors' use of the DIP Collateral and the Prepetition Collateral (including Cash Collateral), the DIP Loan Documents and the DIP Protections (including the Prepetition First Lien Adequate Protection and Prepetition Second Lien Adequate Protection). The DIP Obligations (including all advances that are made at any time to the Debtors under the DIP Loan Documents and including the Roll Up DIP Loans) and the Debtors' use of the DIP Collateral and the Prepetition Collateral (including Cash Collateral) shall be deemed to have been extended and/or consented to by the DIP Secured Parties and the Prepetition Secured Parties for valid business purposes and uses and in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express and good faith reliance upon the protections offered by section 364(e) of the Bankruptcy Code and this Interim Order, and, accordingly, the DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Adequate Protection, the Prepetition Second Lien Adequate Protection and the other DIP Protections shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any other order or any provision hereof or thereof is reversed or modified on appeal.

K.    **Relief Essential; Best Interest**. For the reasons stated above, the Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), and Local Rule 4001-2(c). Absent granting the relief set forth in this Interim

Order, the Debtors' estates, their businesses and properties and their ability to protect the health and welfare of the live animals in the Debtors' care, and to preserve and maximize the enterprise value of the Debtors' estates, will be immediately and irreparably harmed. Consummation of the DIP Facility and authorization of the use of Cash Collateral in accordance with this Interim Order and the DIP Loan Documents is therefore in the best interests of the Debtors' estates and consistent with their fiduciary duties. Based on all of the foregoing, sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the applicable Local Rules.

        L.      **Intercreditor Agreement**. Pursuant to Section 510 of the Bankruptcy Code, the Intercreditor Agreement shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims granted or amounts payable in respect thereof by the Debtors under this Interim Order or otherwise) and (iii) not be deemed to be amended, altered or modified by the terms of this Interim Order or the DIP Loan Documents, unless expressly set forth herein or therein.

       **NOW, THEREFORE**, based on the DIP Motion and the record before this Court with respect to the DIP Motion, and with the consent of the Debtors, the Prepetition First Lien Agent, the Prepetition Second Lien Agent, and the DIP Agent (on behalf of all of the DIP Secured Parties) to the form and entry of this Interim Order, and good and sufficient cause appearing therefor,

       **IT IS ORDERED** that:

       1.      **Motion Granted**. The DIP Motion is hereby granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Loan Documents. Any objections to the

DIP Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby denied and overruled.

2.    **DIP Loan Documents and DIP Protections**.

(a)    <u>Approval of DIP Loan Documents</u>.  The Debtors are expressly and immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the DIP Loan Documents and this Interim Order, to incur the DIP Obligations (including, subject to the entry of the Final Order, to convert $36,000,000 of the outstanding principal amount of the Prepetition First Lien Secured Obligations to Roll Up DIP Loans), in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for, by this Interim Order and the DIP Loan Documents.  The Debtors are hereby authorized and directed to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Interim Order, including all upfront fees, administrative fees, and reasonable and documented attorneys', financial advisors', and accountants' fees, and disbursements arising under the DIP Loan Documents and this Interim Order, which amounts shall not be subject to further approval of this Court and shall be non-refundable and not subject to challenge in any respect; <u>provided</u>, <u>however</u>, that the payment of the fees and expenses of the Lender Professionals (as defined below) shall be subject to the provisions of Paragraph 19(b).  Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  For the purposes of this Interim

Order, the Independent Director, Chief Restructuring Officer and each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)     DIP Obligations.  For purposes of this Interim Order, the term "**DIP Obligations**" shall mean all amounts and other obligations and liabilities owing by the respective Debtors under the DIP Credit Agreement and other DIP Loan Documents (including all "Obligations" as defined in the DIP Credit Agreement, and subject to the entry of the Final Order, the Roll-Up DIP Obligations) and shall include the principal of, interest on, and fees, costs, expenses, and other charges owing in respect of, such amounts (including any reasonable and documented attorneys', accountants', restructuring advisors', and other fees, costs, and expenses that are chargeable or reimbursable under the DIP Loan Documents and/or this Interim Order), and any obligations in respect of indemnity claims, whether contingent or otherwise.

(c)     Authorization to Incur DIP Obligations and Use Cash Collateral.  To enable the Debtors to continue to operate their business and preserve and maximize the value of their estates, during the period from the entry of this Interim Order through and including the earliest to occur of (i) the entry of the Final Order, or (ii) the Termination Declaration (as defined below), in each case unless extended by written agreement of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (at the direction of the Prepetition First Lien Noteholders holding at least a majority in principal amount outstanding of the Prepetition First Lien Notes (the "**Majority Prepetition First Lien Noteholders**")) (the period from the entry of this Interim Order through and including such earliest date, the "**Interim Period**"), the Borrower is hereby authorized (x) to use Cash Collateral and

(y) to borrow under the DIP Facility; provided that (i) the aggregate outstanding amount for all such borrowings shall not exceed $18,000,000 under the New Money DIP Facility; and (ii) any proposed use of the proceeds of DIP Loans or use of Cash Collateral shall be consistent with the terms and conditions of this Interim Order and the DIP Loan Documents, including the Approved Budget (as defined below) and the Budget Covenants as defined and contained in Paragraph 2(e) below.  Following the entry of the Final Order, the Borrower's authority to incur further DIP Obligations, if any, and use further Cash Collateral will be governed by the terms of such Final Order and the DIP Loan Documents.  All DIP Obligations shall be unconditionally guaranteed, on a joint and several basis, by the DIP Guarantors, as further provided in the DIP Loan Documents.

(d)     <u>Roll Up DIP Facility</u>.  Subject to the entry of the Final Order, $36,000,000 of the outstanding principal amount of the Prepetition First Lien Secured Obligations shall immediately, automatically, and irrevocably be deemed to have been converted into Roll-Up DIP Obligations and, except as otherwise provided in the Final Order and the DIP Loan Documents, shall be entitled to all the priorities, privileges, rights, and other benefits afforded to the other DIP Obligations under the Final Order and the DIP Loan Documents.  The Final Order shall provide that (i) the full amount of the Roll Up DIP Loans will not be required to be repaid in cash on the Maturity Date (as defined below), but instead shall be treated in any manner acceptable to the holders of Roll Up DIP Loans representing at least two-thirds in amount and more than one-half in number of all Roll Up DIP Loans (such holders, the "**Requisite Roll Up DIP Lenders**"), and (ii) notwithstanding the foregoing, and unless the Requisite Roll Up DIP Lenders otherwise agree in writing, all Roll Up DIP Obligations shall become due and payable in full in cash on the Maturity Date.  As used herein, the term "**Roll Up DIP Obligations**" shall mean the Roll Up DIP Loans and all interest accruing thereon and all other amounts owing by the respective Debtors in respect thereof.

(e)      Budget.  Attached as Exhibit B to the Second Interim Order is a rolling 8-week cash flow budget (such budget, the "**Initial Approved Budget**,"), that reflects on a line-item basis the Debtors' (i) weekly projected cash receipts (including from non-ordinary course assets sales), (ii) weekly projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses under the Cases, and estimated fees and expenses of the DIP Agent (including counsel and restructuring advisors therefor), the Prepetition First Lien Noteholders, the Prepetition First Lien Agent (including counsel to the Prepetition First Lien Agent), and any other fees and expenses relating to the DIP Facility), (iii) the sum of weekly unused availability under the DIP Facility plus unrestricted cash on hand, and (iv) the weekly outstanding principal balance of the loans made under the DIP Facility (including the principal amount of the Roll Up DIP Facility from and after the entry of a Final Order).  Commencing on the Wednesday after the first full week following the delivery of the Initial Approved Budget and continuing every second Wednesday thereafter (i.e., every two weeks), the Debtors shall prepare and deliver simultaneously to the DIP Agent and the Prepetition First Lien Noteholders (or their counsel): (i) an updated "rolling" 13-week budget, which, once approved in writing by each of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Majority Prepetition First Lien Noteholders, shall supplement and replace the Approved Budget or Supplemental Approved Budget (as defined below), as applicable, then in effect (each such updated budget that has been approved in writing by each of the DIP Agent (at the direction of the Required Lenders) (as defined in the DIP Credit Agreement)) and the Majority Prepetition First Lien Noteholders or deemed to have been approved as provided below, (a "**Supplemental Approved Budget**") without further notice, motion, or application to, order of, or hearing before, this Court; provided, however, that the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement))

and the Majority Prepetition First Lien Noteholders shall each have two (2) Business Days to approve each updated "rolling budget" (any such party that fails to timely provide the Debtors written notice of any objection to such updated "rolling budget" shall be deemed to have approved such updated "rolling budget"); provided, further, however, that unless and until each of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Majority Prepetition First Lien Noteholders have approved (or be deemed to have approved as provided above) such updated budget, the Debtors shall still be subject to and be governed by the terms of the Initial Approved Budget or Supplemental Approved Budget, as applicable, then in effect in accordance with this Interim Order, and the DIP Secured Parties and the Prepetition First Lien Secured Parties shall, as applicable, have no obligation to fund to such updated "rolling budget" or permit the use of Cash Collateral with respect thereto, as applicable; and (ii) a variance report certified by the Chief Financial Officer of the Debtors, in form acceptable to the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Majority Prepetition First Lien Noteholders, setting forth on a line-item basis (A) the actual cash receipts, expenditures, and disbursements of the Debtors for such immediately preceding two week period, (B) the variance in dollar amounts of the actual cash receipts, expenditures, and disbursements, for each two-week period, and (C) an explanation, in reasonable detail, for any material variances.  The Initial Approved Budget, as modified by all Supplemental Approved Budgets, shall constitute the "**Approved Budget**."[5]

(f)    Budget Covenants.  The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds in accordance with the specific purposes, and at the specific time periods, set forth in the Approved Budget (and in the case of the costs and expenses

---

[5] The most recent Supplemental Approved Budget is attached hereto as **Exhibit B**.

of the DIP Agent, the Prepetition First Lien Noteholders, the Prepetition First Lien Agent, and the Prepetition Second Lien Agent, in accordance with the DIP Loan Documents and this Interim Order without being limited by the Approved Budget, and in the case of costs and expenses of the Debtors' professionals and advisors without being limited by the Approved Budget), subject to the following permitted variances (the "**Permitted Variances**"), which shall be tested initially on the Wednesday after first full week following the delivery of the Initial Approved Budget (the "**First Testing Date**") (testing the period from the delivery of such Petition Date through and including the Friday in the first full week following the delivery of the Initial Approved Budget (such initial testing period, the "**First Testing Period**")) and continuing on, (i) in the case of the next ten (10) weeks following the First Testing Period, each second Wednesday thereafter, (ii) and thereafter, each Wednesday thereafter (each, a "**Subsequent Testing Date**") ((x) in each case of the foregoing clause (i), testing the trailing two week period ending on the Friday before the applicable Subsequent Testing Date, and (y) in each case of the foregoing clause (ii), testing the trailing one week period ending on the Friday before the applicable Subsequent Testing Date (each, a "**Testing Period**")): (i) (A) for the First Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" (or any such equivalent term) in the Approved Budget were calculated) for the First Testing Period shall not exceed 110% of the sum of the "Total Operating Disbursements" (or any such equivalent term) for such First Testing Period as set forth in the Approved Budget, and (B) for each Subsequent Testing Date, the sum of all actual disbursements of the Debtors (calculated in the same manner as the "Total Operating Disbursements" (or any such equivalent term) in the Approved Budget were calculated) for the immediately preceding Testing Period shall not exceed 110% of the sum of the "Total Operating Disbursements" (or any such equivalent term) for such

Testing Period as set forth in the Approved Budget; and (ii) (A) for the First Testing Date, the sum of actual receipts of the Debtors for the First Testing Period shall not be less than 90% of the sum of the "Total Operating Receipts" (or any such equivalent term) for such First Testing Period as set forth in the Approved Budget, and (B) for each Subsequent Testing Date, the sum of actual receipts of the Debtors for the immediately preceding Testing Period shall not be less than 90% of the sum of the "Total Operating Receipts" (or any such equivalent term) for such Testing Period as set forth in the Approved Budget.  The foregoing budget-related covenants are collectively referred to herein as the "**Budget Covenants**." Notwithstanding anything to the contrary in this Interim Order, the professional fees, costs and expenses of the DIP Agent's professionals and advisors, the Prepetition First Lien Noteholders', Prepetition First Lien Agent's and Prepetition Second Lien Agent's professionals and advisors, respectively, shall be due, payable and paid in accordance with the terms of this Interim Order notwithstanding any budgeted amounts for such fees, costs and expenses set forth in the Approved Budget, and the Debtors shall not be deemed to have breached the terms of the Approved Budget or the Budget Covenants to the extent the actual amount of such fees, costs and expenses exceed the applicable budgeted amounts as set forth in the Approved Budget.  The professional fees, costs and expenses of the Debtors' professionals and advisors shall be subject to the Budget Covenant.

(g)     Interest, Fees, Costs, Indemnities and Expenses.  The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Interim Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.  The Debtors shall pay on demand all fees, costs, indemnities, expenses (including reasonable and documented out-of-pocket legal and other professional fees and expenses of the DIP Agent and the DIP Lenders)

and other charges payable under the terms of the DIP Loan Documents. All such fees, costs, indemnities, expenses and disbursements, whether incurred, paid or required to be paid prepetition or post-petition and whether or not budgeted in the Approved Budget, are hereby authorized and payable (and any funds held by the DIP Agent or the DIP Lenders and/or their professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses and disbursements may be applied for payment) as contemplated in this Interim Order and the DIP Loan Documents, and, subject to the provisions of Paragraph 19(b) with respect to the fees and expenses of the Lender Professionals, shall be non-refundable and not subject to challenge in any respect.

(h)    Use of DIP Facility and Proceeds of DIP Collateral. The Borrower shall apply the proceeds of all DIP Collateral solely in accordance with this Interim Order and the DIP Loan Documents. Without limiting the foregoing, the Debtors shall not be permitted to make any payments (from the DIP Collateral, the proceeds of DIP Loans or otherwise) on account of any prepetition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except (a) with respect to the Prepetition Secured Obligations as set forth in this Interim Order and a Final Order; (b) as provided in the Debtors' "first day" orders (the "**First Day Orders**"), which First Day Orders shall be in form and substance acceptable to the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties; (c) as expressly provided in other motions, orders, and requests for relief, each in form and substance acceptable to the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties prior to such motion, order, or request for such relief being filed; or (d) as otherwise expressly provided in the DIP Credit Agreement, without

giving effect to any amendment or waiver thereof to which the requisite Prepetition First Lien Secured Parties have not consented in writing.

(i)    <u>Conditions Precedent</u>.  Neither the DIP Secured Parties nor Prepetition First Lien Secured Parties have any obligation to extend credit under the DIP Facility or permit use of any DIP Collateral or Prepetition Collateral or any proceeds thereof, including Cash Collateral, as applicable, during the Interim Period unless and until all conditions precedent to the extension of credit and/or use of DIP Collateral, Prepetition Collateral or proceeds thereof under the DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (at the direction of the Majority Prepetition First Lien Noteholders) in accordance with the DIP Loan Documents or Prepetition First Lien Notes Documents, as applicable, and this Interim Order.

(j)    <u>DIP Liens</u>.  As security for the DIP Obligations, effective as of the Petition Date, and subject to the relative priorities as between the Roll Up DIP Facility and the remainder of the DIP Facility as more fully set forth in this Interim Order and the DIP Loan Documents, the following security interests and Liens, which shall immediately and without any further action by any Person be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Interim Order, are hereby granted by the Debtors to the DIP Agent, for itself and the other DIP Secured Parties (all such security interests and Liens granted to the DIP Agent for the benefit of all the DIP Secured Parties pursuant to this Interim Order and the DIP Loan Documents, the "**DIP Liens**"), on all property of the Debtors, now existing or hereinafter acquired, including all cash and cash equivalents (whether maintained with the DIP Agent or otherwise), and any investment in such cash or cash equivalents, money, inventory, goods, accounts

33271570.3

receivable, other rights to payment, intercompany loans and other investments, securities and other investment property, contracts, contract rights, properties, plants, equipment, machinery, general intangibles, payment intangibles, accounts, deposit accounts, documents, instruments, chattel paper, documents of title, letters of credit, letter of credit rights, supporting obligations, leases and other interests in leaseholds (solely to the extent permitted under applicable law; otherwise, the proceeds of such leases and other interests in leaseholds), real property, fixtures, patents, copyrights, trademarks, trade names, other intellectual property, intellectual property licenses, permits, franchise rights, capital stock and other equity interests of subsidiaries and in other entities, tax and other refunds, insurance proceeds, commercial tort claims, the proceeds of Avoidance Actions and other causes of action, and proceeds relating thereto, rights under section 549 of the Bankruptcy Code (whether received by judgment, settlement or otherwise), all other Collateral (as defined in the DIP Loan Documents), and all other "property of the estate" (as defined in section 541 of the Bankruptcy Code) of any kind or nature, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired or created, and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, in each case wherever located; provided, however, that the DIP Liens on the proceeds of Avoidance Actions shall be subject to the entry of the Final Order; provided, further, that the DIP Liens on the equity interests of the Debtors and their direct or indirect subsidiaries shall consist of (A) the equity interests of each direct and indirect domestic Debtor subsidiary of Leisure Investment Holdings LLC, (B) the Debtors' non-voting equity interests of each direct or indirect foreign subsidiary of any Debtor, and (C) the Debtors' voting equity interests of each foreign subsidiary directly owned by any Debtor (all of the foregoing collateral, excluding the Excluded

Collateral (as defined in the DIP Credit Agreement), collectively referred to as the "**DIP Collateral**"):

(I)        pursuant to section 364(c)(2) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable first priority Lien on all unencumbered DIP Collateral, other than Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing (collectively, the "**Avoidance Actions**", which for avoidance of doubt, excludes Debtors' claims and causes of action under section 549 of the Bankruptcy Code or similar state or municipal law and the proceeds of each of the foregoing), but including, subject to the entry of the Final Order, any proceeds from any Avoidance Actions, whether received by judgment, settlement, or otherwise, which DIP Liens shall be junior and subordinated only to the Carve-Out;

(II)        pursuant to section 364(c)(3) of the Bankruptcy Code, a perfected, binding, continuing, enforceable, and non-avoidable Lien upon all DIP Collateral that is subject solely to the Prepetition Prior Liens, which DIP Lien shall be junior only to such Prepetition Prior Liens and the Carve-Out; and

(III)        pursuant to section 364(d)(1) of the Bankruptcy Code, a perfected, binding, continuing, enforceable and non-avoidable first priority, senior priming Lien on all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall be senior to the Prepetition First Lien Secured Party Adequate Protection Liens and Prepetition Second Lien Secured Party Adequate Protection Liens  and senior and priming to (A) the Prepetition First Lien Secured Liens and the Prepetition Second Lien Secured Liens and (B) any Liens that are junior to the Prepetition Prior Liens, the Prepetition First Lien Secured Party Adequate Protection Liens, and the Prepetition Second Lien Secured Party Adequate Protection Lien, after giving effect to any intercreditor or subordination agreements (the Liens referenced in clauses (A) and (B), collectively, the "**Primed Liens**") and shall be junior only to the Prepetition Prior Liens and the Carve-Out.

(k)        <u>DIP Lien Priority</u>.  Notwithstanding anything to the contrary contained in this Interim Order or the DIP Loan Documents, for the avoidance of doubt, the DIP Liens granted to the DIP Agent for the benefit of the DIP Secured Parties shall in each and every case be first priority senior Liens that (i) are subject only to the Prepetition Prior Liens, and to the extent provided in this Interim Order and the DIP Loan Documents, shall also be subject to the Carve-Out, and (ii) except as provided in the immediately preceding sub-clause (i), are senior to all

prepetition and postpetition Liens or other interests of any kind of any other person or entity (including the Primed Liens, the Prepetition First Lien Secured Party Adequate Protection Liens and the Prepetition Second Lien Secured Party Adequate Protection Liens), whether created voluntarily or involuntarily (including by order of a court).

(l)    <u>Enforceable Obligations</u>.  The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto (including any trustee or other estate representative in any Successor Case (as defined below), and their creditors and other parties-in-interest, in accordance with their terms.  Subject to the provisions of Paragraph 2(d) hereof with respect to the Roll Up DIP Obligations, no obligation, payment, transfer, or grant of security under the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order shall be stayed, restrained, voidable, avoidable, disallowable or recoverable under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, 547, 548, or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, surcharge, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, <u>provided, however</u>, that notwithstanding the foregoing, the adequate protection granted in paragraph 3 of this Interim Order shall remain subject to the Challenge Period established in paragraph 5.

(m)    <u>Superpriority Administrative Claim Status</u>.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Interim Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the

Bankruptcy Code, which shall have priority, subject only to the payment of the Carve-Out in accordance with this Interim Order, over all administrative expense claims, adequate protection and other diminution claims (including the Prepetition First Lien Secured Party Adequate Protection Superpriority Claims (as defined below) and the Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims (as defined below)), priority and other unsecured claims, and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment Lien or other non-consensual Lien, levy, or attachment (the "**DIP Superpriority Claims**").    The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from all prepetition and postpetition property of the Debtors and all proceeds thereof, including, subject to the entry of the Final Order, Avoidance Actions and the proceeds thereof.  Other than as expressly provided in the DIP Credit Agreement and/or this Interim Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Secured Parties arising under the DIP Loan Documents and/or this Interim Order.  The DIP Superpriority Claims granted hereunder to the Roll

33271570.3

Up DIP Secured Parties shall be immediately junior in priority and subject to the DIP Superpriority Claims of the other DIP Secured Parties.

(n)    <u>Priority of DIP Liens and DIP Superpriority Claims</u>.  The DIP Liens and the DIP Superpriority Claims: (A) shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or, subject to the entry of the Final Order,  the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (C) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Cases, and (D) notwithstanding anything to the contrary in any "first day" orders of this Court in any of the Cases and subject to the Carve-Out, shall be senior to any administrative claims arising under any such "first day" orders.

3.    **<u>Adequate Protection for Prepetition Secured Parties</u>**.

(a)    Subject to any Challenge (as defined below), in consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition First Lien Secured Liens, the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, shall receive the following adequate protection (collectively referred to as the "**Prepetition First Lien Adequate Protection**"):

(i)    <u>Prepetition First Lien Secured Party Adequate Protection Liens</u>.  To the extent there is a diminution in value of the interests of the Prepetition First Lien Secured Parties

in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition First Lien Secured Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("**Diminution in Prepetition First Lien Notes Collateral Value**"), the Prepetition First Lien Agent, for the benefit of all the Prepetition First Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, including, subject to the entry of the Final Order, Avoidance Actions and the proceeds thereof (such adequate protection replacement Liens, the "**Prepetition First Lien Secured Party Adequate Protection Liens**"), which Prepetition First Lien Secured Party Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the Expense Reimbursement (as defined below), the DIP Liens, the Prepetition Prior Liens, the Prepetition First Lien Secured Liens and the Carve-Out.

(ii)     <u>Prepetition First Lien Secured Party Adequate Protection Superpriority Claims</u>.  To the extent of Diminution in Prepetition First Lien Notes Collateral Value, the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "**Prepetition First Lien Secured Party Adequate Protection Superpriority Claims**"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330,

331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order to the extent provided in Paragraph 7), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, junior only to the Expense Reimbursement, the DIP Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, all Avoidance Actions and the proceeds thereof); provided, however, that the Prepetition First Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Prepetition First Lien Secured Party Adequate Protection Superpriority Claims unless and until all DIP Obligations (including, subject to entry of the Final Order, the Roll Up DIP Obligations) have been Paid in Full (as defined below). Subject to the relative priorities set forth above, the Prepetition First Lien Secured Party Adequate Protection Superpriority Claims against each Debtor shall be allowed and enforceable against each Debtor and its estate on a joint and several basis. For purposes of this Interim Order, the terms "**Paid in Full**," "**Repaid in Full**," "**Repay in Full**," "**Pay In Full**," and "**Payment in Full**" shall mean, with respect to any referenced DIP Obligations and/or Prepetition Secured Obligations, (i) the indefeasible payment in full in cash of such obligations, and (ii) the termination of all credit commitments under the DIP Loan Documents and/or Prepetition Notes Documents, as applicable; provided, however, that the Prepetition First Lien Secured Party Adequate Protection Superpriority Claims granted to the Prepetition First Lien Secured Parties may be impaired pursuant to any chapter 11 plan of reorganization in the Cases with the vote of the applicable class of the holders of such claims that satisfies the requirements of section 1126 of the Bankruptcy Code, in which case, Paid in Full (or any of the other variants of this phrase referenced above) would occur upon consummation of such plan; provided, further, that the Prepetition Second Lien Secured Party

Adequate Protection Superpriority Claims granted to the Prepetition Second Lien Secured Parties may be impaired pursuant to any chapter 11 plan of reorganization in the Cases with the vote of the applicable class of the holders of such claims that satisfies the requirements of section 1126 of the Bankruptcy Code, in which case, Paid in Full (or any of the other variants of this phrase referenced above) would occur upon consummation of such plan.

(iii)    Priority of Prepetition Second Lien Secured Party Adequate Protection Liens and Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims.  The Prepetition Second Lien Secured Party Adequate Protection Liens and the Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims (as defined above) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases, (D) shall be subject and subordinate to the Expense Reimbursement and the Prepetition First Lien Secured Liens, and (E) notwithstanding anything to the contrary in any "first day" orders of this Court in any of the Cases, shall be senior to any administrative claims arising under any such "first day" orders.

(iv)    Interest and Professional Fees.  Without limiting any rights of the Prepetition First Lien Agent and the other Prepetition First Lien Secured Parties under section

506(b) of the Bankruptcy Code, which rights are hereby preserved, and in consideration, and as a requirement, for obtaining the consent of the Prepetition First Lien Secured Parties to the entry of this Interim Order and the Debtors' consensual use of Cash Collateral as provided herein, the Debtors shall pay or reimburse in cash the Prepetition First Lien Noteholders and the Prepetition First Lien Agent for any and all fees, costs, expenses, and charges (including the reasonable and documented fees, costs, and expenses of Foley & Lardner as counsel to the Prepetition First Lien Agent) to the extent, and at the times, payable under the Prepetition First Lien Notes Documents, including any unpaid fees, costs and expenses accrued prior to the Petition Date; provided, however, that any reimbursement of post-petition fees, costs and expenses shall be reapplied to reduce the principal amount of the Prepetition First Lien Secured Obligations to the extent this Court determines in a final, non-appealable order that the Prepetition First Lien Secured Parties are not entitled to such payment or reimbursement pursuant to section 506(b) of the Bankruptcy Code.

(v)      DIP Reports and Documentation.   The Debtors shall deliver to counsel to the Prepetition First Lien Noteholders and the Prepetition First Lien Agent all information, reports, documents and other material that the Debtors provide to the DIP Secured Parties pursuant to the DIP Loan Documents.

(vi)      DIP Covenants.   Notwithstanding the Payment in Full of the DIP Obligations and the termination of the DIP Loan Documents, the covenants set forth in the DIP Loan Documents and any order of this Court relating thereto shall continue in full force and effect for the benefit of the Prepetition First Lien Agent and the Prepetition First Lien Secured Parties, and may be enforced by the Prepetition First Lien Agent (in accordance with the Prepetition First Lien Notes Documents).   Unless otherwise expressly set forth herein, any consent or approval

rights or similar rights granted or referenced in this Interim Order in favor of any or all of the DIP

Agent, the other DIP Secured Parties, the Prepetition First Lien Agent and the other Prepetition

First Lien Secured Parties may be exercised (or not exercised) in the sole discretion of such party;

provided, however, that the Prepetition First Lien Agent shall only exercise such consent or

approval rights in accordance with the Prepetition First Lien Notes Documents..

(vii)     Consent to Priming and Adequate Protection.  The Prepetition First

Lien Agent consents to the Prepetition First Lien Adequate Protection and the priming provided

for herein; provided, however, that such consent of the Prepetition First Lien Agent to the priming

of the Prepetition First Lien Secured Liens and the use of Cash Collateral is expressly conditioned

upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other

Cash Collateral usage or other replacement financing or debtor-in-possession financing other than

the DIP Facility provided under the DIP Loan Documents; and provided, further, that such consent

shall be of no further force and effect in the event this Interim Order is not entered or is entered

and subsequently reversed or modified on appeal.

(viii)     Right to Seek Additional Adequate Protection. This Court finds that

the adequate protection provided herein is reasonable to protect the interests of the Prepetition First

Lien Secured Parties.  However, the Prepetition First Lien Agent, on behalf of the Prepetition First

Lien Secured Parties and in accordance with the Prepetition First Lien Notes Documents, may

request Court approval for additional or alternative adequate protection, without prejudice to any

objection of the Debtors or any other party in interest to the grant of any additional or alternative

adequate protection; provided that any such additional or alternative adequate protection shall at

all times be subordinate and junior to the claims and Liens of the DIP Secured Parties granted

under this Interim Order, the DIP Loan Documents and the Intercreditor Agreement.  The consent

of the Prepetition First Lien Secured Parties to the priming of the Prepetition First Lien Secured Liens by the DIP Liens and the Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition First Lien Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.

(b)       Subject to any Challenge, in consideration for the use of the Prepetition Collateral (including Cash Collateral) and the priming of the Prepetition Second Lien Secured Liens, the Prepetition Second Lien Agent, for the benefit of the Prepetition Second Lien Secured Parties, shall receive the following adequate protection (collectively referred to as the "**Prepetition Second Lien Adequate Protection**" and, collectively with the Prepetition First Lien Adequate Protection, the "**Prepetition Adequate Protection**"):

(i)       Prepetition Second Lien Secured Party Adequate Protection Liens. To the extent there is a diminution in value of the interests of the Prepetition Second Lien Secured Parties in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, whether or not resulting from the use, sale, or lease by the Debtors of the applicable Prepetition Collateral (including Cash Collateral), the granting of the DIP Superpriority Claims, the granting of the DIP Liens, the subordination of the Prepetition Second Lien Secured Liens thereto and to the Carve-Out, the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code ("**Diminution in Prepetition Second Lien Notes Collateral Value**"), the Prepetition Second Lien Agent, for the benefit of all the Prepetition Second Lien Secured Parties, is hereby granted, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code, replacement Liens upon all of the DIP Collateral, including, subject to the entry of the Final Order, Avoidance Actions and the proceeds thereof

(such adequate protection replacement Liens, the "**Prepetition Second Lien Secured Party Adequate Protection Liens**" and collectively with the Prepetition Second Lien Secured Party Adequate Protection Liens, the "**Prepetition Secured Party Adequate Protection Liens**"), which Prepetition Second Lien Secured Party Adequate Protection Liens on such DIP Collateral shall be subject and subordinate only to the Expense Reimbursement (as defined below), the DIP Liens, the Prepetition Prior Liens, the Prepetition First Lien Secured Liens, the Prepetition Second Lien Secured Liens and the Carve-Out.

        (ii)        <u>Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims</u>. To the extent of Diminution in Prepetition Second Lien Notes Collateral Value, the Prepetition Second Lien Agent, for the benefit of the Prepetition Second Lien Secured Parties, is hereby further granted allowed superpriority administrative claims (such adequate protection superpriority claims, the "**Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims**"), pursuant to section 507(b) of the Bankruptcy Code, with priority over all administrative expense claims and priority and other unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the entry of the Final Order to the extent provided in Paragraph 7), 507(a), 507(b), 546(c), 546(d), 726, 1113, 1114 or any other provision of the Bankruptcy Code or otherwise, junior only to the Expense Reimbursement, the DIP Superpriority Claims, the Prepetition First Lien Secured Party Adequate Protection Superpriority Claims and the Carve-Out to the extent provided herein and in the DIP Loan Documents, and payable from all prepetition and postpetition property of the Debtors and all proceeds thereof (including, subject to entry of the Final Order, all Avoidance Actions and the proceeds thereof); <u>provided</u>, <u>however</u>, that

the Prepetition Second Lien Secured Parties shall not receive or retain any payments, property, or other amounts in respect of the Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims unless and until all DIP Obligations (including, subject to entry of the Final Order, the Roll Up DIP Obligations) and Prepetition First Lien Secured Obligations have been Paid in Full (as defined below).

(iii)    Priority of Prepetition Second Lien Secured Party Adequate Protection Liens and Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims.  The Prepetition Second Lien Secured Party Adequate Protection Liens and the Prepetition Second Lien Secured Party Adequate Protection Superpriority Claims (as defined above) (A) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code or, subject to entry of the Final Order, section 506(c) of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any Lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any Liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, (C) shall be valid, binding, perfected and enforceable against any trustee or any other estate representative elected or appointed in the Cases or any Successor Cases, and/or upon the dismissal of any of the Cases, (D) shall be subject and subordinate to the Expense Reimbursement, and the Prepetition First Lien Secured Liens, (E) notwithstanding anything to the contrary in any "first day" orders of this Court in any of the Cases, shall be senior to any administrative claims arising under any such "first day" orders.

(iv)    DIP Reports and Documentation.  The Debtors shall deliver to counsel to the Prepetition Second Lien Noteholders and the Prepetition Second Lien Agent all

information, reports, documents and other material that the Debtors provide to the DIP Secured

Parties pursuant to the DIP Loan Documents.

(v)       Consent to Priming and Adequate Protection.  The Prepetition Second

Lien Agent consents to the Prepetition Second Lien Adequate Protection and the priming provided

for herein; provided, however, that such consent of the Prepetition Second Lien Agent to the

priming of the Prepetition Second Lien Secured Liens and the use of Cash Collateral is expressly

conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend

to any other Cash Collateral usage or other replacement financing or debtor-in-possession

financing other than the DIP Facility provided under the DIP Loan Documents; and provided,

further, that such consent shall be of no further force and effect in the event this Interim Order is

not entered or is entered and subsequently reversed or modified on appeal.

(vi)      Right to Seek Additional Adequate Protection.    Under the

circumstances and given that the above-described adequate protection is consistent with the

Bankruptcy Code, this Court finds that the adequate protection provided herein is reasonable to

protect the interests of the Prepetition Second Lien Secured Parties.  However, the Prepetition

Second Lien Agent, on behalf of the Prepetition Second Lien Secured Parties and in accordance

with the Prepetition Second Lien Notes Documents and the Intercreditor Agreement, may request

Court approval for additional or alternative adequate protection, without prejudice to any objection

of the Debtors or any other party in interest to the grant of any additional or alternative adequate

protection; provided that any such additional or alternative adequate protection shall at all times

be subordinate and junior to the claims and Liens of the DIP Secured Parties granted under this

Interim Order and the DIP Loan Documents.  The consent of the Prepetition Second Lien Secured

Parties to the priming of the Prepetition Second Lien Secured Liens by the DIP Liens and the

Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Second Lien Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.

4.    **Automatic Postpetition Lien Perfection.**  This Interim Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the DIP Liens and the Prepetition Secured Party Adequate Protection Liens without the necessity of (a) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (b) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent and, after Payment in Full of the DIP Facility, the Prepetition First Lien Agent shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts and commodities accounts within the meaning of such Uniform Commercial Code and other law) or (c) taking any other action to validate or perfect the DIP Liens and the Prepetition Secured Party Adequate Protection Liens or to entitle the DIP Liens and the Prepetition Secured Party Adequate Protection Liens to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition Secured Parties (in the latter case, solely with respect to the Prepetition Secured Party Adequate Protection Liens, as applicable) may, in each case, solely as directed by the requisite Prepetition Secured Parties or DIP Lenders, as applicable, in accordance with the Prepetition Notes Documents or DIP Loan Documents, as applicable, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362

of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The applicable Debtors shall execute and deliver to the DIP Agent and/or the Prepetition Secured Parties, as applicable, all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the DIP Liens and the Prepetition Secured Party Adequate Protection Liens, as applicable, granted pursuant hereto. Without limiting the foregoing, each of the DIP Agent and the Prepetition Secured Parties may, in its discretion, file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order. Subject to the entry of the Final Order, any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the payment of any fees or other monetary obligations to any governmental entity or non-governmental entity in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other DIP Collateral is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the Liens on such leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Secured Parties in accordance with the terms of the DIP Loan Documents and this Interim Order or in favor of the Prepetition First Lien Secured Parties in accordance with this Interim Order. To the extent that the Prepetition First Lien Agent is the secured party under any security agreement, mortgage,

leasehold mortgage, landlord waiver, financing statement, or account control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition First Lien Notes Documents, the DIP Agent shall also be deemed to be the secured party under such account control agreements, loss payee or additional insured under the Debtors' insurance policies, and the secured party under each such Prepetition First Lien Notes Document, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Secured Parties in accordance with the DIP Loan Documents and second, subsequent to Payment in Full of all DIP Obligations, for the benefit of the Prepetition First Lien Secured Parties. The Prepetition First Lien Agent shall serve as non-gratuitous bailee for the DIP Agent for purposes of perfecting the DIP Agent's Liens on all DIP Collateral that, without giving effect to the Bankruptcy Code and this Interim Order, is of a type such that perfection of a Lien therein may be accomplished only by possession or control by a secured party.

5.     **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**. The Debtors' Stipulations shall be binding upon the Debtors and their estates in all circumstances upon entry of this Interim Order. The Debtors' Stipulations shall be binding upon each other party in interest, including the Committee, except to the extent and only to the extent such Committee or, any other party in interest with standing (including any chapter 11 trustee) other than the Debtors (or if the Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), *first*, commences seventy-five (75) calendar days following the date of entry of the First Interim Order (such time period, as the same may be extended in accordance with this Paragraph 5, shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the

termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge, such Challenge is fully and finally adjudicated, shall be referred to as the "**Challenge Period Termination Date**"), (A) a contested matter, adversary proceeding, challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding against any or all of the Prepetition Secured Parties in connection with or related to the Prepetition Secured Obligations, or the actions or inactions of any of the Prepetition Secured Parties arising out of or related to the Prepetition Secured Obligations or the Prepetition Notes Documents, including any claim against any or all of the Prepetition Secured Parties in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition Secured Obligations (including those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code or by way of suit against any of the Prepetition Secured Parties) (clauses (i) and (ii) collectively, the "**Challenges**" and, each individually, a "**Challenge**"), and *second*, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action (any such Challenge timely brought for which such a final and non-appealable order is so obtained, a "**Successful Challenge**").  If a chapter 7 trustee or a chapter 11 trustee is appointed or elected during the Challenge Period, then the Challenge Period Termination Date with respect to such trustee only, shall be the later of (i) the last day of the Challenge Period and (ii) the date that is twenty (20) days after the date on which such trustee is appointed or elected.  Except as otherwise expressly provided herein, from and after the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases (and after the dismissal of these Cases or any Successor Cases), (i) all payments made to or for the benefit

of the Prepetition Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, disallowance, recovery or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) all of the Prepetition Secured Obligations shall be deemed to be fully allowed claims within the meaning of section 506 of the Bankruptcy Code (which claims and Liens shall have been deemed satisfied to the extent the Prepetition Secured Obligations are converted into Roll Up DIP Obligations as provided herein), and (iv) the Debtors' Stipulations, including the release provisions therein, shall be binding on all parties in interest in these Cases or any Successor Cases, including any Committee or chapter 11 or chapter 7 trustee.  Notwithstanding the foregoing, to the extent any Challenge is timely asserted, the Debtors' Stipulations and the other provisions in clauses (i) through (iv) in the immediately preceding sentence shall nonetheless remain binding and preclusive on any Committee and on any other party in interest from and after the Challenge Period Termination Date, except to the extent that such Debtors' Stipulations or the other provisions in clauses (i) through (iv) of the immediately preceding sentence were expressly challenged in such Challenge and such Challenge becomes a Successful Challenge.  The Challenge Period may be extended (a) with the written consent of the requisite Prepetition First Lien Secured Parties in their sole discretion or (b) pursuant to an order of the Court entered before the expiration of the Challenge Period for good cause shown upon an application for extension filed and served by a party in interest; provided, that an extension pursuant to the foregoing clause (b) shall only be applicable to such party in interest and the particular Challenge set forth in such application; provided, further, that the timely filing of a motion seeking standing to file a Challenge before the expiration of the Challenge Period, which attaches a draft complaint setting forth the legal and

Case 25-10606-LSS    Doc 255    Filed 06/25/25    Page 50 of 82

factual bases of the proposed Challenge, shall toll the Challenge Period only as to the party that timely filed such standing motion until such motion is resolved or adjudicated by the Court. Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced by a party with requisite standing prior to the expiration of the Challenge Period, the stipulations contained in the Final Order shall nonetheless remain binding on all other parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; (y) the DIP Agent, the Roll Up DIP Lenders, the Prepetition First Lien Agent, and the Prepetition First Lien Noteholders, and each of their respective officers, directors, controlling persons, employees, agents, attorneys, affiliates, assigns, or successors of each of the foregoing reserve all of their rights to contest on any grounds any Challenge and (z), nothing in this Interim Order shall be construed to grant standing on any party in interest, including any Committee, to bring any Challenge on behalf of the Debtors' estates. The failure of any party in interest, including any Committee, to obtain an order of this Court prior to the Challenge Period Termination Date granting standing to bring any Challenge on behalf of the Debtors' estates shall not be a defense to failing to commence a Challenge prior to the Challenge Period Termination Date as required under this Paragraph 5 or to require or permit an extension of the Challenge Period Termination Date; provided, however, that if the Committee files a motion for standing to assert any Challenge prior to the Challenge Period Termination Date (and provided that the relevant pleading asserting such Challenge is attached as an exhibit to such motion), then the Challenge Period Termination Date shall be tolled, solely for the Committee and solely with respect to such Challenge set forth in the exhibit to such motion, until three (3) Business Days after the Court rules on such motion. For the avoidance of doubt, notwithstanding anything else to the contrary in this Interim Order, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until the expiration of

33271570.3

50

the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order. The Prepetition Secured Parties stipulate and agree that each of the Prepetition Secured Parties will not raise as a defense in connection with any Challenge the ability of creditors to file derivative suits on behalf of limited liability companies, and, if the Committee (if any) or any party-in-interest pursues or brings forth such a Challenge, the defendant Prepetition Secured Party of such Challenge shall not object on the grounds that the Committee or any party-in-interest lacks standing to file derivative suits on behalf of limited liability companies; provided, that all other standing arguments shall be preserved. For the avoidance of doubt, as to the Debtors, upon entry of this Interim Order, all Challenges, and any right to assert any Challenge, are hereby irrevocably waived and relinquished as of the Petition Date, and the Debtors' Stipulations shall be binding in all respects on the Debtors irrespective of the filing of any Challenge.

6.      **Carve-Out**.  Subject to the terms and conditions contained in this Paragraph 6, each of the DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Secured Liens, the Prepetition Second Lien Secured Liens, the Prepetition Secured Party Adequate Protection Liens, and the Prepetition Secured Party Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve-Out in accordance with the terms of this Interim Order:

(i)      Carve-Out.  For purposes of this Interim Order, "**Carve-Out**" means (a) all unpaid fees required to be paid in these Cases to the clerk of the Court and to the office of the

United States Trustee under 28 U.S.C. § 1930(a)(6); (b) all reasonable fees and expenses up to $50,000 incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (d) below), (c) subject to the terms and conditions of this Interim Order, the reasonable unpaid fees, costs, and disbursements of professionals retained by the Debtors in these Cases (collectively, the "**Debtors' Professionals**") that are incurred prior to the delivery by the DIP Agent and/or the Prepetition First Lien Agent of a Carve-Out Trigger Notice (as defined below), and are allowed by this Court under sections 327, 330, or 363 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals; (d) subject to the terms and conditions of this Interim Order, the reasonable unpaid fees, costs, and disbursements of professionals retained by the Committee and any other statutory committee in these Cases (collectively, the "**Committees' Professionals**") and all reasonable unpaid out-of-pocket expenses of the members of any Committee or any other statutory committee ("**Committees Members**" and together with the Debtors' Professionals, each a "**Professional Person**" and the amounts set forth in the foregoing clauses (a), (b), (c) and (d), the "**Pre-Carve Out Notice Amount**"), in each case that are incurred prior to the delivery by the DIP Agent and/or the Prepetition First Lien Agent of a Carve-Out Trigger Notice, and that are allowed by this Court under sections 328, 330, or 1103 of the Bankruptcy Code and remain unpaid after application of any retainers being held by such professionals in an aggregate amount (for both Committees Members and the Committees' Professionals) not to exceed $500,000; and (e) the reasonable unpaid fees, costs, and disbursements of the Committees' Professionals and the reasonable unpaid expenses of Committees Members that are incurred after the delivery of a Carve-Out Trigger Notice by the DIP Agent and/or the Prepetition First Lien Agent, that are included in the Approved Budget for the applicable period and comply with the Budget Covenants, and the reasonable

unpaid fees, costs, and disbursements of the Debtors' Professionals that are incurred after the delivery of a Carve-Out Trigger Notice by the DIP Agent and/or the Prepetition First Lien Agent, in each case, that are allowed by this Court under sections 327, 330 or 363 of the Bankruptcy Code after application of any retainers being held by such professionals, in an aggregate amount not to exceed $300,000 (the "**Post-Default Carve-Out Cap**").  The term "**Carve-Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent and/or the Prepetition First Lien Agent to the Debtors' counsel, the United States Trustee, and lead counsel to any Committees or any other statutory committee appointed in these Cases, which notice may be delivered at any time following the occurrence and during the continuation of any Termination Event (as defined below), expressly stating that the Post-Default Carve-Out Cap is triggered.  No amounts set forth in this subparagraph 6(i) with respect to the Post-Default Carve-Out Cap may be modified without the prior written consent of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties.

(ii)    <u>Pre-Carve Out Notice</u>.  Prior to the delivery of a Carve-Out Trigger Notice, starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors, the DIP Agent, the DIP Lenders and their respective advisors a weekly statement (each, a "**Weekly Statement**") setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the preceding week (the "**Weekly Estimated Fees and Expenses**"), and the Debtors shall, on a weekly basis, subject to the Budget Covenant and Permitted Variances, transfer cash proceeds from amounts previously drawn under the DIP Facility or cash on hand into a segregated account held in trust for and exclusively available for the payment of fees and expenses of the Professional Persons (the "**Professional Fees Escrow Account**") in an amount equal to the aggregate amount of Weekly

Estimated Fees and Expenses based on the Weekly Estimated Fees and Expenses submitted by each Professional Person (and if no such estimate is provided in a given week, then the amount forecasted for such Professional Person in the Approved Budget) that remain unpaid (and that were not previously funded to the Professional Fees Escrow Account). The Debtors shall use funds held in the Professional Fees Escrow Account exclusively to pay the unpaid fees, costs, and disbursements of Professional Persons as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, in accordance with any interim or final orders of the Court; provided, however, that the Debtors' obligations to pay professional fees and expense shall not be limited or be deemed limited to funds held in the Professional Fees Escrow Account (subject to the Budget Covenant, Permitted Variances and the other applicable terms of this Interim Order).

(iii)    Post-Carve Out Notice. On the date on which a Carve-Out Trigger Notice is delivered in accordance with this paragraph 6 of this Interim Order, (the "**Carve Out Trigger Date**"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date (net of any retainers) and any available cash thereafter held by any Debtor to fund into the Professional Fees Escrow Account an amount equal to (i) the Pre-Carve Out Notice Amount (to the extent not previously funded to the Professional Fees Escrow Account), and (ii) the Post-Default Carve-Out Cap. No later than three (3) Business Days after the delivery of a Carve-Out Trigger Notice, each Professional Person shall deliver one (1) additional statement to the Debtors, the DIP Agent, the DIP Lenders and their respective advisors setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the period following the period covered by the most recent Weekly Statement previously delivered by such Professional Person through and including the Carve Out Trigger

Date (as defined below), and the Debtors shall transfer such amounts to the Professional Fees Escrow Account (as defined herein).

(iv)    Notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents or the Prepetition First Lien Notes Documents, following delivery of a Carve-Out Trigger Notice, the DIP Agent and the Prepetition First Lien Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Escrow Account has been fully funded in an amount equal to all respective obligations benefitting from the Carve-Out as set forth herein.   The Professional Fees Escrow Account shall not be subject to the control of the DIP Agent, any DIP Lender or any of the Prepetition First Lien Secured Parties, and the funds transferred to the Professional Fees Escrow Account shall not be subject to the DIP Liens or the Prepetition Secured Party Adequate Protection Liens, nor constitute DIP Collateral; provided, however, that the DIP Liens and the Prepetition First Lien Secured Party Adequate Protection Liens shall automatically attach to any residual interest in the Professional Fees Escrow Account (which liens shall be deemed automatically perfected senior first priority liens as of entry of this Interim Order), with any excess paid to the DIP Agent for application to the DIP Obligations in accordance with the DIP Loan Documents until the DIP Obligations are Paid in Full (unless the Required Lenders (as defined in the DIP Credit Agreement) have otherwise agreed to in writing), and any excess remaining thereafter shall be applied in accordance with this Interim Order.

(v)    Notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Professional Fees Escrow Account shall not constitute loans or indebtedness under the DIP Loan Documents or the Prepetition First Lien Notes Documents or otherwise increase or reduce the DIP Obligations or the Prepetition Secured

Obligations, (ii) the failure of the Professional Fees Escrow Account to satisfy in full all fees and expenses of Professional Person shall not affect the priority of the Carve-Out, and (iii) nothing contained herein shall constitute a cap or limitation on the (x) amount that the Professional Persons may assert as administrative expense claims against the Debtors on account of fees and expense incurred by such Professional Persons, and (y) fees described in paragraph 6(i)(a) of this Interim Order.

(vi)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  Neither the DIP Secured Parties nor the Prepetition First Lien Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any of the Debtors' Professionals, Committees' Professionals or Committees Members incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate any DIP Secured Party or any Prepetition First Lien Secured Party in any way to pay compensation to, or to reimburse expenses of, any of the Debtors' Professionals, the Committees' Professionals or Committees Members, or to guarantee that the Debtors or their estates have sufficient funds to pay such compensation or reimbursement or (ii) to increase the Carve-Out if actual allowed fees and expenses of any of the Debtors' Professionals, Committees' Professionals or Committees Members are higher in fact than the amounts in the Approved Budget or the Post-Default Carve-Out Cap.  Notwithstanding any provision in this Paragraph 6 to the contrary, no portion of the Carve-Out, Cash Collateral, Prepetition Collateral, DIP Collateral or proceeds of the DIP Facility shall be utilized for the payment of professional fees and disbursements to the extent restricted under Paragraph 15 hereof.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, any Committee, any other official or unofficial

committee in these Cases or any Successor Cases, or of any other person or entity, or shall affect the right of any DIP Secured Party or any Prepetition First Lien Secured Party to object to the allowance and payment of any such fees and expenses.

(vii)    <u>Payment of Allowed Professional Fees and Expenses Prior to the Termination Declaration Date</u>.  Prior to the occurrence of the Termination Declaration Date (as defined below), the Debtors shall be permitted to pay allowed fees and expenses of the Debtors' Professionals, the Committees' Professionals and the Committees Members (to the extent the fees and expenses of the Committees' Professionals and the Committees Members were incurred in accordance with the Approved Budget), subject to this Interim Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any interim compensation procedures order entered by this Court.  The amounts paid prior to the Carve-Out Trigger Notice shall not reduce the Post-Default Carve-Out Cap.

(viii)    <u>Submission of Invoices</u>.  Within ten (10) days after the end of each calendar month, the Debtors' Professionals, Committees' Professionals and the Committees Members (or counsel for the Committee or any other statutory committee on behalf of the Committee Members) shall submit to the DIP Agent, the DIP Lenders and the Prepetition First Lien Noteholders their respective invoices for professional services rendered in the immediately preceding month (or in the case of Committee Members, their respective expenses), which invoices may be redacted to exclude privileged information.

7.    **Waiver of 506(c) Claims**.  Subject to the entry of the Final Order, except to the extent of the Carve-Out, as a further condition of (i) the DIP Facility and any obligation of the DIP Secured Parties to make credit extensions pursuant to the DIP Loan Documents (and the consent of the DIP Secured Parties and the Prepetition First Lien Secured Parties to the payment of the

Carve-Out to the extent provided herein) and (ii) the Debtors' use of Cash Collateral pursuant to this Interim Order and a Final Order, (a) no costs or expenses of administration of the Cases or any Successor Cases shall be charged against or recovered from or against any or all of the DIP Secured Parties and/or the Prepetition First Lien Secured Parties, the Prepetition Collateral, the DIP Collateral and the Cash Collateral, in each case pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (in accordance with the Prepetition First Lien Notes Documents), (b) no such consent shall be implied from any other action, inaction, or acquiescence of any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, and (c) the exercise prior to the entry of the Final Order of any rights under section 506(c) of the Bankruptcy Code or otherwise to charge any costs or expense of administration of the Cases or any Successor Cases from or against the Prepetition First Lien Secured Parties or their Prepetition First Lien Secured Liens on or other interests in any or all of the DIP Collateral, the Prepetition Collateral and the Cash Collateral shall not impair and shall be subject to, and junior to, the DIP Liens on and the DIP Secured Parties' other interests in the DIP Collateral, the Prepetition Collateral and the Cash Collateral and the other DIP Protections accorded the DIP Secured Parties.

8.     **After-Acquired Property**.  Except as otherwise expressly provided in this Interim Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtors on or after the Petition Date is not, and shall not be, subject to any Lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors that is subject to a valid, enforceable, perfected, and unavoidable Lien as of the Petition Date (or a valid, enforceable

and unavoidable Lien that is perfected subsequent to the Petition Date solely to the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to subordination or avoidance under the Bankruptcy Code or other provisions or principles of applicable law.

9.    **Protection of DIP Secured Parties' and Prepetition First Lien Secured Parties' Rights**.

(a)    Unless the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties shall have provided their prior written consent or all DIP Obligations and Prepetition Secured Obligations have been Paid in Full, there shall not be entered in any of these Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation, but other than the Final Order) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Prepetition First Lien Secured Liens, the Prepetition Secured Party Adequate Protection Liens, the Prepetition Secured Party Adequate Protection Superpriority Claims and/or the other DIP Protections, (ii) the use of Cash Collateral for any purpose other than to Pay in Full the DIP Obligations and the Prepetition Secured Obligations or as otherwise permitted in the DIP Loan Documents and this Interim Order, (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor or any creditor's taking any setoff against any of its prepetition indebtedness based upon any such return pursuant to section 553 of the Bankruptcy Code or otherwise, or (iv) any modification of any of the DIP Secured Parties' or the Prepetition

First Lien Secured Parties' rights under this Interim Order, the DIP Loan Documents or the Prepetition First Lien Notes Documents with respect any DIP Obligations or Prepetition Secured Obligations.

(b)       The Debtors (and/or their legal and restructuring advisors in the case of clauses (ii) through (iv) below) will, whether or not the DIP Obligations have been Paid in Full, (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Secured Parties and the Prepetition First Lien Secured Parties all such information and documents that any or all of the Debtors are obligated (including upon request by any of the DIP Secured Parties or the Prepetition First Lien Secured Parties) to provide under the DIP Loan Documents, the Prepetition First Lien Notes Documents (in the absence of the pendency of these Cases) or the provisions of this Interim Order, (iii) permit consultants, advisors and other representatives (including third party representatives) of each of the DIP Agent, the other DIP Secured Parties, and the Prepetition First Lien Secured Parties to visit and inspect during normal business hours and upon reasonable advance notice to the Borrowers any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective available books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Loan Documents and/or the Prepetition First Lien Notes Documents, (iv) permit the DIP Agent, the other DIP Secured Parties and the Prepetition First Lien Secured Parties and their respective consultants, advisors and other representatives to consult, during normal business hours and upon reasonable advance notice, with

the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit the DIP Agent, the other DIP Secured Parties and the Prepetition First Lien Secured Parties to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations and inventory appraisals at reasonable times and upon reasonable advance notice in respect of any or all of the DIP Collateral and the Prepetition Collateral.  Notwithstanding anything to the contrary contained herein, the Debtors do not waive any right to attorney-client, work product, or similar privilege, and the Debtors shall not be required to provide the DIP Agent, the other DIP Secured Parties, the Prepetition First Lien Secured Parties, or their respective counsel and restructuring advisors with any information subject to attorney-client privilege, consisting of attorney work product or in respect of which disclosure is prohibited by law or any confidentiality obligation binding on the Debtors or any of their respective affiliates.  For avoidance of doubt, the Prepetition First Lien Secured Parties shall have the same access and cooperation rights as the DIP Agent for purposes of this subparagraph (b).

10.     **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of Paragraph 9 above, if at any time prior to the Payment in Full of all the DIP Obligations and the Prepetition Secured Obligations (including subsequent to the confirmation of any chapter 11 plan or plans with respect to any of the Debtors), the Debtors' estates, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed shall obtain credit or incur debt pursuant to sections 364(b), 364(c), 364(d), or any other provision of the Bankruptcy Code in violation of this Interim Order or the DIP Loan Documents, then all of the cash proceeds derived from such credit or debt and all Cash Collateral shall immediately be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full and then to the

Prepetition First Lien Agent for application to the Prepetition Secured Obligations until Paid in Full in accordance with the Intercreditor Agreement.

11. **Cash Management**.  Unless otherwise agreed to in writing by the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (in accordance with the Prepetition First Lien Notes Documents), the Debtors shall maintain no accounts except those existing on the date hereof and such other accounts as may be approved by the Required Lenders (as defined in the DIP Credit Agreement) from time to time. The Debtors are authorized to incur obligations and liabilities for treasury, depositary or cash management services, including overnight overdraft services, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services provided on a postpetition basis by any financial institution at which any account existing on the date hereof is maintained and such other accounts as may be approved by the Required Lenders (as defined in the DIP Credit Agreement) from time to time; provided, however, that (i) any Lien securing any such obligations shall be junior to the DIP Lien on the funds in any such accounts at such financial institution, and (ii) except to the extent otherwise required by this Court, nothing herein shall require any DIP Secured Party or Prepetition First Lien Secured Party to incur any overdrafts or provide any such services or functions to the Debtors.  Subject to entry of a further Order of the Court, the Debtors are authorized to designate, maintain and continue to use, with the same account numbers, all of their bank accounts in existence as of the Petition Date that the Debtors determine, in the reasonable exercise of their business judgment, are necessary to preserve the estate. The entry of this Interim Order does not constitute a waiver of Section 345(b) of the Bankruptcy Code, and any such waiver of Section 345(b) of the Bankruptcy Code shall be brought by the Debtors in a separate motion to this Court.

33271570.3

12.    **Disposition of DIP Collateral**.

(a) Except as contemplated by the DIP Loan Documents, unless the DIP Obligations and the Prepetition Secured Obligations are Paid in Full upon the closing of a sale or other disposition of the DIP Collateral or Prepetition Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or any Prepetition Collateral (or enter into any binding agreement to do so) without the prior written consent of the DIP Agent at the direction of the Required Lenders (as defined in the DIP Credit Agreement) and the Prepetition First Lien Secured Parties (and no such consent shall be implied from any other action, inaction, or acquiescence by any DIP Secured Party or Prepetition Secured Party or any order of this Court), except as permitted in the DIP Loan Documents and/or the Prepetition First Lien Notes Documents, as applicable, and this Interim Order.  Except to the extent otherwise expressly provided in the DIP Loan Documents or this Interim Order, all proceeds from the sale, transfer, lease, encumbrance or other disposition of any DIP Collateral outside the ordinary course of business shall be remitted to the DIP Agent for application to the DIP Obligations and then to the Prepetition Secured Obligations, in each case, in accordance with the terms of this Interim Order and the DIP Loan Documents or the Prepetition First Lien Notes Documents and the Intercreditor Agreement, as the case may be.  In addition, the Debtors are authorized and directed to enter into such blocked account agreements (with cash dominion, if the DIP Agent so elects) with the DIP Agent and such financial institutions as the DIP Agent may require.

13.    **Termination Events**.  The following shall constitute a termination event under this Interim Order and the DIP Loan Documents unless waived in writing by each of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties (each, a "**Termination Event**"):

(a)     The Debtors' failure to timely and strictly comply with any of the obligations and deadlines set forth in **Exhibit C** attached hereto (the "**Milestones**");

(b)     The occurrence of an "Event of Default" under the DIP Credit Agreement, as set forth therein (other than, for the avoidance of doubt, with respect to the Milestones), subject to a three (3) day cure period (if such failure is capable of being cured);

(c)     Any other material breach, default or other violation by any of the Debtors of the terms and provisions of this Interim Order.

14.     **Rights and Remedies Upon Termination Event**.

(a)     Seven (7) days following written notice from the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) to the Debtors, the Committees and the U.S. Trustee that the Termination Declaration Date has occurred, unless prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the DIP Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order or other action of any kind, to the extent necessary to permit the DIP Secured Parties to exercise (i) immediately upon the occurrence and during the continuance of any Termination Event, all rights and remedies under this Interim Order, the DIP Loan Documents and/or applicable non-bankruptcy law (other than those rights and remedies against the DIP Collateral as provided in subparagraph 14(b) below), including the right to (1) declare all DIP Obligations to be immediately due and payable, (2) declare the termination, reduction or restriction of any further commitment to extend credit to the Debtors, to the extent any such commitment remains, and/or (3) terminate the DIP Facility and any other DIP Loan Documents as to any future liability or obligation of the DIP Agent and the other DIP Secured Parties, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; and/or (ii) declare a termination,

33271570.3

reduction or restriction on the ability of the Debtors to use any Cash Collateral (any such declaration under any of clauses 15(a)(i)(1), (2) or (3) or (ii) shall be made to the respective lead counsel to the Debtors, the Committee and the U.S. Trustee, and shall be referred to herein as a "**Termination Declaration**" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "**Termination Declaration Date**").  Solely during the seven (7) day period after a Termination Declaration Date, the Debtors and any Committee shall be entitled to an emergency hearing before this Court.  During such seven (7) day period, the Debtors may not use Cash Collateral or any amounts previously or thereafter advanced under the DIP Facility except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget.

(b)    In addition to the rights and remedies described above, seven (7) days following written notice from the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) to the Debtors, the Committee and the U.S. Trustee that the Termination Declaration Date has occurred, unless prior to such time this Court determines that a Termination Event has not occurred and/or is not continuing, the DIP Agent is hereby granted relief from the automatic stay, without further notice, hearing, motion, order or other action of any kind, to foreclose on, or otherwise enforce and realize on, its DIP Liens on all or any portion of the DIP Collateral, including by collecting accounts receivable and applying the proceeds thereof to the DIP Obligations, and, to the extent permitted by applicable law, by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral. Solely during the seven (7) Business Day period following written notice from the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) to the Debtors, the Committee and the U.S. Trustee that a Termination Declaration Date has occurred, the Debtors and any Committee shall be entitled to

an emergency hearing before this Court. During such seven (7) day period, the Debtors may not use Cash Collateral or any amounts previously or thereafter advanced under the DIP Facility except to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget.

(c)     Upon the effectiveness of any relief from the automatic stay with respect to the DIP Facility pursuant to Paragraph 14(b) hereof, the Prepetition First Lien Agent shall have relief from the automatic stay to the same extent as the DIP Agent, and without further notice, hearing, motion, order or other action of any kind, to foreclose on, or otherwise enforce and realize on its Prepetition Prior Liens and the Prepetition First Lien Secured Party Adequate Protection Liens on, all or any portion of the DIP Collateral or Prepetition Collateral (including by collecting accounts receivable and applying the proceeds thereof to the Prepetition Secured Obligations, and by occupying the Debtors' premises to sell or otherwise dispose of the DIP Collateral or Prepetition Collateral) or otherwise exercise remedies against the DIP Collateral or Prepetition Collateral permitted by this Interim Order, the Prepetition First Lien Notes Documents and/or applicable non-bankruptcy law; provided however, that any such foreclosure or other enforcement by the Prepetition First Lien Agent of any Prepetition Prior Liens or any Prepetition Secured Parties of any Prepetition Secured Party Adequate Protection Liens or any other such exercise of remedies by the Prepetition First Lien Agent against the DIP Collateral or Prepetition Collateral shall not interfere with or otherwise be inconsistent with any foreclosure or other enforcement by the DIP Agent of any DIP Liens or other DIP Protections or any other exercise of remedies by the DIP Agent, and any proceeds received by the Prepetition First Lien Agent in connection with such foreclosure, enforcement or other exercise of remedies shall be turned over to the DIP Agent for application to the DIP Obligations until Paid in Full.

(d)      Subject to the provisions of Paragraph 6 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Secured Parties or the Prepetition First Lien Secured Parties shall be turned over <u>first</u> to the DIP Agent for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Interim Order until Payment in Full of all of the DIP Obligations and <u>then</u> to the Prepetition First Lien Agent for application to the Prepetition First Lien Secured Obligations under, and in accordance with the provisions of, the Prepetition First Lien Notes Documents, the Intercreditor Agreement and this Interim Order until Payment in Full of the Prepetition Secured Obligations.

(e)      Subject to entry of the Final Order, and notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the other DIP Secured Parties contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon five (5) Business Days' written notice to the Debtors and any landlord, lienholder, licensor, or other third party owner of any leased or licensed premises or intellectual property that a Termination Event has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to any DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable license and to use any and all trademarks, trade names, copyrights, licenses, patents, or any other similar assets of the Debtors that are owned by or subject to a Lien of any third party and that are used by Debtors in their businesses, in the case of either subparagraph (i) or (ii) of this Paragraph 14(e) without interference from lienholders

or licensors thereunder, subject to such lienholders' or licensors' rights under applicable law; provided, however, that the DIP Agent, on behalf of the DIP Secured Parties, shall pay only rent and additional rent, fees, royalties, or other monetary obligations of the Debtors that first arise after the written notice referenced above from the DIP Agent and that accrue during the period of such occupancy or use by such DIP Agent calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agent, or the other DIP Secured Parties to assume any lease, license or other contract under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the other DIP Secured Parties in this Paragraph 14(e).

(f)    Subject to the entry of the Final Order and Payment in Full of the DIP Obligations, notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the Prepetition First Lien Secured Parties contained in this Interim Order or the Prepetition First Lien Notes Documents, or otherwise available at law or in equity, the Prepetition First Lien Agent shall succeed to, and be entitled to, all of the rights, remedies, benefits and protections accorded to the DIP Agent pursuant to Paragraph 14(e), as if all references therein to the "DIP Agent" and the "DIP Secured Parties" are references to the "Prepetition First Lien Agent" and the "Prepetition First Lien Secured Parties."

(g)    The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified pursuant to the terms of this Interim Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the Prepetition Secured Party Adequate Protection Liens and the DIP Liens and to incur all liabilities and obligations to the DIP Secured Parties and the Prepetition Secured Parties under the DIP Loan Documents, the DIP Facility, and this Interim Order, (ii) authorize the DIP Secured Parties and the Prepetition Secured Parties to retain and apply payments made in accordance with the DIP Loan Documents, the Prepetition First Lien Notes

Documents and/or this Interim Order, (iii) permit each of the DIP Agent, the other DIP Secured Parties, the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the other Prepetition Secured Parties to perform any act authorized under this Interim Order and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and effectuate the provisions of this Interim Order and the DIP Loan Documents.

15. **Restriction on Use of Proceeds**. Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by (a) any Debtor, Committee or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' Professionals, the Committees' Professionals or the Committees Members) to investigate or prosecute any Challenge (including any litigation or other action) in connection with the value of the Prepetition Collateral or the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, any Committee, or any trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' Professionals, the Committees' Professionals or the Committees Members) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Secured Parties, or to seek any modification to this Interim Order not approved by the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Secured Parties, to the extent such modification would affect the rights of any of the Prepetition First Lien Secured

Parties; (ii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, any or all of the DIP Secured Parties, the Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including (A) any Challenges and any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action with respect to the validity, enforceability, priority, and extent of the DIP Obligations and/or the Prepetition Secured Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Secured Liens, or the Prepetition Secured Party Adequate Protection Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, the DIP Liens, the other DIP Protections, the Prepetition Secured Liens, the Prepetition Secured Party Adequate Protection Liens, or the other Prepetition Adequate Protection; (D) except to contest in good faith the occurrence or continuance of any Termination Event as permitted in Paragraph 13, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying any or all of the DIP Secured Parties', and, after the Payment in Full of the DIP Obligations, the Prepetition First Lien Secured Parties', assertion, enforcement, or realization on the Cash Collateral, the DIP Collateral or the Prepetition Collateral in accordance with the DIP Loan Documents or the Prepetition First Lien Notes Documents, as applicable, or this Interim Order; and/or (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties hereunder or under the DIP

Loan Documents or the Prepetition Notes Documents, as applicable, or any payments made thereunder or in respect thereof; provided, however, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Committee (to the extent such Committee is appointed) to investigate (but not to prosecute) the claims and/or Liens of the Prepetition First Lien Secured Parties under the Prepetition First Lien Notes Documents (but not the claims and/or Liens of the DIP Agent and the other DIP Secured Parties) so long as such investigation occurs within the Challenge Period; (iii) pay any fees or similar amounts to any person (other than the Prepetition First Lien Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (in accordance with the Prepetition First Lien Notes Documents); or (iv) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition Collateral, unless otherwise permitted hereby, without the prior written consent of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the Prepetition First Lien Agent (in accordance with the Prepetition First Lien Notes Documents).

16.    **Proofs of Claim**.  The Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Secured Parties in respect of all Prepetition Secured Obligations.  In addition, the Prepetition Secured Parties and the DIP Secured Parties will not be required to file any request for allowance and/or payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations

33271570.3

constituting administrative expenses or any DIP Obligations, as applicable.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, each of the Prepetition First Lien Agent, for the benefit of itself and the other Prepetition First Lien Secured Parties, the DIP Agent, for the benefit of itself and the other DIP Secured Parties, and the Prepetition Second Lien Agent, for the benefit of itself and the other Prepetition Second Lien Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, in its discretion) in the Debtors' lead chapter 11 case a single master proof of claim, which shall be deemed to have been filed in each of the Cases or Successor Cases (i) in the case of the Prepetition First Lien Agent, a proof of claim and/or aggregate proofs of claim in respect of any Prepetition First Lien Secured Obligations, (ii) in the case of the Prepetition Second Lien Agent, a proof of claim and/or aggregate proofs of claim in respect of any Prepetition Second Lien Obligations, and (iii) in the case of each of the Prepetition First Lien Agent, the Prepetition Second Lien Agent and the DIP Agent, a request or aggregate requests for allowance and/or payment of any portion of the Prepetition Secured Obligations constituting administrative expenses or any DIP Obligations, as applicable.

17. **Preservation of Rights Granted Under this Interim Order**.

(a) <u>No Non-Consensual Modification or Extension of Interim Order</u>.  The Debtors irrevocably waive any right to seek any amendment, modification, or extension of this Interim Order (including through any chapter 11 plan of reorganization) without the prior written consent of the DIP Agent (at the direction of the Required Lenders (as defined in the DIP Credit Agreement)) and the requisite Prepetition First Lien Secured Parties, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Secured Parties or any of the Prepetition First Lien Secured Parties.  In the event any or all of the provisions of this Interim

Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or Lien, claim, priority or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents.  Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Interim Order are hereafter reversed or modified on appeal, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal or modification on appeal, any incurrence of any DIP Obligations (including the use of Cash Collateral) or of a grant under this Interim Order of any priority, Lien or DIP Protections (including the Prepetition Adequate Protection), does not affect the validity of any DIP Obligations (including the use of Cash Collateral) so incurred, or any, priority, Lien or any DIP Protections (including the Prepetition Adequate Protection) so granted, to an entity that extended any such DIP Obligations (including the use of Cash Collateral) in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of any such DIP Obligations (including the use of Cash Collateral), or the granting of any priority, Lien or any DIP Protections (including the Prepetition Adequate Protection), were stayed pending appeal.

(b)    <u>Dismissal</u>.  If any order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, then notwithstanding any such dismissal, (i) the DIP Protections (including the Prepetition Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP

Secured Parties and the Prepetition Secured Parties, respectively, shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by the provisions of this Interim Order (and shall maintain their respective priorities as provided by this Interim Order) until all DIP Obligations and all Prepetition Secured Obligations have been Paid in Full, and such order of dismissal shall so provide (in accordance with sections 105 and 349 of the Bankruptcy Code), and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such DIP Protections (including the Prepetition Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, respectively.

(c)     Survival of Interim Order.  Prior to and until the entry of the Final Order, the provisions of this Interim Order and the DIP Loan Documents, any actions taken pursuant hereto or thereto, and all of the DIP Protections (including the Prepetition Adequate Protection), and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition First Lien Secured Parties, respectively, shall survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization in any Case or Successor Case, converting any Case to a case under chapter 7, dismissing any of the Cases, withdrawing of the reference of any of the Cases or any Successor Cases or providing for abstention from handling or retaining of jurisdiction of any of the Cases or any Successor Case in this Court, or terminating the joint administration of these Cases or any Successor Case or by any other act or omission.  The terms and provisions of this Interim Order, including all of the DIP Protections (including the Prepetition Adequate Protection) and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Secured Parties and the Prepetition Secured Parties, respectively, shall continue

in full force and effect and be binding on all parties in interest notwithstanding the entry of any

such order, and such DIP Protections (including the Prepetition Adequate Protection), and such

other rights, remedies, Liens priorities, privileges, protections and benefits, shall continue in full

force and effect in these proceedings and in any Successor Cases and after dismissal of any thereof,

and shall maintain their respective priorities as provided by this Interim Order. Subject to the

provisions of Paragraph 2(d) of this Interim Order with respect to the treatment of the Roll Up DIP

Obligations pursuant to any chapter 11 plan of reorganization with respect to any of the Debtors

and the Challenge Period, the DIP Obligations shall not be discharged by the entry of an order

confirming any such chapter 11 plan, the Debtors having waived such discharge pursuant to section

1141(d)(4) of the Bankruptcy Code.

18.     **[Reserved]**.

19.     **Other Rights and Obligations**.

(a)     Expenses.  As provided in the DIP Loan Documents (and without limiting

the Debtors' respective obligations thereunder), the applicable Debtors will pay all reasonable and

documented expenses incurred by the DIP Agent and the DIP Lenders (including the reasonable

and documented fees and disbursements of all counsel for the DIP Agent and any internal or third-

party appraisers, consultants, advisors and auditors engaged by or for the benefit of the DIP Agent

and/or its counsel) in connection with, among other things, the preparation, execution, delivery,

and administration of the DIP Loan Documents, this Interim Order, the Final Order, and any other

agreements, instruments, pleadings, or other documents prepared or reviewed in connection with

any of the foregoing, whether or not any or all of the transactions contemplated hereby or by the DIP Loan Documents are consummated (collectively, the "**Expense Reimbursement**").

        (b)    <u>Notice of Professional Fees</u>.  Professionals for the DIP Agent, and the DIP Lenders, the Prepetition First Lien Agent and the Prepetition Second Lien Agent (including professionals engaged by counsel to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition Second Lien Agent as applicable) (collectively, the "**Lender Professionals**") shall not be required to file fee applications with or submit invoices to this Court, United States Trustee, any Committee or any other party in interest.  Copies of summary invoices submitted to the Debtors by such Lender Professionals shall be forwarded by the Debtors to the United States Trustee, counsel for any Committee, and such other parties as this Court may direct; <u>provided</u>, <u>however</u>, that such summary invoices shall not be required to contain time entries and may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such summary invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine or other applicable privilege.  If the Debtors, United States Trustee or any Committee object to the reasonableness of the fees and expenses of any of the Lender Professionals and cannot resolve such objection within ten days of receipt of such invoices, then the Debtors, United States Trustee, or the Committee, as the case may be, shall notify applicable Lender Professional in writing of its objection (the "**Fee Objection**"), setting forth the specific objection to the disputed fees (to be followed by the filing with this Court and service on such Lender Professionals, as necessary) limited to the issue of the reasonableness of such fees and expenses, and any failure by any such party to make a Fee Objection within such ten day period shall constitute a waiver of any right of such party to object

to the applicable invoice.  Notwithstanding any provision herein to the contrary, any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a professional fee invoice in respect of Lender Professionals shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection.  The Debtors shall timely pay in accordance with the terms and conditions of this Interim Order (a) the undisputed fees, costs, and expenses reflected on any invoice to which a Fee Objection has been timely made and (b) all fees, costs, and expenses on any invoice to which no Fee Objection has been timely made.  All such unpaid fees, costs, expenses, and charges of the DIP Agent and the DIP Lenders that have not been disallowed by this Court on the basis of an objection filed by the Debtor, the United States Trustee or the Committee (or any subsequent trustee of the Debtors' estates) in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Interim Order.

(c)     Binding Effect.  Subject only to Paragraph 5 above, the provisions of this Interim Order, including all findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in these Cases and any Successor Cases, including the DIP Secured Parties, the Prepetition Secured Parties, any Committee, and the Debtors and their respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), whether in any of the Cases, in any Successor Cases, or upon dismissal of any such Case or Successor Case; provided, however, that the DIP Secured Parties and the Prepetition First Lien Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any

33271570.3

chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Case or Successor Case.

(d)    No Waiver.    The failure of the Prepetition Secured Parties or the DIP Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Notes Documents, the DIP Loan Documents or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.    Nothing contained in this Interim Order (including the authorization of the use of any Cash Collateral) shall impair or modify any rights, claims, or defenses available in law or equity to any Prepetition Secured Party or any DIP Secured Party, including rights of a party to a swap agreement, securities contract, commodity contract, forward contract, or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion).    Except as prohibited by this Interim Order, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the Prepetition Secured Parties or the DIP Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of the Cases or any Successor Cases to cases under chapter 7, dismissal of the Cases or any Successor Cases, or the appointment of a trustee or examiner in the Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Secured Parties or the Prepetition Secured Parties, respectively, under the DIP Loan Documents or the

33271570.3

78

Prepetition Notes Documents, the Bankruptcy Code or otherwise.  Except to the extent otherwise expressly provided in this Interim Order or by law, neither the commencement of the Cases nor the entry of this Interim Order shall limit or otherwise modify the rights and remedies of the Prepetition Secured Parties under the Prepetition Notes Documents or with respect to any non-Debtor entities or their respective assets, whether such rights and remedies arise under the Prepetition Notes Documents, applicable law, or equity.

(e)     <u>No Third Party Rights</u>.  Except as explicitly provided for herein or in any DIP Loan Document, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.  In determining to make any loan (whether under the DIP Credit Agreement or otherwise) or to permit the use of Cash Collateral, the DIP Secured Parties and the Prepetition Secured Parties shall not (i) be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal, state or local statute or regulation) or (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

(f)     <u>No Marshaling</u>.  Subject to the entry of the Final Order, neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as applicable.

(g)     <u>Amendments</u>.  The Debtors are authorized and empowered, without further notice and hearing or approval of this Court, to amend, modify, supplement, or waive any provision

33271570.3

of the DIP Loan Documents in accordance with the provisions thereof, in each case unless such amendment, modification, supplement, or waiver (i) increases the interest rate (other than as a result of the imposition of the default rate), (ii) increases the aggregate lending commitments of all of the DIP Lenders in respect of the DIP Facility, (iii) shortens the Maturity Date (as defined in the DIP Credit Agreement), or (iv) adds or amends (in any respect unfavorable to the Debtors) any Event of Default.  No waiver, modification, or amendment of any of the provisions of the DIP Loan Documents shall be effective unless set forth in writing, signed by or on behalf of all the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties under the DIP Credit Agreement) and, except as provided herein, approved by this Court. Notwithstanding the foregoing, no waiver, modification, or amendment of any of the provisions of this Interim Order or the DIP Loan Documents that would directly and adversely affect the rights or interests of the Prepetition First Lien Secured Parties, as applicable, shall be effective unless also consented to in writing by the Prepetition First Lien Agent on behalf of the Prepetition First Lien Secured Parties (in accordance with the Prepetition First Lien Notes Documents).

(h)    _Inconsistency_.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

(i)    _Enforceability_.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable _nunc pro tunc_ to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall

33271570.3

be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

(j)    <u>Reservation of Rights</u>.  Nothing in this Interim Order shall be deemed to constitute the consent of the DIP Secured Parties or the Prepetition First Lien Secured Parties, and each of the foregoing expressly reserve the right to object, to entry of any order of the Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to Pay in Full the DIP Obligations, the Prepetition First Lien Secured Obligations, and the Prepetition Adequate Protection and all of the foregoing are Paid in Full on the closing date of such sale.

(k)    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

20.    **<u>Final Hearing</u>**

(a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **<u>July 23, 2025 at 10:00 A.M. (prevailing Eastern Time)</u>** at the United States Bankruptcy Court for the District of Delaware.

(b)    <u>Final Hearing Notice</u>.  Within three business days of entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing), a copy of this Interim Order on the parties having been given notice of the DIP Motion and to any other party that has filed a request for notices with this Court and to counsel for the Committee.

33271570.3

21.    **<u>Retention of Jurisdiction</u>**.  This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.


**Dated: June 25th, 2025**
                       **Wilmington, Delaware**

                                                      **LAURIE SELBER SILVERSTEIN**
                                                      **UNITED STATES BANKRUPTCY JUDGE**