## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LEISURE INVESTMENTS HOLDINGS LLC, *et al.*,[1] | Case No. 25-10606 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** July 23, 2025 at 10:00 a.m. (ET) |
| | **Objection Deadline:** July 16, 2025 at 4:00 p.m. (ET) |

### DEBTORS' MOTION FOR AN ORDER ESTABLISHING PROCEDURES FOR SALES OF CERTAIN MISCELLANEOUS ASSETS OUTSIDE OF THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE

Leisure Investments Holdings LLC ("**LIH**") and certain of its affiliates (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") hereby file this motion (this "**Motion**") for entry of an order, substantially in the form of **Exhibit A** hereto (the "**Proposed Order**"), establishing procedures for the sale of certain of the Debtors' Miscellaneous Assets (as defined below) outside the ordinary course of business, free and clear of all liens, claims, interests, and encumbrances. In support of this Motion, the Debtors respectfully state as follows:

---

[1] Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors is not provided herein. A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://veritaglobal.net/dolphinco, or by contacting counsel for the Debtors. For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

**A.      General Background**

4.      On March 31, 2025, certain of the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code.  On April 16, 2025 and May 4, 2025, Controladora Dolphin, S.A. de C.V. and Embassy of the Seas Limited, respectively, also filed voluntary petitions

for relief pursuant to chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered for procedural purposes only.  See Docket Nos. 32, 68 & 126.

5.      On May 6, 2025, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors [Docket No. 128].  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

6.      Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in detail in the *Declaration of Steven Robert Strom in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 10] (the "**First Day Declaration**").

**B.      The Miscellaneous Assets**

7.      The Debtors and their affiliates (collectively, the "**Company**") operate more than 30 attractions (each, a "**Property**" and collectively, the "**Properties**")[2] —dolphin habitats, marinas and water, theme, and adventure parks—in eight countries across three continents, with primary operations in Mexico, the United States, and the Caribbean, including Jamaica, Cayman Islands, Dominican Republic and St. Kitts.  The Company also has locations in Italy and Argentina.  The Company's parks are home to approximately 2,400 animals from more than 80 species of marine life, including hundreds of marine mammals (such as dolphins, sea lions, manatees and seals), birds, and reptiles.  As of 2023, the Company's marine mammal family included approximately 295 dolphins, 51 sea lions, 18 manatees and 18 seals.

8.      In the ordinary course of operating their business, the Debtors have amassed and are currently in possession of, or have a right to possess, certain assets, including, but not limited

---

[2]      As used in this Motion, the term "Property" and "Properties" shall refer only to those owned, leased or in which a Debtor-entity has a direct interest, and not to those owned or leased by Non-Debtors.

to, animals (each, an "**Animal**" and collectively, "**Animals**"); real estate and other real property

and fixtures of de minimis value[3] to the Debtors (each, a "**Real Property Asset**" and collectively,

the "**Real Property Assets**") and equipment, furniture, supplies, intellectual property and other

miscellaneous tangible and intangible personal property (each, a "**Personal Property Asset**" and

collectively, the "**Personal Property Assets**" and collectively with the Animals and Real Property

Assets, the "**Miscellaneous Assets**"), which are and will be a burden to the Debtors' estates.

9.     Also, certain Animals are located at parks that may be closed as the Debtors pursue

a sale of their businesses. The safety and humane treatment of these Animals is paramount, and

the cost of caring for such Animals is exceedingly high while the Debtors' liquidity remains

constrained.  Therefore, not only will the sale and transfer of these Animals bring value to the

Debtors' estates, it will also aid in the Animals' welfare and safety.

10.    Accordingly, in the exercise of their sound business judgment, the Debtors have

determined that it is in the best interests of the Debtors' stakeholders to promptly sell the

Miscellaneous Assets without the need for further notice, motions, hearings and subsequent Court

approval, subject to certain procedures set forth herein, in order to maximize the value of the

Miscellaneous Assets.  The Debtors believe that the sale of the Miscellaneous Assets will eliminate

unnecessary costs of maintaining these assets, maximize the value of their estates, and promote

Animal welfare.

11.    Given the value of the Miscellaneous Assets in relation to the Debtors' overall

operations, the Debtors submit that the costs and other administrative expenses that would

otherwise be incurred by selling such assets by separate motions will be greatly reduced by the

---

[3]    As set forth in Section C, the Debtors have determined, in consultation with their advisors, which assets they consider de minimis for purposes of this Motion based on their asset class and recovery realized upon sale.  See p. 4.

implementation of efficient procedures.  Therefore, the Debtors propose the procedures set forth

below to streamline the sale and transfer process and ensure that parties in interest receive

appropriate notice of such sales.  The proposed procedures described herein will allow the Debtors

to sell the Miscellaneous Assets in an efficient and cost-effective manner, thereby allowing the

Debtors to monetize the Miscellaneous Assets on a timeline consistent with the contemplated

wind-down.

**C.    Miscellaneous Asset Sale Procedures**

12.    In connection with the sale of the Miscellaneous Assets, the Debtors seek

authorization to sell such Miscellaneous Assets (each, a "**Proposed Miscellaneous Asset Sale**")

pursuant to the following procedures (the "**Miscellaneous Asset Sale Procedures**")[4]:

a)    ***Real Property Assets***. If the sale consideration from a purchaser of a Real
Property Asset or Real Property Assets does not exceed $1 million, on a per-transaction basis, the
Debtors shall file a notice, substantially in the form attached to the Proposed Order as Exhibit 1 (a "**Miscellaneous Asset Sale Notice**") with the Court and serve the
Miscellaneous Asset Sale Notice, via first-class mail, electronic mail or facsimile, to (i) the Office
of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Lockbox
35, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov);
(ii) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), (a) Raines
Feldman Littrell LLP, 824 North Market Street, Suite 805, Wilmington, DE 19801, Attn: Thomas
J. Francella, Jr. (tfrancella@raineslaw.com) and (b) Law Offices of Manganelli, Leider & Savio,
P.A., 1900 N.W. Corporate Blvd., Ste. 200W, Boca Raton, FL 33431, Attn: Christian Savio
(csavio@mls-pa.com); (iii) the DIP Lenders and counsel to the DIP Lenders, Baker & McKenzie
LLP, 452 Fifth Avenue, New York, New York 10018, Attn: Paul J. Keenan Jr.
(paul.keenan@bakermckenzie.com); (iv) the DIP Agent, GLAS Americas, LLC, 3 Second Street,
Suite 206 Jersey City, NJ 07311, Re: Triton Investments Holdings, LLC
(clientservices.usadcm@glas.agency); (iv) counsel to the DIP Agent, Troutman Pepper Locke,
LLP, 111 Huntington Avenue Boston, MA 02199, Attn: Adrienne K. Walker
(awalker@troutman.com); (v) the Prepetition First Lien Agent GLAS Americas, LLC, 3 Second
Street, Suite 206 Jersey City, NJ 07311; Attn: Controladora Dolphin, S.A. de C.V-Collateral Agent
(clientservices.usadcm@glas.agency); (vi) counsel to the Prepetition First Lien Agent Foley &
Lardner LLP, 111 Huntington Avenue, Suite 2500, Boston, MA 02199, Attn: Adrienne K. Walker
(awalker@foley.com); (vii) the Prepetition Second Lien Agent, GLAS Americas, LLC, 3 Second
Street, Suite 206 Jersey City, NJ, 07311, Attn: Controladora Dolphin, S.A. de C.V-Collateral

---

[4]    To the extent that the Debtors seek to sell any assets for a purchase price over the thresholds described below,
such transaction will be subject to a separate motion filed and served in accordance with the Federal Rules of
Bankruptcy Procedures (the "**Bankruptcy Rules**") and applicable Local Rules.

Agent (clientservices.usadcm@glas.agency); (viii) counsel to the Prepetition Second Lien Agent, Foley & Lardner LLP, 111 Huntington Avenue, Suite 2500, Boston, MA 02199, Attn: Adrienne K. Walker (awalker@foley.com); (ix) all known parties holding or asserting liens, claims, encumbrances or other interests in the assets being sold and their respective counsel; and (x) all parties that have requested notice in these Chapter 11 Cases pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure (collectively, the "**Notice Parties**"), which Notice Parties shall have twenty-one (21) days from the receipt of such notice (unless extended by agreement from the Debtors) to file an objection and advise counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801, Attn: Jared Kochenash (jkochenash@ycst.com), in writing with specific and particular bases that they object to the Proposed Miscellaneous Asset Sale described in such Miscellaneous Asset Sale Notice. If no written objection is received from the Notice Parties, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a hearing, upon entry of an order of this Court submitted under certification of counsel in accordance with these procedures. If a timely written objection is received from the Notice Parties, the Debtors shall comply with the procedures set forth in subparagraph (e) below.

   b) ***Personal Property Assets.*** If the sale consideration from a purchaser for a Personal Property Asset or multiple Personal Property Assets, on a per-transaction basis, is less than or equal to $250,000, the Debtors shall file a Miscellaneous Asset Sale Notice file with the Court and serve such Miscellaneous Asset Sale Notice by first-class mail, electronic mail or facsimile on the Notice Parties, which Notice Parties shall have ten (10) days from the receipt of such notice (unless extended by agreement from the Debtors) to file an objection and advise counsel to the Debtors set forth in subparagraph (a) in writing with specific and particular bases that they object to the Proposed Miscellaneous Asset Sale described in such Miscellaneous Asset Sale Notice. If no written objection is received from the Notice Parties, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a hearing, upon entry of an order of this Court submitted under certification of counsel in accordance with these procedures. If a timely written objection is received from the Notice Parties, the Debtors shall comply with the procedures set forth in subparagraph (e) below.

   c) ***Animals.***

     A. If sale consideration from a purchaser for an Animal or Animals is less than or equal to $250,000, the Debtors shall file a Miscellaneous Asset Sale Notice with the Court and serve such Miscellaneous Asset Sale Notice by first-class mail, electronic mail or facsimile on the Notice Parties, which Notice Parties shall have ten (10) days from the receipt of such notice (unless extended by agreement from the Debtors) to file an objection and advise counsel to the Debtors set forth in subparagraph (a) in writing with specific and particular bases that they object to the Proposed Miscellaneous Asset Sale described in such Miscellaneous Asset Sale Notice. If no written objection is received from the Notice Parties, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a

hearing, upon entry of an order of this Court submitted under certification of counsel in accordance with these procedures.  If a timely written objection is received from the Notice Parties, the Debtors shall comply with the procedures set forth in subparagraph (e) below.

B.    If sale consideration from a purchaser for an Animal or Animals is greater than $250,000 and less than or equal to $500,000, the Debtors shall file a Miscellaneous Asset Sale Notice with the Court and serve such Miscellaneous Asset Sale Notice by first-class mail, electronic mail or facsimile on the Notice Parties, which Notice Parties shall have twenty-one (21) days  from the receipt of such notice (unless extended by agreement from the Debtors) to file an objection and advise counsel to the Debtors set forth in subparagraph (a) in writing with specific and particular bases that they object to the Proposed Miscellaneous Asset Sale described in such Miscellaneous Asset Sale Notice.  If no written objection is received from the Notice Parties, the Debtors may consummate the Proposed Miscellaneous Asset Sale, without further notice to any other party and without the need for a hearing, upon entry of an order of this Court submitted under certification of counsel in accordance with these procedures.  If a timely written objection is received from the Notice Parties, the Debtors shall comply with the procedures set forth in subparagraph (e) below.

d)    The Miscellaneous Asset Sale Notice, to the extent that the Debtors have such information, will include:  (i) a description of the Miscellaneous Assets that are the subject of the Proposed Miscellaneous Asset Sale; (ii) the geographic location of the Miscellaneous Assets, as applicable; (iii) the economic terms of sale; (iv) the identity of any non-debtor party to the Proposed Miscellaneous Asset Sale and specify whether that party is an "affiliate" or "insider" as those terms are defined under section 101 of the Bankruptcy Code; (v) the identity of the party, if any, holding liens, claims, encumbrances or other interests in the subject Miscellaneous Assets; and (vi) any brokerage or investment banker fees and expenses to be paid as part of the Proposed Miscellaneous Asset Sale (the payment of which, in the case of Greenhill and Keen-Summit, shall be subject to the terms of any retention order and/or engagement letter approved by this Court).

e)    If a written objection to a Proposed Miscellaneous Asset Sale is timely filed and received by the Objection Deadline, the Debtors will not proceed with the Proposed Miscellaneous Asset Sale unless (i) the objection is withdrawn or otherwise resolved; or (ii) the Court approves the Proposed Miscellaneous Asset Sale at the next regularly scheduled omnibus hearing in the Chapter 11 Cases that is at least five (5) business days after receipt by the Debtors of the objection, or at such other hearing in the Chapter 11 Cases that is agreed to by the objecting party and the Debtors.

f)    Unless otherwise agreed to by the Debtors in writing, all buyers will acquire the Miscellaneous Assets sold by the Debtors pursuant to these Miscellaneous Asset Sale

Procedures on an "AS IS-WHERE IS" basis without any representations or warranties from the Debtors as to the quality or fitness of such assets for either its intended or any other purposes; provided, however, that buyers will take title to the Miscellaneous Assets free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims, encumbrances and other interests, if any, to attach to the proceeds of the sale of the Miscellaneous Assets, with the same validity, force, and effect which they had against such Miscellaneous Assets prior to the sale.

g)      Good faith purchasers of the Miscellaneous Assets shall be entitled to the protections of section 363(m) of the Bankruptcy Code provided that such purchaser submit a declaration in support of the proposed Sale and such evidence is not controverted or otherwise challenged.

h)      The absence of a timely objection to the sale of the Miscellaneous Assets in accordance with the Miscellaneous Asset Sale Procedures shall be "consent" to such sale within the meaning of section 363(f)(2) of the Bankruptcy Code.

## RELIEF REQUESTED

13.      By this Motion, the Debtors request that the Court enter the Proposed Order, establishing procedures to sell the Miscellaneous Assets outside of the ordinary course of their business, free and clear of all liens, claims, interests and encumbrances, pursuant to sections 105 and 363 of the Bankruptcy Code.

## BASIS FOR RELIEF

14.      In the exercise of their sound business judgment, the Debtors have determined that the prompt sale of the Miscellaneous Assets, without the need for further notice, motions, hearings and subsequent Court approval, subject to the procedures set forth herein, is in the best interests of the Debtors' stakeholders, and will enable the Debtors to maximize the value of the Miscellaneous Assets. The Debtors desire to sell the Miscellaneous Assets to, among other things, eliminate any costs associated with maintaining these assets and to preserve and maximize the value of their estates.

15.      The Debtors believe that the asset sale procedures set forth below will conserve the resources of the Court, the Debtors, and interested parties by avoiding the need for numerous

motions to approve numerous piecemeal sales.  The Debtors submit that the entry of an order authorizing the sale of the Miscellaneous Assets without further notice or hearing, other than as set forth below, is warranted under these circumstances, and in furtherance of the Debtors' efforts to successfully prosecute the Chapter 11 Cases.

**I.      The Sales of the Miscellaneous Assets Represent a Sound Exercise of the Debtors' Business Judgment**

16.      Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  However, courts in this Circuit and others have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the debtors.  *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991).

17.      Section 363(c) of the Bankruptcy Code authorizes the Debtors to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing," unless the court orders otherwise.  11 U.S.C. § 363(c)(1).  "In determining the meaning of the phrase "ordinary course of business," as used in 11 U.S.C. § 363(c)(1), some courts have focused upon the transaction both from the creditors' vantage point and from the debtor's perspective to ascertain if the transaction was the type that the creditors

would expect to receive notice and whether it was ordinary for the particular type of business involved." *In re Baker*, 118 B.R. 24, 28 (Bankr. S.D.N.Y. 1990) (citations omitted).  Under any definition, the Debtors submit that the sale of their obsolete assets and excess related equipment is in the ordinary course of their business and does not need court approval.

18.    Further, to the extent the sale of assets is outside of the ordinary course of the Debtors' business, such sales should be authorized pursuant to section 363(b)(1) of the Bankruptcy Code, which provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Courts in this district regularly authorize sales of a debtor's assets if there is a "sound business purpose" that justifies such use of estate property.  *See, e.g.*, *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (adopting the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same).

19.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is consistent with the Debtors carrying out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value."  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders* v. *McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232-33 (Bankr. S.D.N.Y.

1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code.  Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993); *Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets.  *See, e.g.*, *Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that the bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

20.    The Debtors submit that there is ample business justification for the approval of the Miscellaneous Asset Sale Procedures and the sale of the Miscellaneous Assets in accordance therewith.  The sales of the Miscellaneous Assets will inure to the benefit of the Debtors' estates and creditors, as they will further the Debtors' efforts to successfully prosecute the Chapter 11

33121197.5

Cases and, therefore, the relief requested represents an exercise of the Debtors' sound business judgment.

21.     Moreover, parties in interest will have an appropriate opportunity to review, among other things, the adequacy of the price to be received for any sale of Miscellaneous Assets in accordance with the Miscellaneous Asset Sale Procedures.  Bankruptcy Rule 2002(a)(2) generally requires a minimum of twenty-one (21) days' notice of proposed sales of estate property outside the ordinary course of business to be provided by mail to parties in interest "unless the court for cause shown shortens the time or directs another method of giving notice."  Fed. R. Bankr. P. 2002(a)(2).  The Bankruptcy Code defines the notice and hearing requirement to mean such notice and opportunity for hearing "as is appropriate in the particular circumstances" of the case, including court approval of a sale of estate property without a hearing where appropriate notice is given and no party timely requests a hearing.  11 U.S.C. § 102(1).  Similarly, the court in *In re Lomas Fin. Corp.* held that notice is appropriate under section 102(1) of the Bankruptcy Code where it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  212 B.R. 46, 54 (Bankr. D. Del. 1997) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

22.     The Miscellaneous Asset Sale Procedures contain reasonable notice and objection procedures, which are justified under the circumstances of the Chapter 11 Cases and comply with objection periods applicable under Bankruptcy Rule 2002, as the Miscellaneous Assets are not, or will not be, necessary for the continued operation of the Debtors' business.  The Miscellaneous Asset Sale Procedures are designed to maximize the value realized from the sales of the Miscellaneous Assets.  The Debtors will serve notice of each Proposed Miscellaneous Asset Sale

on the Notice Parties and the Rule 2002 Parties, as applicable, as provided for in the Miscellaneous Asset Sale Procedures.  As such, any party whose rights may be affected by a proposed sale will receive adequate notice.

23.    Courts in this and other districts have approved similar procedures to permit the sale of such miscellaneous assets in other large chapter 11 cases.  *See, e.g.*, *In re 24 Hour Fitness Worldwide, Inc.*, No. 20-11558 (KBO) (Bankr. D. Del. July 14, 2020) (approving miscellaneous asset sales up to $2.5 million); *In re Southcross Energy Partners, L.P.*, No. 19-10702 (MFW) (Bankr. D. Del. May 6, 2019) (authorizing miscellaneous asset sales up to $2 million); *Sears Holdings Corp.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2018) (approving miscellaneous asset sales procedures for assets up to $15 million); *In re Nuverra Envtl. Sols., Inc.*, No. 17-0949 (KJC) (Bankr. D. Del. June 5, 2017) (approving miscellaneous asset sales of up to $2 million); *In re Paragon Offshore PLC*, No. 16-10386 (CSS) (Bankr. D. Del. Mar. 28, 2017) (authorizing miscellaneous asset sales of $2.5 million); *In re Chaparral Energy, Inc.*, No. 16-11144 (Bankr. D. Del. August 15, 2016) (authorizing miscellaneous asset sales up to $4 million); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. June 3, 2016) (authorizing miscellaneous asset sales up to $5 million); *In re Quicksilver Res. Inc.*, No. 15-10585 (Bankr. D. Del. April 14, 2015) (authorizing miscellaneous asset sales up to $2.5 million).

II.    **The Sales of the Miscellaneous Assets Should Be Approved Under Section 363(f) of the Bankruptcy Code**

24.    Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims or interests in such property if (i) such a sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property, (iv) the interest is the

subject of a *bona fide* dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *see In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the subsections is met).

25.     The Debtors propose to sell or transfer the Miscellaneous Assets in a commercially reasonable manner and expect that the value of the proceeds from such sales or transfers will fairly reflect the value of the property sold.  Pursuant to the Miscellaneous Asset Sale Procedures, any party with a lien on the Miscellaneous Assets sold or transferred shall have a corresponding security interest in the proceeds of such sale or transfer with the same validity, extent, and priority as attached to such Miscellaneous Assets immediately prior to the transaction.  Moreover, the Debtors propose that if a party in interest fails to timely object to a Miscellaneous Asset sale consistent with the Miscellaneous Asset Sale Procedures, such party shall be deemed to "consent" to such Miscellaneous Asset sale within the meaning of section 363(f)(2) of the Bankruptcy Code. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales or transfers free and clear of liens, claims, encumbrances, and other interests

## C.    Bankruptcy Rule 6004(h) Should Be Waived

26.     Bankruptcy Rule 6004(h) provides that an order authorizing the use, sale, or lease of property is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise.  The Debtors, however, request that the Proposed Order, and any sale consummated pursuant to those procedures, be effective immediately.  It is in the best interests of the Debtors' estates to facilitate the closing of these miscellaneous asset sale transactions, thereby expediting the receipt of related sale proceeds into the estates.  Moreover, the often-difficult task of securing a buyer will be facilitated by the Debtors' ability to quickly consummate a sale

33121197.5

transaction.  Accordingly, the Debtors submit that the fourteen-day stay set forth in Bankruptcy Rule 6004(h) should be waived in connection with all sales of Miscellaneous Assets pursuant to the Miscellaneous Asset Sale Procedures.

27.    For all of the reasons set forth above, the Debtors respectfully request that the Court authorize and approve the relief requested herein as an exercise of the Debtors' sound business judgment.

## NOTICE

28.    Notice of this Motion will be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Prepetition First Lien Noteholders and DIP Lenders; (iv) counsel to the Prepetition Second Lien Noteholders; (v) counsel to the Prepetition First Lien Collateral Agent and the Prepetition Second Lien Collateral Agent; (vi) any party that the Debtors believe have asserted or may assert a lien in the Debtor's assets; and (vii) all parties who, as of the filing of this Supplement, have requested notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested herein such other and further relief as is just and proper.

Dated:  July 2, 2025

*/s/ Jared W. Kochenash*
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Email: rbrady@ycst.com
      sgreecher@ycst.com
      amielke@ycst.com
      jkochenash@ycst.com

*Counsel to the Debtors and Debtors in Possession*