# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| LEISURE INVESTMENTS HOLDINGS LLC, *et al.*, | Case No. 25-10606 (LSS) |
| Debtors. | (Jointly Administered) |
| | Docket Ref. No. 205 |

### DECLARATION OF ALFONSO DUENAS BARAJAS IN SUPPORT OF EDUARDO ALBOR, IN CONNECTION WITH THE CONSTITUTIONAL CLAIMS (AMPAROS) FILED IN MEXICO

1. I, Alfonso Duenas Barajas, am a licensed attorney in Mexico with over twelve years of experience, focusing on corporate, commercial, constitutional, and insolvency litigation.

2. I respectfully submit this declaration solely on behalf of and in support of Mr. Eduardo Albor, whom I represent in his individual capacity.

3. The purpose of this declaration is to provide clarification, in my capacity as legal counsel to Mr. Eduardo Albor under Mexican law, regarding the circumstances alleged concerning the purported failure to withdraw the extension of amparo case number 320/2025. This declaration is intended to set forth the pertinent factual context and the legal rationale underpinning Mr. Albor's decision in this matter.

### OVERVIEW OF AMPARO CLAIMS FILED IN MEXICO

4. Several *amparo* claims have been filed in Mexico in connection with the withdrawal of the Mexican insolvency proceeding (*Concurso Mercantil*) initiated by Controladora Dolphin. It is important to clarify that the only *amparo* claims filed by Mr. Albor—in his capacity as legal representative of Controladora Dolphin at the time—are those listed below. Other *amparos* may

1

have been filed by different parties or representatives, but do not involve direct action by Mr. Albor:

    a) <u>Direct *amparo* claims</u> 393/2025 and extension to *amparo* claim 320/2025, both challenging the withdrawal of the *Concurso Mercantil*. Notably, case 320/2025 was originally filed before the Stay Enforcement Order was issued and was not filed by Mr. Albor, but by another legal representative of Controladora Dolphin. Mr. Albor later filed a procedural extension to this case to preserve rights.

    b) <u>Indirect amparo claim</u> 72/2025, which challenged the lifting of precautionary measures previously granted in the *Concurso Mercantil* proceeding. This claim has already been fully withdrawn.

## STATUS OF AMPARO WITHDRAWALS AFTER THE STAY ENFORCEMENT ORDER WAS ENTERED

5. Following the entry of the Stay Enforcement Order, Mr. Albor, in good faith and to comply with this Court's directives, instructed the withdrawal of two *amparo* claims—cases 72/2025 and 393/2025—each of which had been initiated in Mexico after the issuance of the Stay Enforcement Order. The respective notices of withdrawal were duly submitted and filed before the competent Mexican courts on the dates previously certified to this Court..

6. Notwithstanding the timely filing of the withdrawal in the *amparo* case 393/2025, the Mexican judiciary has not yet issued a formal resolution acknowledging or giving effect to said withdrawal. This is attributable to the fact that the Eighth Circuit Collegiate Court has imposed a procedural suspension on all matters involving Controladora Dolphin, stemming from an internal impediment raised by the sitting magistrates. The said procedural stay remains in force, and until it is resolved, the Mexican court lacks authority to act on the withdrawal request. Accordingly, the

continued pendency of the matter is wholly outside of Mr. Albor's control and does not reflect any ongoing prosecutorial conduct or affirmative litigation activity on his part.

### REGARDING AMPARO CLAIM EXTENSION 320/2025

7. As previously noted, *amparo* claim 320/2025 was initiated before the issuance of the Stay Enforcement Order, and it was not filed by Mr. Albor. Rather, it was commenced by a different legal representative of Controladora Dolphin to contest the withdrawal of the *Concurso Mercantil* proceeding originally filed before the commencement of the Chapter 11 case.

8. As of the date of this declaration, neither the *amparo* claim 320/2025 nor the extension thereto has been formally admitted for processing by the competent court. This is due to the temporary suspension of all proceedings involving Controladora Dolphin, ordered by the Eighth Circuit Collegiate Court, as a result of an internal procedural impediment raised by the sitting magistrates, which remains unresolved and continues to prevent the advancement of such proceedings.

9. Following the entry of this Court's Stay Enforcement Order, Mr. Albor undertook a careful and good-faith assessment of his obligations under said order, as well as the status and nature of the pending proceedings in Mexico. As a result of that analysis, and taking into account that: (i) the original *amparo* claim had been filed before the issuance of the Stay Enforcement Order; (ii) the procedural action in question—the extension—does not constitute a new or independent legal proceeding, but rather a continuation of the original *amparo* claim; (iii) under applicable Mexican procedural law, the extension was required to be filed within a defined statutory timeframe to preserve procedural standing and avoid dismissal; and (iv) the underlying *amparo* proceeding is defensive, aimed at protecting Mr. Albor's constitutional and human rights under Mexican law—Mr. Albor proceeded to file the extension solely to preserve the legal validity, procedural viability, and admissibility of the originally filed *amparo* claim.

10. The extension of the *amparo* claim 320/2025 was submitted by Controladora Dolphin through Mr. Albor, acting in his capacity as the company's legal representative. This legal representation was the one originally acknowledged and recognized by the *Concurso Mercantil* Court before the purported change in the composition of the company's governing body, effected through the corporate resolutions dated March 28, 2025. Aside from this capacity, Mr. Albor does not possess any other legal standing or authority through which to assert a challenge to the withdrawal of the *Concurso Mercantil* proceeding.

11. The failure to pursue the aforementioned legal challenges could result in material adverse consequences. In particular, Mr. Albor's inaction in opposing the withdrawal of the *Concurso Mercantil* could be construed, under Mexican law, as tacit acceptance or acquiescence to the validity of the March 28 corporate resolutions, substantially undermining his position in parallel proceedings that seek to nullify those acts. Accordingly, the filing of the amparo extension should not be regarded as a new or affirmative litigation measure, but rather as a necessary continuation of Mr. Albor's defensive legal strategy aimed at safeguarding his procedural and substantive rights.

12. Moreover, under Mexican procedural law, if Mr. Albor were to consent—expressly or implicitly—to the withdrawal of the *Concurso Mercantil*, such action would be treated as final and binding, precluding any further challenge to the withdrawal or any attempt to reinstate the insolvency proceeding. This would irrevocably impair Mr. Albor's ability to defend the legitimacy of the original *Concurso Mercantil* filing and would materially prejudice his legal rights in Mexico.

## **COMPLIANCE WITH THE STAY ENFORCEMENT ORDER**

13. It is Mr. Albor's good-faith understanding that the Stay Enforcement Order requires him to cease the prosecution of legal actions in Mexico undertaken in the representation of the Debtors. He interprets this obligation to mean the suspension of any further affirmative procedural acts in

4

such proceedings. However, Mr. Albor does not interpret the Stay Enforcement Order as mandating the withdrawal of previously filed pleadings or procedural continuations—such as the extension to the amparo claim in case 320/2025—particularly where those filings predate the issuance of the Stay Enforcement Order and are defensive in nature.

14. Although the *amparo* proceeding remains pending following the entry of the Stay Enforcement Order, it forms part of a constitutionally protected appellate mechanism under Mexican law. It represents a procedural continuation of Mr. Albor's broader defensive strategy to challenge the withdrawal of a judicially initiated insolvency proceeding (*Concurso Mercantil*) that predates the commencement of the Debtors' Chapter 11 case.

15. The *amparo* proceeding does not seek to assert operational control over any of the Debtors, nor does it aim to interfere, directly or indirectly, with the administration of the Debtors' estates or the ongoing proceedings before this Court. Rather, it constitutes a procedural safeguard intended to preserve Mr. Albor's legal rights under Mexican constitutional and corporate law, and to allow the Mexican judiciary to assess the lawfulness of the corporate acts and procedural steps that culminated in the withdrawal of the *Concurso Mercantil*.

16. To date, the filing and pendency of the *amparo* proceeding have not resulted in any disruption to the Debtors' operations, nor have they interfered with or impeded the progress of the Debtors' restructuring efforts under Chapter 11.

## **RESPECT FOR THE CONSTITUTIONAL RIGHTS OF MR. ALBOR**

17. Mr. Albor remains committed to full compliance with the Stay Enforcement Order issued by this Court and has undertaken all reasonable measures to ensure adherence thereto. Notwithstanding this commitment, it is respectfully submitted that Mr. Albor is a citizen of the United Mexican States and, in such capacity, is entitled to the protection and exercise of his fundamental rights as enshrined in the Political Constitution of the United Mexican States..

18. The legal actions that Mr. Albor continues to maintain in Mexico—including the procedural extension of *amparo* case 320/2025—do not constitute acts of defiance, nor do they represent any effort to circumvent or undermine the authority or jurisdiction of this Court. Rather, they are undertaken strictly within the framework of Mexican law and are intended to preserve and assert rights guaranteed to Mr. Albor under the Mexican constitutional order.

19. These proceedings are defensive and are exclusively directed at challenging governmental and corporate acts that Mr. Albor, in good faith, believes to be unlawful under Mexican law, specifically those concerning the withdrawal of the *Concurso Mercantil* and the validity of the underlying corporate resolutions on which such withdrawal was based.

## **RECOGNITION IN MEXICO**

20. Finally, it is also relevant to emphasize that, to date, the Stay Enforcement Order issued by this Court has not been formally recognized by any judicial authority in Mexico. Under Mexican legal doctrine and procedural rules, foreign judgments—including orders rendered by U.S. bankruptcy courts—must undergo a formal judicial recognition process to acquire binding legal effect and be enforceable within the jurisdiction of the Mexican courts. Absent such recognition, the foreign judgment remains without operative legal force under Mexican law.

I declare under penalty of perjury under the laws of the United States and Mexico that the foregoing is true and correct to the best of my knowledge.

Dated: July 7, 2025
Wilmington, Delaware

/s/ Alfonso Dueñas Barajas
Cervantes Díaz Abogados.