## EXHIBIT 1

**Bidding Procedures**

## LEISURE INVESTMENTS HOLDINGS LLC
## BIDDING PROCEDURES[1]

### Introduction

Leisure Investments Holdings LLC and certain of its affiliates (collectively, the "**Debtors**") are debtors in possession in chapter 11 cases (jointly administered under Case No. 25-10606 (LSS)) pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

By the Sale Motion, the Debtors sought approval of, among other things, the procedures (the "**Bidding Procedures**") by which they will solicit and select the highest or otherwise best offer(s) for the sale of substantially all or any portion or combination of their assets (the "**Assets**") either through one sale to a Successful Bidder (as defined below) or multiple sales to multiple Successful Bidders.

On [●], 2025, the Bankruptcy Court entered an order (the "**Bidding Procedures Order**"), which, among other things, approved the Bidding Procedures set forth below pursuant to which the Debtors will solicit bids for the purchase of substantially all or any portion or combination of their Assets.

### Key Dates

These Bidding Procedures provide interested parties with the opportunity to complete diligence, to submit competing bids for all or any portion or combination of the Assets, and to participate in an auction, if necessary, to be conducted by the Debtors (the "**Auction**").

The key dates for the sale process are as follows:

| Date[2] | Event |
|---|---|
| Discretionary with the consent[3] of the Prepetition First Lien Noteholders and DIP Lenders[4] (together, the "**Lenders**") and in consultation with the Committee (collectively with the DIP Lenders and Prepetition First | Launch marketing and sale process for an Asset |

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in (i) the *Debtors' Motion for (I) an Order Establishing Bidding Procedures and Granting Related Relief and (II) an Order or Orders Approving the Sale of the Assets* (the "**Sale Motion**"), or (ii) in the Purchase Agreement, as applicable.

[2]    [Dates in this chart will be updated with actual dates when the Debtors file the Bid Procedures Trigger Notice.]

[3]    Any reference to any consent rights granted to any party herein and in any order granting the relief requested herein is qualified that such consent shall not be unreasonably withheld or delayed.

[4]    As defined in the *Declaration of Steven Robert Strom in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 10].

| Lien Noteholders, the "**Consultation Parties**") | |
|---|---|
| Discretionary with the consent of the Lenders and in consultation with the Consultation Parties | Establish Deadline for Stalking Horse Bids |
| Discretionary with the consent of the Lenders and in consultation with the other Consultation Parties | Selection of Stalking Horse Bidder |
| Day 0 - Bid Procedures Trigger Date (the period of time prior to the Bid Procedures Trigger Date, the "**Pre-Trigger Date Period**")[5] | Debtors File Either (A) Notice Identifying Terms of Stalking Horse Bid, Sale Process Dates and Bidding Procedures (including overbid amounts and auction rules) (the "**Stalking Horse Notice**"), or (B) If No Stalking Horse Bid is Selected, Notice Commencing the Auction Process (the "**Sale Notice**") |
| Day 0 – 14 | Assumption and Assignment Notice |
| Day 14 – 28 | Assumption and Assignment Objection Deadline |
| Day 30 – 60 | Sale Objection Deadline |
| Day 30 – 75 | Bid Deadline |
| Day 35 – 80 | Auction |
| Three business days following the Auction (approximately Day 38 – 86) | Auction Objection Deadline |
| 4:00 p.m. prevailing Eastern Time the day prior to the deadline for filing the agenda for the Sale Hearing (approximately Day 43 – 91) | Reply Deadline |
| No Later Than 2 Days Prior to Sale Hearing | File Declaration in Support of Sale Detailing Auction Process (or, at the Debtors' discretion, a proffer or live testimony at the Sale Hearing) |
| Day 45 – 95 | Sale Hearing |

## **Purchase Agreement**

The Debtors have prepared two forms of asset purchase agreement (with certain ancillary agreements thereto, the "**Purchase Agreement**"), including one form of Purchase Agreement for parties interested in acquiring Assets as going concerns and another form for parties interested in acquiring the Debtors' real property Assets. The Debtors intend to provide copies of the forms of Purchase Agreement to all parties who designate their interest in submitting a Bid and will also

---

[5]     The timeline and deadlines from Day 0 through Day 95 to be determined in consultation with the Lenders; *provided, however*, that any timeline and deadlines set forth in these Bidding Procedures shall not modify any Milestones provided for in the Fourth DIP Order or any such milestones as may be agreed to in any further order approving post-petition financing and/or use of cash collateral.

make such forms of Purchase Agreement available in the electronic dataroom established by the Debtors in connection with their sale process.[6]  Pursuant to the forms of Purchase Agreement, the Successful Bidder shall acquire, (i) to the maximum extent permitted by section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Assets (the "**Acquired Assets**"), free and clear of any and all Interests (as defined below), and/or (ii) the equity interests in certain Debtor and/or non-Debtor entities, in each case subject to certain other conditions.

### Access to Debtors' Diligence Materials.

To receive access to due diligence materials, an interested party must submit to the Debtors or already be bound by (i) an executed confidentiality agreement in form and substance satisfactory to the Debtors, (ii) for a Going Concern Sale, sufficient information to allow the Debtors to determine that such party has the financial wherewithal to consummate a sale transaction for the Assets (any such transaction, a "**Transaction**"), and (iii) for a Going Concern Sale, a statement that such party has a bona fide interest in purchasing all or some of the Assets.

A party who, in the Debtors' reasonable discretion, satisfies the requirements set forth in the immediately preceding sentence for receiving access to diligence materials shall be a "**Diligence Party**."  As promptly as practicable after the Debtors determine that a party is a Diligence Party, the Debtors will deliver to the Diligence Party access to the Debtors' confidential electronic data room.  The Debtors will afford any Diligence Party the time and opportunity to conduct reasonable due diligence before the Bid Deadline (as defined below).  Notwithstanding the foregoing, the Debtors reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Diligence Party who the Debtors determine is a competitor of the Debtors or is affiliated with any competitor of the Debtors.  Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Diligence Party.

All due diligence requests must be directed to Chris Mahoney and Heather Milazzo of Keen-Summit Capital Partners LLC at cmahoney@keen-summit.com and hmilazzo@keen-summit.com as well as Jakub Mleczko and Charles Geizhals of Greenhill & Co., LLC at jakub.mleczko@greenhill.com and charles.geizhals@greenhill.com, as directed by the Debtors.

Each Diligence Party and Qualified Bidder (as defined below) shall comply with all reasonable requests for additional information and due diligence access by the Debtors or their advisors regarding such Bidder and its contemplated transaction.  Failure by a **Diligence Party** to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Lenders, that such bidder is not a Qualified Bidder.  Failure by a **Qualified Bidder** (as defined below) to comply with requests for additional information and due diligence access may be a basis for the Debtors to determine, in consultation with the Lenders, that a bid made by such Qualified Bidder is not a Qualified Bid.  The Debtors reserve the right, in their discretion, in consultation with the Lenders, to permit a Diligence Party or Qualified Bidder to remedy any such failure to comply.

---

[6]    For the avoidance of doubt, parties may purchase substantially all or any portion or combination of the Assets, and the Debtors intend to provide parties interested in acquiring both the Debtors' equity interests in certain non-Debtor entities and the Debtors' other Assets with copies of both forms of Purchase Agreement.

### Indications of Interest

The Debtors reserve the right, in consultation with the Lenders, to require Diligence Parties to submit written indications of interest specifying, among other things, the Assets proposed to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party.  A Diligence Party that fails to comply with any such request by the Debtors, in the Debtors' discretion and in consultation with the Lenders, may not be provided further diligence access or be permitted to participate further in the auction process.  The Debtors also reserve the right to exclude any Diligence Party (prior to its submission of a Qualified Bid) from continuing in the auction process if the Debtors determine, in consultation with the Lenders, that the consideration proposed to be paid by such Diligence Party is insufficient.

### Auction Qualification Process

To be eligible to participate in the Auction, each offer, solicitation, or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**") must satisfy each of the conditions set forth below, as determined by the Debtors, in consultation with the Consultation Parties.  A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(a) Good Faith Deposit:  Each Bid for all or a portion of the Assets must be accompanied by a deposit (a "**Good Faith Deposit**") submitted by wire transfer of immediately available funds to an account identified by the Debtors.  Each Good Faith Deposit must equal in the case of a Bid for all or a portion of the Assets, the amount of ten percent (10%) of the purchase price contained in the Modified Purchase Agreement (as defined below), or such other amount as the Debtors determine, in consultation with the Lenders.

(b) Bids for Portions of the Assets:  A Bid may offer to purchase all or substantially all of the Assets, any portion of the Assets or any combination of the Assets.  The Debtors may, with the consent of the Lenders (if such Lenders are not also Bidders) and in consultation with the Bid Consultation Parties (as defined below), waive or modify the application of the Qualified Bid conditions in respect of Bids for a portion of the Assets.

(c) Higher or Better Terms:  To the extent a Stalking Horse Bidder is selected, each subsequent Bid for any Assets subject to the Stalking Horse Agreement (alone or combined with Bids for other Assets subject to the Stalking Horse Agreement) must be on terms that, in the Debtors' business judgment, and in consultation with the Bid Consultation Parties, are higher or better than the terms of the Stalking Horse Agreement.

(d) Executed Agreement:  Each Bid must be based on the Purchase Agreement or Stalking Horse Agreement, if applicable, and must include executed transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Transaction (the "**Modified Purchase**

4

**Agreement**”).  A Bid shall also include a copy of the Modified Purchase Agreement to show all changes requested by the Bidder (including those related to purchase price).

(e)    <u>Designation of Assigned Contracts and Leases, Payment of Cure Amounts</u>:  A Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it at closing and provide for the payment of all cure amounts payable with respect to such contracts and leases under the Bankruptcy Code.

(f)    <u>Corporate Authority</u>:  A Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to submit the Bid and consummate the proposed Transaction, *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the submission of the Bid and consummation of the Transaction by the equity holder(s) of such Bidder.

(g)    <u>Disclosure of Identity of Bidder</u>:  A Bid must fully disclose the identity of each entity that will be bidding for or purchasing the Assets or otherwise participating in connection with such Bid (including any equity holder or other financial backer if the Bidder is an entity specifically formed for the purpose of effectuating the Transaction), and, with respect to a Going Concern Sale, the complete terms of any such participation, including any binding agreements, arrangements, or understandings concerning a collaborative or joint bid or any other combination concerning the proposed Bid.

(h)    <u>Proof of Financial Ability to Perform</u>:  A Bid must include written evidence that the Debtors reasonably conclude, in consultation with their advisors and the Bid Consultation Parties (as defined below), demonstrates that the Bidder has the necessary financial ability to (i) close the Transaction and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Transaction.  Such information must include, *inter alia*, the following:

   1.   contact names and telephone numbers for verification of financing sources;

   2.   evidence of the Bidder’s (a) internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Bid (including, if applicable, the Bidder’s payment of cure amounts) or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in such amount, in each case, as are needed to close the Transaction, and (b) the Bidder’s current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors, <u>provided</u>, <u>however</u>, that with respect to a Real Estate Sale, a Bidder need only submit one of 2(a) or (b), but not both;

      3.   for a Going Concern Sale, a description of the Bidder's pro forma capital structure; and

      4.   any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors in consultation with the Lenders demonstrating that such Bidder has the ability to close the Transaction.

(i)    <u>Regulatory and Third-Party Approvals</u>:  A Bid must set forth each regulatory and third-party approval required for the Bidder to consummate the Transaction, if any, including those related to the care and welfare of animals, and the time period within which the Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty (30) days following execution and delivery of the Modified Purchase Agreement, those actions the Bidder will take to ensure receipt of such approval(s) as promptly as possible).

(j)    <u>Contingencies</u>:  Each Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(k)    <u>Irrevocable</u>:  Each Bid must expressly provide that (i) the Bidder is prepared to consummate the transaction set forth in the Modified Purchase Agreement promptly following entry of the Sale Order and satisfaction of the closing conditions (if any) set forth in the Modified Purchase Agreement, and (ii) the offer reflected in such Bid shall remain open and irrevocable until the earlier of forty-five (45) days from the auction date or the closing of the Transaction, provided that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain open and irrevocable as provided under "Closing the Auction; Successful Bidder" and "Backup Bidder" below.

(l)    <u>Purchase Price Allocation</u>:  Each Bid must: (i) clearly state which Assets the Bidder is agreeing to purchase and which liabilities the Bidder is agreeing to assume; (ii) clearly set forth the purchase price to be paid, including and identifying separately any cash and non-cash components; and (iii) specify the portion of the aggregate purchase price thereunder that is being allocated to each of the Assets (on a facility by facility basis), including, if applicable, any equity interests in non-Debtor entities.

(m)    <u>Adequate Assurance Information</u>:  Each Bid must be accompanied by adequate assurance of future performance information (the "**Adequate Assurance Information**"), which may include (i) information about the potential bidder's financial condition, such as federal tax returns for two years, audited and unaudited financial statements for the past three (3) years, including all supplements or amendments thereto, a current financial statement, or bank account statements; (ii) information demonstrating (in the Debtors' reasonable business judgment) that the Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the potential bidder has obtained authorization or approval from

6

its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) a description of the proposed business to be conducted at the premises, including any intended change in the existing use, (v) the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate the premises if not a current trade-name of the Debtors, (vi) cash flow projections for the proposed assignee, (vii) the proposed assignee's most recent business plan, (viii) all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the lease(s), (ix) all documents and other evidence of the potential assignee's experience operating similar facilities, (x) a contact person for the proposed assignee that landlords may directly contact solely in connection with the adequate assurance of future performance, and/or (xi) any other documentation that is requested. Should the prospective bidder be a newly formed entity (a "**Newco**"), written evidence of adequate assurance of future performance may also include when such Newco was formed, how it will be financed, together with evidence of any financial commitments, and identify what credit enhancements, if any, will be available to guarantee the obligations under the leases. By submitting a Bid, potential bidders agree that the Debtors may disseminate their Adequate Assurance Information to affected counterparties (subject to the confidentiality restrictions in the Bidding Procedures Order) to any contracts or leases potentially being assumed and assigned in connection with the Sale and the Consultation Parties if the Debtors determine such bid to be a Qualified Bid (as defined below).

(n)    <u>Bid Deadline</u>: Each Bid must be received by the Debtors as well as each of the following parties, in writing, on or before the specific bid deadline established by the Debtors with the consent of the Lenders and in consultation with the Consultation Parties (each, a "**Bid Deadline**"):

(i) Riveron Management Services, LLC, 2515 McKinney Ave., Suite 1600, Dallas, TX 75201, Attn: Michael Flynn (michael.flynn@riveron.com);

(ii) Greenhill & Co., LLC, 1271 Avenue of the Americas New York, NY 10020, Attn: Jakub Mleczko (jakub.mleczko@greenhill.com), Neil Augustine (neil.augustine@greenhill.com), and Charles Geizhals (charles.geizhals@greenhill.com);

(iii) Keen-Summit Capital Partners LLC, 1 Huntington Quadrangle Suite 2C04, Melville, New York 11747, Attn: Chris Mahoney (cmahoney@keen-summit.com) and Heather Milazzo (hmilazzo@keen-summit.com);

(iv) counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801, Attn: Sean Greecher (sgreecher@ycst.com) and Jared W. Kochenash (jkochenash@ycst.com);

(v) the Office of the United States Trustee for the District of Delaware, 844 King Street, Room 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov);

(vi) counsel to the Official Committee of Unsecured Creditors (the "**Committee**"), (a) Raines Feldman Littrell LLP, 824 North Market Street, Suite 805, Wilmington, DE 19801, Attn: Thomas J. Francella, Jr. (tfrancella@raineslaw.com) and (b) Law Offices of Manganelli, Leider & Savio, P.A., 1900 N.W. Corporate Blvd., Ste. 200W, Boca Raton, FL 33431, Attn: Christian Savio (csavio@mls-pa.com);

(vii) the DIP Lenders and counsel to the DIP Lenders, Baker & McKenzie LLP, 452 Fifth Avenue, New York, New York 10018, Attn: Blaire A. Cahn (blaire.cahn@bakermckenzie.com), and 830 Brickell Plaza, Suite 3100, Miami, FL 33131, Attn: Paul J. Keenan Jr. (paul.keenan@bakermckenzie.com);

(viii) the DIP Agent, GLAS Americas, LLC, 3 Second Street, Suite 206 Jersey City, NJ 07311, Re: Triton Investments Holdings, LLC (clientservices.usadcm@glas.agency);

(ix) counsel to the DIP Agent, Foley & Lardner LLP, 111 Huntington Avenue, Suite 2500, Boston, MA 02199, Attn: Adrienne K. Walker (awalker@foley.com);

(x) the Prepetition First Lien Agent GLAS Americas, LLC, 3 Second Street, Suite 206 Jersey City, NJ 07311; Attn: Controladora Dolphin, S.A. de C.V-Collateral Agent (clientservices.usadcm@glas.agency);

(xi) counsel to the Prepetition First Lien Agent Foley & Lardner LLP, 111 Huntington Avenue, Suite 2500, Boston, MA 02199, Attn: Adrienne K. Walker (awalker@foley.com);

(xii) the Prepetition Second Lien Agent, GLAS Americas, LLC, 3 Second Street, Suite 206 Jersey City, NJ, 07311, Attn: Controladora Dolphin, S.A. de C.V-Collateral Agent; clientservices.usadcm@glas.agency);

(xiii) counsel to the Prepetition Second Lien Agent, Foley & Lardner LLP, 111 Huntington Avenue, Suite 2500, Boston, MA 02199, Attn: Adrienne K. Walker (awalker@foley.com); and

(xiv) all known parties holding or asserting liens, claims, encumbrances or other interests in the assets being sold and their respective counsel, if known.

A Bid received from a Bidder on or before the Bid Deadline that meets the requirements set forth above for the applicable Assets shall constitute a "**Qualified Bid**" for such Assets, and such Bidder shall constitute a "**Qualified Bidder**" for such Assets; *provided, however*, that if the Lenders (unless (i) such Lender is a Bidder, (ii) the contemplated Qualified Bid(s) top(s) a previously approved Stalking Horse Bidder (as defined in the Bidding Procedures), or (iii) the

cumulative proceeds to date and the contemplated Qualified Bid(s) result(s) in the DIP and pre-petition secured debt being paid in full) determine that the adequacy of the consideration provided for in any Bid is insufficient, then such Bid shall not be deemed a Qualified Bid and such Bidder shall not be deemed a Qualified Bidder for purposes of these Bidding Procedures regardless of whether the above conditions are satisfied.  Notwithstanding anything else contained in the Bidding Procedures, the DIP Lenders and the lenders under the Debtors' prepetition notes shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of their allowed secured claims at the Auction pursuant to Bankruptcy Code section 363(k) or other applicable law (any such bid, a "**Credit Bid**"), in accordance with the applicable provisions of the documents governing such debt obligations, and that such lenders are exempt from the requirement to provide a Good Faith Deposit related to any such Credit Bid; *provided* that such Credit Bid otherwise complies with these Bidding Procedures, any applicable intercreditor agreement and the Bankruptcy Code and such credit bidding rights shall be subject to (i) entry of a final postpetition financing order and any challenge rights preserved therein, and (ii) the rights, if any, of any party in interest to timely object on or before the Sale Objection Deadline to such Credit Bid in accordance with section 363(k); *provided further* that any lender who puts forward such a Bid is no longer considered a Bid Consultation Party with respect to the Asset or Assets on which it is bidding.

## Stalking Horse Bids

Subject to the provisions set forth in the Bidding Procedures and with the consent of the Lenders (if such Lenders are not also Bidders) and in consultation with the Bid Consultation Parties, the Debtors may enter into a Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction, with any Stalking Horse Bidder that submits a Qualified Bid acceptable to the Debtors and the Lenders (if (a) such Lenders are not also Bidders and (b) the cumulative proceeds to date and the contemplated stalking horse sale does not result in the DIP and pre-petition secured debt being paid in full), in consultation with the Bid Consultation Parties, to establish a minimum Qualified Bid at the Auction.  Absent further order of the Bankruptcy Court, the Stalking Horse Agreement shall limit the break-up fees to in an incremental amount to be determined by the Debtors with the consent of the Lenders (if (a) such Lenders are not also Bidders and (b) the cumulative proceeds to date and the contemplated stalking horse sale does not result in the DIP and pre-petition secured debt being paid in full), in amount no greater than 3% of the Qualified Bid and expense reimbursement in an amount not to exceed 1% of the Qualified Bid (together with the Minimum Overbid Increment, the "**Bid Protections**").  In the event that the Debtors determine that the Bid Protections must exceed the amounts set forth herein, the Debtors shall request that the Bankruptcy Court hold a hearing on the approval of any such greater Bid Protections on an expedited basis.

In the event that the Debtors select one or more parties to serve as a Stalking Horse Bidder, upon such selection, the Debtors shall file the Stalking Horse Notice with the Bankruptcy Court and serve the Stalking Horse Notice on the Bid Procedures Notice Parties with seven (7) days' notice of and an opportunity to object to the designation of such Stalking Horse Bidder and disclosure of the Bid Protections set forth in the Stalking Horse Agreement, and absent objection, the Debtors may submit an order to the Bankruptcy Court under certification of counsel approving the selection of such Stalking Horse Bidder.  To the extent necessary, the Debtors' right to seek the

Bankruptcy Court's approval of one or more Stalking Horse Bidders, with notice and a hearing, is hereby preserved.

Any Stalking Horse Agreement executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be a Qualified Bidder.

Other than as provided by order of the Bankruptcy Court prior to entry of the Bidding Procedures Order, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any Bidder are deemed waived.

### Highest or Otherwise Best Bid

Whenever these Bidding Procedures refer to the highest or otherwise best Qualified Bid, such determination shall take into account any factors the Debtors, in consultation with the Bid Consultation Parties, reasonably deem relevant to the value of the Qualified Bid to the estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration, including any Assumed Liabilities (as defined in the Purchase Agreement); (ii) the number, type and nature of any changes to the Purchase Agreement requested by each Qualified Bidder; (iii) the extent to which such modifications are likely to delay closing of the sale of the Assets and the cost to the Debtors of such modifications or delay; (iv) the likelihood of the Qualified Bidder being able to close the proposed transaction (including obtaining any required regulatory approvals) and the timing thereof; and (v) the net benefit to the Debtors' estates (collectively, the "**Bid Assessment Criteria**").

### Auction

If two or more Qualified Bids for the same Assets are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest or otherwise best Qualified Bid.  If two or more Qualified Bids exist for acquiring specific sub-groups of Assets, then the Debtors may, in the exercise of their reasonable business judgment (in consultation with the Bid Consultation Parties), first conduct a Sub-Auction (as defined below) for such sub-group of Assets.  If less than two Qualified Bids are received by the Bid Deadline with respect to any portion of the Assets, the Debtors, with the consent of the Lenders, may elect not to conduct an Auction with respect to such Assets.  If only one Qualified Bid is received with respect to all or a portion of the Assets, the Debtors may, with the consent of the Lenders (if (a) such Lenders are not also Bidders and (b) the cumulative proceeds to date and the contemplated stalking horse (if applicable) sale results in the DIP and pre-petition secured debt being paid in full) and after consultation with the Bid Consultation Parties, designate such Qualified Bid as a Successful Bid.  Only Qualified Bidders may participate in the Auction.

### Procedures for Auction

The Auction shall take place on the date and time designated by the Debtors, in consultation with the Consultation Parties, at the offices of counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Wilmington, DE 19801, or such other place and time as the

Debtors shall reasonably notify all Qualified Bidders and the Consultation Parties. The Auction shall be conducted according to the following procedures:

Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction (as defined below). The Consultation Parties shall be permitted to attend the Auction. In addition, any creditor of the Debtors or party the Debtors deem appropriate may observe the Auction; provided, however, that creditors who are not Qualified Bidders shall provide three (3) business days' written notice to counsel to the Debtors of their intent to attend the Auction; provided, further, that the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall be allowed to observe the Auction regardless of whether they are participating and without providing such written notice; and provided, further, that the Debtors reserve the right to retract their permission at any point during the Auction if such creditor party who is not a Qualified Bidder does not act in good faith and in orderly fashion during the Auction.

***The Debtors Shall Conduct the Auction.***

The Debtors and their advisors shall direct and preside over the Auction, which shall be transcribed. Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties) may conduct the Auction in the manner they determine will result in the highest or otherwise best offer for any of the Assets, including conducting multiple Auctions for different subgroupings of the Assets (each, a "**Sub-Auction**"). The Debtors shall provide to the Consultation Parties and each Qualified Bidder participating in the Auction with a copy of the Modified Purchase Agreement associated with the highest or otherwise best Qualified Bid with respect to the Assets for which such Qualified Bidder is bidding, as determined by the Debtors in consultation with the Bid Consultation Parties (such highest or otherwise best Qualified Bid, the "**Auction Baseline Bid**"). At the start of the Auction, the Debtors shall describe the material terms of the Auction Baseline Bid and each Qualified Bidder participating in the Auction must confirm that (a) it has not engaged in any collusion with respect to the bidding or sale of any of the Assets described herein, (b) it has reviewed, understands, and accepts the Bidding Procedures, (c) it has consented to the core jurisdiction of the Bankruptcy Court (as described more fully below), and (d) its Qualified Bid is a good-faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder.

***Terms of Overbids.***

An "**Overbid**" is any bid made at the Auction, in accordance with the requirements set forth herein, subsequent to the Debtors' announcement of the respective Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(a)    <u>Minimum Overbid Increments</u>: The initial Overbid, if any, shall provide for total consideration to the Debtors with a value that exceeds the value of the consideration under the Auction Baseline Bid by an incremental amount to be determined by the Debtors, with the consent of the Lenders (if such Lenders are not also Bidders) in consultation with the Consultation Parties, and announced at the time the Auction Baseline Bid is announced (the "***Minimum Overbid Increment***"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid Increment. The Debtors reserve

the right, with the consent of the Lenders (if such Lenders are not also Bidders) and in consultation with the Bid Consultation Parties, to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction. Additional consideration in excess of the amount set forth in the respective Auction Baseline Bid may include (i) cash and/or noncash consideration, *provided, however*, that the value for such non-cash consideration shall be determined by the Debtors in their reasonable business judgment, in consultation with the Bid Consultation Parties, and (ii) in the case of a Bid by the DIP Lenders or the lenders under the Debtors' prepetition notes, a credit bid of up to the full amount of the such secured creditors' allowed secured claim, subject to the terms of any applicable intercreditor agreement and the Bankruptcy Code and such credit bidding rights shall be subject to entry of a final postpetition financing order and any challenge rights preserved therein.

(b)     Remaining Terms Are the Same as for Qualified Bids:  Except as modified in the Bidding Procedures, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, *provided, however*, that the Bid Deadline shall not apply.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Purchase Agreement or Modified Purchase Agreement, as the case may be, in connection therewith.  For the avoidance of doubt, any Overbid shall be irrevocable and shall remain open and binding on the Bidder in accordance with these Bidding Procedures and the conditions for a Qualified Bid.

At the Debtors' discretion, to the extent not previously provided (which shall be determined by the Debtors in consultation with the Lenders (if such Lenders are not also Bidders)), a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors), as the Debtors, in their reasonable business judgment in consultation with the Lenders (if such Lenders are not also Bidders), may request, demonstrating such Bidder's ability to consummate the Transaction proposed by such Overbid.

***Announcement and Consideration of Overbids.***

(a)     Announcement of Overbids:  A Bidder submitting an Overbid at the Auction shall announce at the Auction the material terms of such Overbid, including the total amount and type of consideration offered in such Overbid.

(b)     Consideration of Overbids:  The Debtors reserve the right, in their reasonable business judgment in consultation with the Bid Consultation Parties, to make one or more continuances of the Auction to, among other things:  facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment in consultation with the Bid Consultation Parties, may require, that the Qualified Bidder has sufficient internal resources, or

has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount; *provided* that, to the extent the Debtors determine to request that any Qualified Bidder increase the amount of their Good Faith Deposit, the Debtors first shall consult with the Lenders (if such Lenders are not also Bidders) before making such request; *provided further* that any such Qualified Bidder will provide a statement on the record that they will increase the amount of their Good Faith Deposit in proportion with the Overbid, and that any such Qualified Bidder and Backup Bidder will have 24 hours to increase the amount of their Good Faith Deposits in accordance with this provision.

### *No Round-Skipping.*

Round-skipping, as described herein, is explicitly prohibited. To remain eligible to participate in the Auction or specific Sub-Auction for an Asset or Assets, in each round of bidding, (i) each Qualified Bidder must submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding and (ii) to the extent a Qualified Bidder fails to bid in such round of bidding or to submit a Bid in such round of bidding that is a higher or otherwise better offer than the immediately preceding Bid submitted by a Qualified Bidder in such round of bidding, as determined by the Debtors in their reasonable business judgment (in consultation with the Bid Consultation Parties), such Qualified Bidder shall be disqualified from continuing to participate in the Auction for such Asset(s); *provided* that with the consent of the Lenders and in consultation with the Bid Consultation Parties, the Debtors may adopt and utilize the Auction procedures other than the foregoing procedure for any round of bidding.

### *Modifications and Additional Procedures.*

The Debtors, in consultation with the Bid Consultation Parties, in the exercise of their fiduciary duties for the purpose of maximizing value for their estates from the sale process, may modify the Bidding Procedures and implement additional procedural rules for conducting the Auction.  Specifically, among other things, the Debtors, in consultation with the other Bid Consultation Parties, may determine to select more than one Successful Bid and more than one Successful Bidder (and/or more than one Backup Bid and more than one Backup Bidder, in which event such Backup Bids may provide for groupings of Assets that are different from the groupings of Assets reflected in the Successful Bid(s)) for separate portions of the Assets.

For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Debtors will not modify these Bidding Procedures without the prior written consent of the Required DIP Lenders, which consent shall not be unreasonably withheld, conditioned, or delayed.

### *Consent to Jurisdiction as Condition to Bidding.*

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, Keen-Summit Capital Partners LLC and Greenhill & Co., LLC, their chapter 11 cases, the Bidding Procedures, the Purchase Agreement, the Auction, or the construction

and enforcement of documents relating to any Transaction and waived any right to a jury trial in connection with any disputes relating to the Debtors, Keen-Summit Capital Partners LLC and Greenhill & Co., LLC, their chapter 11 cases, the Bidding Procedures, the Purchase Agreement, the Auction, or the construction and enforcement of documents relating to any Transaction.

### Sale Is As Is/Where Is

Any of the Assets sold pursuant to the Bidding Procedures shall be sold free and clear of all liens claims and encumbrances as permitted by Bankruptcy Code section 363(f) other than any Assumed Liabilities and conveyed at Closing in their then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**", except to the extent set forth in the definitive agreement for the Successful Bid, if applicable.

### Closing the Auction; Successful Bidder.

The Auction shall continue until there is only one Qualified Bid for the Assets that the Debtors determine in their reasonable business judgment, and in consultation with the Bid Consultation Parties, is the highest or otherwise best Qualified Bid at the Auction. Thereafter, the Debtors shall select such Qualified Bid, in consultation with the Bid Consultation Parties, as the overall highest or otherwise best Qualified Bid (such Bid, the "**Successful Bid**," and the Bidder submitting such Successful Bid, the "**Successful Bidder**"). In making this decision, the Debtors shall consider the Bid Assessment Criteria.

The Auction shall close when the Successful Bidder(s) submits fully executed sale and transaction documents memorializing the terms of the Successful Bid(s). Within one (1) business day after the conclusion of the Auction, the Successful Bidder(s) shall deliver an additional Good Faith Deposit payment so that each such bidder's total Good Faith Deposit equals 10% of the purchase price of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall announce the Successful Bid(s) and Successful Bidder(s) and shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s).

Unless the Bankruptcy Court orders otherwise, the Debtors shall not consider any Bids submitted after the conclusion of the Auction. Every Bidder shall be required to keep its Bid(s) open and irrevocable until the sooner to occur of forty-five (45) days from the closing of the Auction or the closing of the transactions contemplated thereby.

### Backup Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, the Qualified Bid for the Assets that the Debtors determine in their reasonable business judgment, in consultation with the Bid Consultation Parties, is the next highest or otherwise best Qualified Bid at the Auction after the Successful Bid, will be designated as the "**Backup Bid**" and the Bidder submitting such Backup Bid, the "**Backup Bidder**." The Backup Bidder shall be required to keep the Backup Bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date (the

"**Outside Backup Date**") that is the earlier of (a) the date of closing of the Sale with the Successful Bidder, and (b) the date that is either (i) 45 days from the closing of the Auction (if a Sale Order is not entered) or (ii) 80 days after the date of entry of a Sale Order (if such Sale Order is entered).

Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Debtors may, and in consultation with the Bid Consultation Parties, designate the Backup Bid to be the new Successful Bid and the Backup Bidder to be the new Successful Bidder, and the Debtors, (i) shall provide written notice to the Backup Bidder and file and serve a notice of intent to proceed with the Backup Bidder, which shall provide three (3) business days for objections to the Backup Bidder, and (ii) schedule a status conference, which may be expedited, upon reasonable notice under the circumstances (which shall be no less than seven (7) days), at which time a briefing and hearing schedule will be established for those landlords and counterparties to executory contracts that do not consent to a proposed assumption and assignment to the Backup Bidder.

In such case of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors. The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

Concurrent with the Debtors' announcement of the Successful Bid(s) and Successful Bidder(s), the Debtors shall announce the Backup Bid and Backup Bid and shall file with the Bankruptcy Court notice of the Backup Bid and Backup Bidder.

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more accounts by the Debtors, but shall not become property of the Debtors' estates; *provided, however*, that the Good Faith Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtors or credited towards the purchase price set forth in the Successful Bid. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than seven (7) days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder, if any, shall be returned to the Backup Bidder not later than three (3) business days after (i) the closing of the transaction with the Successful Bidder (defined herein) for the Assets bid upon by the Backup Bidder and (ii) the Outside Backup Date; *provided, however*, that if the Backup Bid becomes the Successful Bid as provided herein, any subsequent breach or failure to perform by the Backup Bidder may result in the forfeit of the Good Faith Deposit of the Back-up Bidder to the Debtors. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that may have accrued thereon. If the Successful Bidder consummates the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price set forth in the Successful Bid. The irrevocability of a Bid or Bids shall not be prejudiced by the return of the Good Faith Deposit.

## The Consultation Parties

The Debtors shall consult with the Consultation Parties[7] as explicitly provided for in these Bidding Procedures; *provided, however*, that, in certain circumstances as set forth in these Bidding Procedures, the Debtors shall consult only with the Bid Consultation Parties (as defined below). The "**Bid Consultation Parties**" shall be all Consultation Parties (and their advisors) other than any Consultation Party (and its advisors) that submits a Bid or has a Bid submitted on its behalf for so long as such Bid remains open (a "**Bid Consultation Party**"), provided, however, that such a Consultation Party shall only be treated as a Bid Consultation Party with respect to the Assets on which such Bid Consultation Party has bid.  For the avoidance of doubt, the Debtors' obligation to consult with the Consultation Parties may, in the Debtors' discretion, be met by (i) consultation solely with the respective advisors to each of the Consultation Parties, as set forth in "Auction Qualification Process – Bid Deadline" above (collectively, the "**Consultation Party Advisors**"); or (ii) consultation with each of the Consultation Parties and their Consultation Party Advisors at the same time or in separate communications.

## Reservation of Rights of the Debtors

Except as otherwise provided in the Purchase Agreement, these Bidding Procedures or the Bidding Procedures Order, the Debtors further reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties or, to the extent provided herein, the Bid Consultation Parties to:  (i) determine which bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject, at any time prior to the closing of the Auction or, if no Auction is held, at any time prior to entry of the Sale Order, any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of these Bidding Procedures, the requirements of the Bankruptcy Code or, if applicable, any intercreditor agreement or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all potential bidders; (vi) impose additional terms and conditions; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing in open court, or by filing a notice on the docket of the Debtors' chapter 11 cases, without further notice; (ix) include any other party as a Consultation Party and attendee at the Auction; and (x) modify the Bidding Procedures and implement additional procedural rules for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bankruptcy Code, any intercreditor agreement, if applicable, the Bidding Procedures Order, or any other order of the Court.

Nothing in these Bidding Procedures will require the Debtors' board of directors or managers, as applicable, to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, to the extent that the Debtors' board of directors or managers, as applicable, determines, or based on the advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary duties under applicable law.

---

[7]     Nothing set forth in these Bidding Procedures is intended to, nor shall it, deem any consent right granted to the Lenders in any other order of the Bankruptcy Court a consultation right.

# **EXHIBIT 2**

**Regulatory Agencies and Governmental Authorities**

- Department of Commerce & Investment (Cayman Islands)
- Ayuntamiento De Isla Mujeres - Direccion General De Desarrollo Urbano Y Medio Ambiente Permiso De Anuncios Publicitarios
- Comision Nacional de Areas Naturales Protegidas
- Gobierno Del Estado De Quintana Roo/ Fundacion De Parques Y Museos De Cozumel
- Gobierno Del Estado Libre Y Soberano De Quintana Roo -Licencias De Funcionamient O Estatal
- H. Ayuntamiento De Benito Juarez (Cancun)
- H. Ayuntamiento De Benito Juarez (Cancun) - Secretaria Municipal De Ecologia Y Desarrollo Urbano Licencia De Uso De Suelo
- H. Ayuntamiento De Conzumel - Direccion De Desarrollo Urbano Y Ecologia Licencia De Anuncios
- H. Ayuntamiento De Conzumel - Subdireccion De Ecologia Permiso De Operacion Ecologica
- H. Ayuntamiento De Isla Mujeres - Direccion General De Desarrollo Urbano Y Medio Ambiente Licencia De Uso De Suelo
- H. Ayuntamiento De Isla Mujeres - Direccion General De Desarrollo Urbano Y Medio Ambiente Permiso Ecologico De Operacion
- H.Ayuntamiento De Isla Mujeres Direccion General De Desarrollo Urbano Ymedio Ambiente Permiso Ecologico De Operacion
- Licencias De Funcionamient O Municipal
- Procuraduria Federal De Proteccion Al Ambiente (Profepa)
- Secretaria De Ecologia Y Medio Ambiente Del Estado De Quintana Roo
- Secretaria De Ecologia Y Medio Ambiente Del Estado De Quintana Roo (Sema)
- Semarnat (Secretaria De Medio Ambiente Y Recursos Naturales)
- City of Miami
- City of Panama City Beach
- Customs & Border Control
- Florida Department of Environmental Protection
- Florida Fish and Wildlife Conservation Commission
- State of Florida Department of Business and Professional Regulation
- State of Florida Department of Health
- Town Of Marineland, Florida
- U.S. Department of Agriculture
- U.S. Department of Health & Human Services
- U.S. Department of Transportation
- U.S. Environmental Protection Agency
- U.S. Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS")
- National Oceanic and Atmospheric Administration - National Marine Fisheries Service
- U.S. Fish and Wildlife Service
- Florida Fish and Wildlife Conservation Commission
- Miami-Dade County

*The Debtors and their claims agent possess the relevant contact information for each of the entities listed above.  If the Debtors discover other relevant regulatory agencies or governmental authorities, the Debtors shall add such agencies or authorities to this service list.