IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 25-10606 (LSS) |
| Leisure Investments Holdings LLC, *et al.*,[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors | ) | **Related Docket No. 512** |

OBJECTION OF TRADEWINDS, LTD TO NOTICE OF
PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

Tradewinds, LTD ("Tradewinds"), by and through undersigned counsel, objects to Debtors' *Notice of Proposed Sale, Bidding Procedures, Auction and Sale Notice* [D.I. 512] (the "Sale Notice"). In support of this Objection, Tradewinds respectfully represents as follows:

**Background**

A. The Arbitration Award and Judgment

1. On June 7, 2017, Tradewinds obtained a judgment (the "Judgment") from the United States District Court for the Western District of California against Grupo Dolphin Discovery ("Grupo Dolphin") and debtor Controladora S.A. de C.V., a Mexican Corporation ("Controladora") in the amount of $3,678,419.13, plus post judgment interest at the legal rate of 1.16% compounded annually pursuant to 28 U.S. Code § 1961.

2. The Judgment arises from an arbitration award stemming from Grupo Dolphin and Controladora's breach of a finder's agreement. Specifically, the arbitration ensued after the Debtors refused to pay Tradewinds the contractual fee it earned by finding lenders to extend a $115 Million loan to Debtors for, *inter alia*, the acquisition of marine-themed amusement parks.

---

[1] Due to the large number of Debtors in these chapter 11 cases a complete list of the Debtors is not provided herein. A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://veritaglobal.net/dolphinco, or by contacting counsel for the Debtors. For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

The Arbitration Panel agreed with Tradewinds and entered an award in favor of Tradewinds and against Grupo Dolphin and Controladora. Tradewinds domesticated the Judgment in the United States District Court for the Southern District of Florida, which provided Tradewinds with a Judgment Lien on Controladora's assets located in Florida. The amount due on the Judgment as of the date hereof exceeds $4 Million.

3. Controladora owns, among other things, three marine parks located in the United States, which are all located in Florida. These Florida marine parks include Marineland in St. Augustine, Dolphin Connection in the Florida Keys and Gulf World in Panama City (collectively "Florida Dolphin Parks"). Specifically, Controladora owns 100% of Dolphin Leisure, Inc., a Florida Corporation ("Dolphin Leisure") which in turn 100% owns:

a. Marineland Leisure, Inc., a Florida Corporation that directly owns and operates the Marineland Park;

b. GWWP, LLC and Gulf World Marine Park, Inc., Florida entities that directly own and operate the Gulf World Park or hold adjacent land; and,

c. The Dolphin Connection, Inc., a Florida Corporation that directly owns and operates the Dolphin Connection Park (collectively with the Marineland Park and Gulf World Park, the "Dolphin Park Assets").

4. Controladora also owns additional property located in Florida. Tradewinds asserts a lien on all additional property owned by Controladora located in Florida (the "Additional Assets" and, together with the Dolphin Park Assets, the "Controladora Assets"), including stock certificates and trademarks.

5. In or about November 2015, Controladora pledged 100% of its Dolphin Leisure's stock certificates to predecessor secured lenders pursuant to an initial Note Financing Agreement

("2015 NPA"). It is this transaction that gave rise to Tradewinds' claims against Controladora, and this transaction which was later found to underly the Arbitration Award.

6. On October 11, 2016, the California District Court entered the Arbitration Award against Controladora and Grupo Dolphin Discovery (a non-existent entity that was the signatory to the agreement with Tradewinds). The Arbitration Award was confirmed, and the Judgment was entered in the United States District Court for the Central District of California on June 7, 2017. Tradewinds registered the Judgment in the United States District Court for the Southern District of Florida on August 14, 2017.[2]

7. In 2019, Controladora financed a second Note Purchase Agreement ("2019 NPA") with new lenders, Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Cigna Health and Life Insurance Company. These lenders are secured creditors in this bankruptcy who claim priority over Tradewinds.

8. Tradewinds recorded its judgment in Florida on August 25, 2021. Thereafter, on June 27, 2022, Controladora and the Secured Lenders entered into a new note purchase agreement ("2022 NPA"). Once again, the 2022 NPA is allegedly a refinance of the 2015 NPA; however, the complete change in ownership of Controladora, and the changes in security, guarantors, and terms illustrate that the actual borrowers and obligors were new parties, and as such the 2022 NPA is not a refinance but a new financing agreement.

9. Tradewinds asserts a first priority lien on the Debtors' property located in Florida as a result of the domestication of the Judgment, including the Other Florida Assets that are the subject of the Sale Notice. The Debtors, the Prepetition First Lien Secured Parties (the "First Lien Noteholders" and the Prepetition Second Lien Secured Parties (the "Second Lien Noteholders",

---

[2] The Judgment was recently amended on April 4, 2024. The Amended Judgment was registered in the Southern District of Florida on May 9, 2024.

and, together with the First Lien Noteholders, the "Noteholders") dispute that Tradewinds has a first-priority lien on any of the Debtors' assets.

B. The Bankruptcy Proceedings

10. On March 31, 2025, certain of the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. On April 16, 2025 and on May 4, 2025, Controladora and Embassy of the Seas Limited, respectively, also filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtors filed the Sale Notice on September 5, 2025 seeking authority to sell the Other Florida Assets. The Sale Motion provides, among other things, (i) that secured creditors may credit bid their secured claims (the "Credit Bidding Right") and (ii) requires a prospective purchaser's bid to allocate the purchase price to each asset subject to the bid (the "Allocation Requirement"). Tradewinds objects to the Credit Bidding Right,[3] the distribution of the proceeds of the sale to the DIP Lenders and/or the Noteholders, and the Allocation Requirement.

**Objection**

A. Objection to Credit Bidding

11. Bankruptcy Code section 363(k) provides as follows:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k).

---

[3] Tradewinds objected to the Credit Bidding Right in its *Objection of Tradewinds LTD to Entry of Final Dip Financing Order and Request for Adequate Protection Pursuant to 11 U.S.C. § 363(e)* [DI 144]. The Debtors and Tradewinds agreed at the hearing on bid procedures that this objection would be deferred to the sale hearing, if necessary.

12. While Section 363(k) of the Bankruptcy Code permits a secured creditor to credit bid its claim, the right to credit bid is not absolute. Rather, a court, for cause, may prohibit credit bidding. *Id.*

13. Cause sufficient to deny or condition a secured creditor's ability to credit bid under Section 363(k) is determined on a case–by–case basis. *See*, *e.g. In re Merit Group, Inc.*, 464 B.R. 240, 252 (Bankr. D.S.C. 2011). Courts have generally found cause to deny the opportunity to credit bid when a sufficient dispute exists regarding the validity of the lien forming the basis for the credit bid. *See, e.g. In re L.L. Murphrey Company,* 2013 WL 2451368 at *5 (Bankr. E.D.N.C. June 6, 2013) (holding that secured creditor could not bid its secured claim because it was subject to a bona fide dispute); *Fisker Automotive Holdings, Inc.*, 510 B.R. 55, 61 (Bankr. D. Del. 2014) (holding that secured creditor could not credit bid its entire asserted secured claim because the amount of the secured claim was uncertain); *In re Daufuskie Island Properties, LLC*, 441 B.R. 60, 63 - 64 (2010) (holding that secured creditor was not permitted to credit bid because among other things, its secured claim was disputed). "The law leaves no doubt that the holder of a lien the validity of which has not been determined … may not bid its lien." *Fisker* 510 B.R. at 61.

14. Tradewinds asserts that its judgment lien on the Other Florida Assets is senior in priority to the liens of the Noteholders. The Noteholders dispute this assertion. As a result, there is a bona fide dispute regarding the priority of the liens on the Controladora Assets. Accordingly, the Noteholders should not be permitted to credit bid on the Controladora Assets.

15. If the Court does permit the Noteholders to credit bid on the Controladora Assets, that permission should be conditioned on the Noteholders payment of Tradewind's senior liens. *See Daufuskie Island Properties,* 441 B.R. at 64 (finding that junior priority credit bidder must satisfy the liens of parties holding senior liens). At a minimum, the Court should require the

Noteholders to post a bond or establish an escrow sufficient to satisfy Tradewinds' judgment lien and accruing interest for payment to Tradewinds if the Court rules that Tradewind's judgment lien is senior in priority to the Noteholders' liens.

### B. Distribution of Sale Proceeds

16. Tradewinds objects to the entry of any order approving the Sale Notice to the extent that it provides for the distribution of all of the proceeds from the Other Florida Assets to the DIP Lender, the Noteholders or any other party. Tradewinds asserts a first priority lien on the Other Florida Assets. At a minimum, the Debtors should be required to establish a reserve for payment of the Judgment Lien and interest, which continues to accrue.

### C. Allocation of Purchase Price

17. The sale procedures require a prospective purchaser's bid to allocate the purchase price to each asset subject to the bid. While Tradewinds does not object to this allocation requirement *per se*, Tradewinds is concerned that a party may allocate an insufficient amount to the Controladora Assets in order to devalue Tradewinds' secured claim. Accordingly, Tradewinds requests that any order approving the Sale Motion provide that a purchaser's allocation may be disputed for purposes of distribution.

**Conclusion**

WHEREFORE, Tradewinds requests that this Honorable Court enter an order consistent with this objection and provide to Tradewinds such other and further relief as is just and proper.

Date: October 6, 2025
Wilmington, DE

**SULLIVAN · HAZELTINE · ALLINSON LLC**

*/s/ William A. Hazeltine*
William A. Hazeltine (No. 3294)
919 North Market Street, Suite 420
Wilmington, DE 19801
Tel: (302) 428-8191
Email: whazeltine@sha-llc.com

-and-

FINECOUNSEL
J. Andrew Fine
115 E. Main Street, Suite A
Durham, North Carolina 27707
Tel: 919.307.6311
Email: jaf@finecounsel.law

*Attorneys for Tradewinds, LTD*