**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>LEISURE INVESTMENTS HOLDINGS LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10606 (LSS)<br><br>(Jointly Administered)<br><br>Ref. Docket No. 402<br><br><u>Objection Deadline</u>:<br>October 14, 2025 at 4:00 p.m. (ET) |

**NOTICE OF FILING STALKING HORSE PURCHASE AGREEMENT
FOR DEBTORS' REAL PROPERTY LOCATED AT 15400 AND 15412
FRONT BEACH ROAD, PANAMA CITY, FLORIDA**

**PLEASE TAKE NOTICE** that, on July 2, 2025, the Debtors filed a motion (the "**Motion**")[2] with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") seeking, among other things, entry of an order (the "**Bidding Procedures Order**"): (i) approving proposed bidding procedures (the "**Bidding Procedures**") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all or a portion of their assets through one or more sale transactions (each, a "**Sale**"); (ii) establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts; (iii) approving the form and manner of notice with respect to certain procedures, protections, schedules, and agreements described herein and attached hereto, including the Debtors' selection of one or more stalking horse bidders, if any, and the provision of Bid Protections to such Stalking Horse Bidder, if necessary; (iv) scheduling (a) an auction (the "**Auction**") if the Debtors receive one or more timely and acceptable Qualified Bids and (b) a final hearing or hearings (each, a "**Sale Hearing**") to approve one or more Sales of the Assets; and (v) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on July 29, 2025, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 402].

**PLEASE TAKE FURTHER NOTICE** that the Debtors have entered into a Stalking Horse Purchase Agreement, a copy of which is attached hereto as **Exhibit A** (the "**Stalking Horse APA**"), with By The Sea Resorts, Inc. (the "**Stalking Horse**"), a third party,

---

[1] Due to the large number of Debtors in these chapter 11 cases a complete list of the Debtors is not provided herein. A complete list of the Debtors along with the last four digits of their tax identification numbers, where applicable, may be obtained on the website of the Debtors' noticing and claims agent at https://veritaglobal.net/dolphinco, or by contacting counsel for the Debtors. For the purposes of these chapter 11 cases, the address for the Debtors is Leisure Investments Holdings LLC, c/o Riveron Management Services, LLC, 600 Brickell Avenue, Suite 2550, Miami, FL 33131.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

33614808.1

non-insider, for the sale of the Debtors' real property located at 15400 and 15412 Front Beach Road, Panama City, Florida (the "**Assets**"). In accordance with the Stalking Horse APA and the Bidding Procedures Order, the Debtors are seeking entry of an order, attached hereto as **Exhibit B** (the "**Bid Protections Order**"), (a) approving the designation of the Stalking Horse as the Stalking Horse Bidder for the Assets, and (b) payment of a break-up fee in the amount of 2% ($66,000) of the Purchase Price (the "**Bid Protections**"), in the event that the Debtors select a alternative bid as the Successful Bid for the Assets. In support of the Bid Protections Order, the Debtors submit the declaration of Matthew Bordwin, Principal and Co-President of Keen-Summit Capital Partners LLC, attached hereto as **Exhibit C**.

PLEASE TAKE FURTHER NOTICE that, in accordance with the Bidding Procedures Order and Local Rule 6004-1(b)(iv), the Debtors highlight the following material terms of the Stalking Horse APA:[3]

| Provision | Summary Description |
|---|---|
| **Parties** | **Debtor Parties:** Gulf World Marine Park, Inc. GWMP, LLC (together, the "**Debtor Sellers**") <br><br> **Other Parties:** Flipper, LLC and By The Sea Resorts, Inc., a Florida Corporation ("**Buyer**") |
| **Purchase Price** <br><br> (Stalking Horse APA, Section 2.1) | **Purchase Price:** $3,300,000, adjusted pursuant to Article X of the Stalking Horse APA, allocated as follows:[4] <br><br> (a) $2,580,000 of the Purchase Price allocated to the purchase of the Gulf World Property and (b) $720,000 of the Purchase Price allocated to the purchase of the Co-Tenancy Property. <br><br> The Co-Tenancy Property Purchase Price, as adjusted pursuant to Article X of the Stalking Horse APA, shall be allocated and payable fifty percent (50%) to Co-Tenant Seller 1 and fifty percent (50%) to Co-Tenant Seller 2. |
| **Purchase and Sale** <br><br> (Stalking Horse APA, Section 1.1) | **Assets to be Sold:** The real property located at 15400 and 15412 Front Beach Road, Panama City, Florida. <br><br> Gulf World Seller shall sell to Buyer and Buyer shall purchase from Gulf World Seller, by appropriate deeds, assignments and other instruments, all of Gulf World Seller's right, title, and interest in and to the Gulf World Property; and (b) Co-Tenant Sellers shall sell to Buyer and Buyer shall purchase from |

---

[3] This summary is provided for the convenience of the Court and parties in interest. To the extent that there is any conflict between this summary and the Stalking Horse APA, the Stalking Horse APA shall govern in all respects. Capitalized terms used but not otherwise defined in this summary shall have the meanings set forth in the Stalking Horse APA or the Bidding Procedures Motion, as applicable.

[4] The Debtors own only a 50% undivided interest in two of the parcels subject to the Sale, and Flipper, LLC (the "**Co-Tenant Seller 2**") owns the other 50% undivided interest in such parcels. As part of the proposed sale transaction, Co-Tenant Seller 2 has agreed to transfer its interest in such parcels for the sum of $360,000, which will be satisfied by sale proceeds.

| Provision | Summary Description |
|---|---|
|  | Co-Tenant Sellers, by appropriate deeds, assignments and other instruments, all of Co-Tenant Sellers' respective right, title, and interest in and to the Co-Tenancy Property. |
| **Assumption of Contracts; Cure Costs** | N/A |
| **Other Terms and Conditions** | N/A |
| **Bid Protections** (Stalking Horse APA, Section 4.1(b)) | 2% of the Purchase Price ($66,000), payable from the proceeds of an alternative sale transaction, payable within one (1) business day of the closing of such transaction. |
| **Sale to Insider** **(Local Rule 6004-1(b)(iv)(A))** | N/A |
| **Agreements with Management** **(Local Rule 6004-1(b)(iv)(B))** | N/A |
| **Releases** **(Local Rule 6004-1(b)(iv)(C))** | N/A |
| **Private Sale/No Competitive Bidding** **(Local Rule 6004-1(b)(iv)(D))** | The Stalking Horse APA will be subject to higher and better offers in accordance with the Bidding Procedures and Bidding Procedures Order. |

| Provision | Summary Description |
|---|---|
| **Closing and Other Deadlines**<br><br>**(Local Rule 6004-1(b)(iv)(E))**<br><br>(Stalking Horse APA, Section 3.2) | The Closing, as provided for in Section 3.1 of the Stalking Horse APA, shall occur no later than the fifth (5th) Business Day after the satisfaction or waiver of all conditions to closing set forth in Section 5.8 and Section 5.9 of the Stalking Horse APA, but in any event not later than December 2, 2025. |
| **Good Faith Deposit**<br><br>**(Local Rule 6004-1(b)(iv)(F))**<br><br>(Stalking Horse APA, Section 2.2) | Upon Buyer's execution and delivery of the Stalking Horse APA, Buyer will deliver to the Deposit Escrow Agent an amount equal to ten percent (10%) of the Purchase Price in immediately available funds (the "**Cash Deposit**").<br><br>The Cash Deposit shall be held by the Deposit Escrow Agent in a non-interest-bearing account. In the event the Purchase Price payable by Buyer increases as a result of a higher bid submitted by Buyer at the Auction and such bid is accepted by Debtor Sellers as the winning or second highest bid at the Auction, Buyer shall deliver to the Deposit Escrow Agent such additional immediately available funds as are necessary to cause the amount of the Cash Deposit to be equal to ten percent (10%) of any increased Purchase Price.<br><br>The Cash Deposit shall be held by the Deposit Escrow Agent and be released as follows:<br><br>(a) If the Closing shall occur, Sellers and Buyer shall jointly instruct the Deposit Escrow Agent to, on the Closing Date, deliver the Cash Deposit, together with all accrued investment income thereon, by wire transfer of immediately available funds, on behalf of Seller, as provided in Section 2.2(b) of the Stalking Horse APA and the instructions provided to the Deposit Escrow Agent (and such amounts shall be applied as a credit toward the payment of the Purchase Price).<br><br>(b) If the Stalking Horse APA is terminated by Sellers pursuant to Section 14.2 of the same, and Sellers are not then in breach of Sellers' obligations, the Deposit Escrow Agent shall deliver the Cash Deposit, together with all accrued investment income thereon, to Sellers, with such Cash Deposit to be distributed in the same proportions as set forth in Section 2.1 of the Stalking Horse APA for allocation of the Purchase Price. If the Cash Deposit is delivered to, or becomes deliverable to, anyone other than Buyer such deposit will constitute liquidated damages. Because it would be impractical and extremely difficult to determine the extent of any damages that might result from a breach of, or default under, the Stalking Horse APA by Buyer prior to the Closing, it is understood and agreed that such liquidated damages (in an amount equal to the Cash Deposit) represent Buyer's and Sellers' reasonable estimate of actual damages, such liquidated damages do not constitute a penalty and such deposit will constitute Sellers' sole |

| Provision | Summary Description |
|---|---|
| | and exclusive remedy for any breach of, or default under, the Stalking Horse APA by Buyer prior to the Closing.<br><br>(c) If the Stalking Horse APA is terminated for any reason other than as set forth in Section 2.2(a)(2) of the same, the Deposit Escrow Agent shall deliver the Cash Deposit, together with all accrued investment income thereon, to Buyer. |
| **Interim Arrangements with Proposed Buyer**<br><br>**(Local Rule 6004-1(b)(iv)(G))** | N/A |
| **Use of Proceeds**<br><br>**(Local Rule 6004-1(b)(iv)(H))** | N/A |
| **Tax Exemption**<br><br>**(Local Rule 6004-1(b)(iv)(I))** | N/A |
| **Record Retention**<br><br>**(Local Rule 6004-1(b)(iv)(J))** | N/A |
| **Sale of Avoidance Actions**<br><br>**(Local Rule 6004-1(b)(iv)(K))** | N/A |
| **Requested Findings as to Successor Liability**<br><br>**(Local Rule 6004-1(b)(iv)(L))** | N/A |
| **Sale Free and Clear of Any Encumbrances** | Debtor Sellers will seek an order of the Bankruptcy Court (the "**Sale Order**") that, among other things, states that the sale of the Property to Buyer shall be free and clear of all encumbrances (except for Permitted Exceptions). |

| Provision | Summary Description |
|---|---|
| **(Local Rule 6004-1(b)(iv)(M))** (Stalking Horse APA, Sections 4.2 & 5.6) | Subject to entry of the Sale Order, at the Closing, Sellers shall convey fee simple insurable title to the Property, free and clear of all mortgages, liens, encumbrances, judgments, complaints, claims, easements, covenants, restrictions, and other title matters of any kind and nature whatsoever, except for (a) zoning ordinances affecting the Property, (b) specific instruments on the public record at the Effective Date that are enumerated in the deed referenced in Section 10.1(a) of the Stalking Horse APA, and (c) any other Permitted Exceptions.  Sellers acknowledge that all existing mortgages, security interests, and other monetary liens or encumbrances on the Property are not Permitted Exceptions and shall be discharged by Sellers no later than at the time of Closing (including, for the sake of clarity, discharge at Closing from the Purchase Price). |
| **Credit Bid** **(Local Rule 6004-1(b)(iv)(N))** | N/A |
| **Relief from Bankruptcy Rule 6004(h)** **(Local Rule 6004-1(b)(iv)(O))** | The Debtors will request that the Sale Order be entered with immediate effect. |

      **PLEASE TAKE FURTHER NOTICE** that copies of the Stalking Horse APA and the Bidding Procedures Order, are available free of charge on the Debtors' restructuring website, https://veritaglobal.net/dolphinco.

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to entry of the Bid Protections Order, including the designation of the Stalking Horse as the Stalking Horse Bidder for the Assets and approval of the Bid Protections, are due on **October 13, 2025 at 4:00 p.m. (ET)**.  Absent objection, the Debtors' selection of the Stalking Horse shall be deemed designated without further order of the Bankruptcy Court.

      **PLEASE TAKE FURTHER NOTICE that the Sale Hearing to consider approval of the sale of the Assets to the Successful Bidder(s) at the Auction, <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with section 363(f) of the Bankruptcy Code, will be held before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge for the District of Delaware, at the Bankruptcy Court, 824 N. Market Street, 6th Floor, Courtroom No. 2, Wilmington, Delaware 19081 on October 27, 2025 at 2:00 p.m. (ET).  The Sale Hearing may be adjourned from time to time without further**

**notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket of the Chapter 11 Cases.**

Dated: October 6, 2025

/s/ Allison S. Mielke
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone: (302) 571-6600
Email: rbrady@ycst.com
　　　　sgreecher@ycst.com
　　　　amielke@ycst.com
　　　　jkochenash@ycst.com

*Counsel to the Debtors and Debtors in Possession*

33614808.1