## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Leisure Investments Holdings LLC, *et al.*, | Case No. 25-10606 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. No. 1199** |

### MEMORANDUM[1]

Before me is Eduardo Albor's Motion to Dismiss, for Relief from and Modification of the Automatic Stay and to Void Sanctions ("Motion to Dismiss") filed June 17, 2026. Mr. Albor seeks to dismiss the bankruptcy case of Controladora Dolphin S.A. de C.V ("Controladora Dolphin"), relief from stay to proceed with litigation in Mexico and relief from orders entered previously in these cases.[2] Mr. Albor contends that Controladora Dolphin's bankruptcy case was filed without corporate authority and in violation of precautionary measures put in place by the Second District Court Specialized in Insolvency Matters ("Mexican Concurso Court") in a prior concurso mercantile proceeding in Mexico. Mr. Albor contends that he filed the Motion to Dismiss at this time because the Mexican Eighth Civil Collegiate Court of the First Circuit ("Mexican Collegiate Court") issued a March 31, 2026 order granting an amparo, which "invalidated the corporate resolutions that removed Mr. Albor" from office. Mr. Albor further contends that the effect of the March 31, 2026 order ("March 31 Amparo Order") is that "Mr. Albor has been reinstated as the

---

[1] I had intended to rule on this from the bench, but in drafting the findings it became clear that I needed a writing, hence this Memorandum. Due to the need to rule promptly, however, this Memorandum is less formal than a memorandum would otherwise be.

[2] Dkt. No. 1199.

President of the Board of Controladora Dolphin, S.A. DE C.V." which, in turn, places responsibilities on him that he must attend to in Mexico. Because of those representations, and at Mr. Albor's request, I immediately held a status conference and scheduled the matter for July 20 and 21.

The parties negotiated and I entered a Scheduling Order regarding the conduct of the two-day trial. Expert Declarations on Mexican law were submitted under Fed.R.Civ. P. 41.1 and supplemented through live testimony.[3] Testimony was also adduced from Mr. Albor, Mr. Strom and Mr. Wagstaff and certain documents were entered into evidence. Based on the evidence, it is clear that no corporate resolutions were invalidated by the March 31 Amparo Order and that Order did not reinstate Mr. Albor as the President of Controladora Dolphin. Rather, the posture of proceedings in Mexico stands almost exactly where it stood last time Mr. Albor testified before this Court over a year ago—the Mexican Concurso Court has made no express ruling on any corporate governance issue while the Mexico City State Court (defined *infra*) has recognized on a provisional basis Mr. Strom and Mr. Wagner as the proper management.

Based on the evidence, I deny the Motion. As Mr. Albor does not seek to put the issue of corporate authority squarely in front of me, I do not find cause to dismiss any of the bankruptcy cases. Further, dismissal is not remotely in the best interests of the estates or their creditors. Neither will I grant relief from stay at this late date. The evidence shows

---

[3] I denied a request to consider expert declarations or testimony filed after the agreed to—and ordered—deadline. The declarations admitted as well as the testimony of Darío U. Oscós Coria and Justice Alfredo Gutiérrez Ortiz Mena are greatly appreciated especially to the extent they explained the Mexican court system, including the jurisdiction of the four courts that have issued rulings pertaining in some fashion to Controladora Dolphin as well as some key concepts of Mexican jurisprudence. But, as will be seen, most of my ruling depends on my reading of the English translations of the various orders entered by the Mexican courts, not the testimony of the experts on Mexican law, generally. My reading closely aligns with the reading of Justice Gutiérrez.

that Mr. Albor has been in continuous violation of the automatic stay in these cases and in continuous violation of the certification he signed and filed in this Court over a year ago on June 27, 2025 ("Albor Certification"). In his certification, Mr. Albor declared under penalty of perjury that the two amparo proceedings filed on June 18, 2025 in Mexico had been withdrawn as of June 26, 2025 and dismissed. Mr. Albor also certified that he would not prosecute the MX Control Litigation[4] on behalf of any Debtor or himself "unless and until this Court grants stay relief following proper motion and order." This was false.

We will never know how I would have ruled had Mr. Albor filed the Motion to Dismiss at the inception of the case. But fourteen months, $43 million in DIP financing and numerous closed asset sales later, cause does not exist to disrupt these bankruptcy cases or grant relief from stay. Mr. Albor's own conduct only supports, if not mandates, denial.

**Findings of Facts[5]**

Controladora Dolphin is a Mexican entity. Pre-bankruptcy Controladora Dolphin executed that certain Amended and Restated Note Purchase and Guarantee Agreement dated June 8, 2020, which amended and restated an earlier agreement ("Note Purchase Agreement"). By the Note Purchase Agreement, Controladora Dolphin issued and sold to Wilmington Trust National Association, as collateral agent for certain purchasers, 8.5% guarantee senior secured notes due April 8, 2026 in the aggregate principal amount of $100,000,000. Payment under the Note Purchase Agreement was guaranteed by certain affiliated entities and secured by, among other things, a pledge of Mr. Albor's shares of

---

[4] The MX Control Litigation is defined below. Suffice it to say that it involves any litigation in Mexico by or through which Mr. Albor seeks to exercise corporate government rights over Controladora Dolphin or any Debtor.

[5] These findings are based on the evidence adduced at the two-day hearing, a review of certain docket entries and uncontested background facts.

stock in Controladora Dolphin.  The pledge of stock is memorialized in that certain Share Pledge Agreement dated June 8, 2020 between Mr. Albor (as pledgor) and Wilmington Trust (as pledgee).  Controladora Dolphin is in payment default on the Note Purchase Agreement.

**The Concurso Mercantile Petition**

On December 30 2024, Mr. Albor filed a concurso mercantile proceeding for Controladora Dolphin in the Mexican Concurso Court.  In connection with the filing, Mr. Albor asked the Mexican Concurso Court to put in place nineteen enumerated precautionary measures.[6]  Rather than adopt Mr. Albor's precautionary measures, by Order dated January 28, 2025, the Mexican Concurso Court *sua sponte* entered its own, which were aimed at preserving Controladora Dolphin.  The Court's precautionary measures are:

1. A prohibition on the merchant [Controladora Dolphin] from making payments on obligations that became due prior to the date the petition for commercial bankruptcy was accepted.

2. The suspension of all enforcement or extrajudicial proceedings against the merchant's assets or rights.

3. A prohibition on the merchant from disposing of or encumbering the company's principal assets.

4. A prohibition on transferring funds or securities to third parties, except for payments considered part of ordinary business operations.[7]

The Mexican Concurso Court also added a fifth precautionary measure: "a prohibition on rescinding and/or terminating in advance the contracts to which the business is a party,

---

[6] January 28, 2025 Order of the Second District Court Specialized in Insolvency Matters ("January 25, 2025 Order"), 8-14.

[7] January 28, 2025 Order, 6.  Neither expert testified whether these precautionary measures are standard or tailored to the Controladora Dolphin mercantile concurso proceeding.

4

which is granted solely for the purposes of this petition; that is, the rescission of the contracts is prohibited on the grounds of the bankruptcy petition."[8] This precautionary measure (together with the four above, the "Precautionary Measures") was designed to ensure the survival of the animals in Controladora Dolphin's care.[9] Notwithstanding the request, the Mexican Concurso Court did not adopt any of Mr. Albor's fifteen proposed precautionary measures directed toward Wilmington Trust or CIBanco (enumerated as numbers 5-19).[10]

---

[8] January 28, 2025 Order, 14.

[9] January 28, 2025 Order, 14.

[10] Mr. Albor's proposed precautionary measures span five pages so I only provide three examples:

15.    The order directed to **WILMINGTON TRUST, NATIONAL ASSOCIATION**, in its capacity as "Security Agent", to refrain from declaring, notifying, or giving effect to the occurrence of an "Event of Default" pursuant to the provisions of Sections 11 and 12 of the "Second Amended and Restated Note Purchase and Guarantee Agreement" 1 entered into on June 27, 2022; including, without limitation, the order to refrain from accelerating, terminating early, or rescinding said agreement.

13.    The order directed to **WILMINGTON TRUST, NATIONAL ASSOCIATION** to refrain from exercising any right in its capacity as "Pledgee" arising from (i) the "Non-Possessory Pledge Agreement" 4 entered into with Controladora Dolphin, a Variable Capital Corporation on October 8, 2015 and/or (ii) the "Agreement of Adherence, Amendment, and Total Restatement" 5 dated April 5, 2019, which amended the foregoing, and/or (iii) the "Second Amendment to the Non-Possessory Pledge Agreement" 6 dated July 6, 2020, which amended the Pledge Agreement referred to in subparagraph "(i)," and/or (iv) the "Agreement to Adhere to the Original Pledge Agreement" dated June 27, 2022, that is intended to enforce, assign, or in any way dispose of the "Pledged Assets" (as defined in the contract and the aforementioned agreements), including, without limitation, taking any action related to the notification of an "Event of Default" pursuant to Clause Six of the Pledge Agreement, as well as initiating, continuing, or taking any action related to the "Enforcement Proceedings" governed by Clause Seven of the aforementioned Pledge Agreement.

14.    The order directed to **WILMINGTON TRUST, NATIONAL ASSOCIATION** to refrain from exercising any right in its capacity as "Pledgee" arising from the "Non-Possessory Pledge Agreement" 8 entered into with Controladora Dolphin, a Variable Capital Corporation. on June 27, 2022, aimed at enforcing, assigning, or otherwise disposing of the "Pledged Assets"

5

Thereafter, based on payment defaults, on March, 18, 2025, Wilmington Trust exercised collateral and pledge rights in the equity of Leisure Investment Holdings, removed all then-serving members of the board and appointed Steven Robert Strom as the sole independent director.  On March 28, 2025, through exercise of pledge rights, all then-serving directors of Dolphin Capital Company S. de R.L. de C.V., Dolphin Austral Holdings, S.A. de CV, Aqua Tours, S.A. de CV, Viajero Cibernético, S.A. de C.V., Promotora Garrafón, S.A. de C.V., and Ejecutivos de Turismo Sustentable, S.A. de C.V. were removed and Mr. Strom was appointed the sole independent director of each of those entities.  Also on March 28, 2026, through exercise of pledge rights, Triton Investments Holdings LLC, MS Leisure Company, Icarus Investments Holdings LLC, Marineland Leisure, Inc., GWMP, LLC, Gulf World Marine Park, Inc., The Dolphin Connection, Inc., and Dolphin Leisure, Inc. (Florida) removed all then-serving directors and appointed Mr. Strom as their respective sole independent director.  These entities also retained Riveron as restructuring advisors and Mr. Wagstaff as CRO.  Mr. Albor contests each of these corporate actions.[11]

On March 31, 2025, acting at the direction of Mr. Strom, Controladora Dolphin moved to withdraw the concurso mercantile petition.  The Mexican Concurso Court accepted the withdrawal of the petition and issued an order to that effect on April 14, 2025.  By further Order dated April 21, 2025, the Mexican Concurso Court dismissed Mr. Albor's

---

(as defined in the aforementioned agreement), including, without limitation, the right of "Enforcement" provided for in Clause Six of the agreement.

[11] The details of the exercise of the pledge, the corporate resolutions and any other corporate actions are not necessary to decide the Motion to Dismiss as neither party is asking me to rule on the corporate governance issue.

challenge to the dismissal order.  On June 18, 2025, Mr. Albor filed an amparo in the Mexican Collegiate Court challenging the withdrawal of the concurso mercantile as unauthorized.  Earlier this year, the Mexican Collegiate Court issued the March 31 Amparo Order which granted Mr. Albor's amparo and required the Mexican Concurso Court to: (1) reopen the concurso mercantile, (2) decide Mr. Albor's challenge to the authority of Mr. Strom's representative to withdraw the concurso petition and (3) directed the Mexican Concurso Court to resolve the dispute with full jurisdiction in accordance with the law.[12]

In response, on May 20, 2026, the Mexican Concurso Court reopened the concurso proceeding.[13]  Instead of ruling on the legitimacy of the withdrawal of the concurso petition, the Court determined it appropriate to rule on a logically antecedent issue, namely Controladora Dolphin's initial request for a declaration of bankruptcy (i.e., whether to accept the original petition).  The Mexican Concurso Court ruled that it must look at the "legitimacy" of the petition, which is a necessary condition to the admissibility of the petition.  The Mexican Concurso Court explained: to establish the legitimacy of a concurso petition filed on behalf of a company (as opposed to one filed by creditors), the filer must

---

[12] March 31 Amparo Order at 322:

> Consequently, the federal court's protection and relief should be granted, so that the responsible party may set aside the contested decisions, as well as all consequences arising from having deemed the trading party's petition for commercial reorganization withdrawn, and the court must admit and proceed with the motion challenging lack of standing filed by the complainant proceeding on the premise that, in principle, it is empowered to examine the claims of nullity that have been raised and to resolve the dispute with full jurisdiction in accordance with the law.

The Court then determined it was unnecessary to examine and decide other grounds asserted in the amparo.

[13] May 20, 2026 Judgment in Bankruptcy Proceedings issued by the Mexican Concurso Court ("May 26 Judgment").

provide at the time of filing "the resolutions of corporate actions that unequivocally demonstrate the intention of the partners or shareholders that the company in question files for bankruptcy."[14] To that end, the petition must be "unequivocally documented—that is, there must be no doubt that it was the will of the partners or shareholders to make that decision."[15] Reviewing the documents that were filed with the petition, the Mexican Concurso Court found the documentation lacking as it did not establish the requisite shareholder intent.[16] As such, the Mexican Concurso Court ruled the petition inadmissible and dismissed it. Because it dismissed the concurso petition on these grounds, it did not reach the question of whether the subsequent withdrawal of the petition was filed by someone with authority.

Mr. Albor took three actions in response to the May 20, 2026 ruling. First, he filed another amparo, an "amparo indirecto" in which he challenged the May 20, 2026 dismissal of the petition. There, he asserts that the Mexican Concurso Court has repeated the same mistake it previously made and disregarded the Mexican Collegiate Court's direction to determine whether the withdrawal of the petition was filed by an authorized representative of Controladora Dolphin. This new amparo challenge is in its infancy.

Second, Mr. Albor asked the Mexican Concurso Court to reconsider the dismissal, which appears to have been denied.

---

[14] May 20, 2026 Judgment, 7.

[15] May 20, 2026 Judgment, 7.

[16] Mr. Oscos disagrees with the Mexican Concurso Court's decision on admissibility of the petition as his review shows the clear intent of the shareholders. But, Mr. Oscos does not dispute that the concurso petition was dismissed for this reason.

8

Third, on May 28, 2026, Mr. Albor filed a direct appeal of the dismissal to the Second Collegiate Appellate Tribunal ("Mexican Appellate Court"). The appeal was admitted on May 29, 2026. Controladora Dolphin (through Mr. Strom's representative) withdrew that appeal. By rulings dated June 25 and June 29, 2026, the Mexican Appellate Court accepted the withdrawal, the appeal was declared moot, and the ruling became final and binding.

In the meanwhile, on June 12, 2026, the Mexican Concurso Court issued a ruling that has particular salience here. It very helpfully recites the full history of the concurso proceeding and its various previous rulings discussed above. The Mexican Concurso Court also reiterates the Precautionary Measures it previously ordered and concludes they remain in effect because the appeal of its ruling dismissing the concurso petition has suspensive effect. As before, the precautionary measures in the June 12, 2026 Order do not include the requested measures directed to Wilmington Trust and CIBanco.

In its June 12, 2026 ruling, the Mexican Concurso Court also specifically declines Mr. Albor's request to send an official letter to the Tenth Civil Court for Written Proceedings of the Superior Court of Justice of Mexico City ("Mexico City State Court") informing it that the Precautionary Measures remain in place. As discussed immediately below, the Mexico City State Court is presiding over a lawsuit brought by Controladora Dolphin, through its representative (at the direction of Mr. Strom), against Mr. Albor and others. That court has recognized Mr. Strom as the authorized governing authority for Controladora Dolphin on a presumptive basis consistent with Mexican law. The Mexican Concurso Court declined Mr. Albor's request to send the Mexico City State Court a letter because:

9

there is no basis for granting the request, since the copy of the judgment submitted with the request shows that Case No. 222/2025 [Controladora Dolphin's lawsuit against Mr. Albor] was filed against various individuals, and there is no indication of any measure or ruling having been issued against the merchant's [Controladora Dolphin's] assets and rights, nor is it deemed necessary to order, on our own initiative, measures beyond those granted in the [January 28, 2025] Order granting the petition.[17]

### The Mexico City State Litigation

Mr. Strom also initiated litigation in Mexico.  Mr. Strom caused a civil lawsuit to be filed in the Mexico City State Court.  The suit was brought by Carol Braulia Reyes Escandón, as attorney for Controladora Dolphin, among others.[18]  On April 4, 2025, the Mexico City State Court issued an Order ruling that the complaint is admissible, that it should be served on Defendants[19] and that Defendants should file an answer and assert affirmative defenses within fifteen days of service.  In its April 4, 2025 Order, the Mexico City State Court set out in its own precautionary measures, which acknowledged the change in corporate governance ("Corporate Governance Changes") and continued the service of Mr. Strom and Mr. Wagstaff in their positions as Controladora Dolphin's decision makers:

> . . . it is hereby ordered that the existing de facto situation regarding the removal of directors and the revocation of proxies of the companies comprising Grupo Dolphin be maintained, under the terms established at the General Shareholders' Meetings and the Unanimous Resolutions adopted outside of the General Shareholders' Meeting of held on March 28, 2025; thus, IT IS ORDERED to maintain the current situation regarding the appointment of STEVEN ROBERT STROM as Sole Administrator of the companies that make up Grupo Dolphin, under the terms established in the General Shareholder's Meetings and the Unanimous Resolutions adopted outside of the

---

[17] June 12, 2026 Order of the Mexican Concurso Court, 17.

[18] The others are Aqua Tours, S.A. de C.V., Dophin Austral Holdings, S.A. de C.V., Dolphin Capital Company, S. De R.L. de C.V., Ejecutios de Turismo Sustentable, S.A. de C.V., Promotora Garrafon, S.A. de C.V. and Viajero Cibernetico, S.A. de C.V.

[19] Defendants are Mr. Albor, Concepción Esteban Manchado, Martin Flores Merino, Valeria Margarita Albor Dominguez, Sergio Said Jacome Palma, BBVA Bancomer S.A. Multiple Bankruptcy institution and BBVA Bancomer Financial Group.

10

Partners' Meeting held on March 28, 2025; as well as IT IS ORDERED to maintain the current situation regarding the appointment of Robert L. Wagstaff . . . as attorneys-in-fact of the companies that make up Grupo Dolphin, under the terms established in the General Shareholders' Meetings and the Unanimous Resolutions adopted outside the Partners' Meeting held on March 28, 2025.[20]

The Mexico City State Court also Ordered Defendants, including Mr. Albor, to refrain from performing any acts on behalf of Controladora Dolphin or other companies within the Dolphin Group. The Court ordered:

> IT IS ORDERED for EDUARDO ALBOR VILLANUEVA . . . as removed members from the Board of Directors or Managers of the companies that make up

---

[20] April 4, 2025 Order of the Mexico City State Court, 2-3. This provision in its entirety reads:

**With regard to the PRECAUTIONARY MEASURES FOR THE PRESERVATION OF ASSETS, they are** deemed appropriate, based on the provisions of Article 384, 386, 387, and 388 of the Federal Code of Civil Procedure, applied supplementarily to the Commercial Code, granted for the purpose of preserving the status quo, without prejudging the legality of the current situation or the rights or responsibilities of the party requesting them, based on the prima facie case, the evident urgency of the measures and the danger of delay, which could adversely affect the interests of the petitioners and the third parties they have identified—both in terms of their commercial prestige and reputation, as well as the misappropriation of their assets by the removed individuals, breaches of contract, financial risks, and risks to their employees—it is hereby ordered that the existing de facto situation regarding the removal of directors and the revocation of proxies of the companies comprising Grupo Dolphin be maintained, under the terms established at the General Shareholders' Meetings and the Unanimous Resolutions adopted outside of the General Shareholders' Meeting of held on March 28, 2025; thus, IT IS ORDERED to maintain the current situation regarding the appointment of STEVEN ROBERT STROM as Sole Administrator of the companies that make up Grupo Dolphin, under the terms established in the General Shareholders' Meetings and the Unanimous Resolutions adopted outside of the Partners' Meeting held on March 28, 2025; as well as IT IS ORDERED to maintain the current situation regarding the appointment of Robert L. Wagstaff, Michael Nicosia Flynn, Eduardo Moyano Lico, and Matias Marambio Calvo as attorneys-in-fact of the companies that make up Grupo Dolphin, under the terms established in the General Shareholders' Meetings and the Unanimous Resolutions adopted outside the Partners' Meeting held on March 28, 2025.; IT IS ALSO ORDERED to maintain the existing factual situation regarding the appointment of Robert L. Wagstaff, Michael Nicosia Flynn, Eduardo Moyano Lico, and Matias Marambio Calvo as attorneys-in-fact of the companies that make up Grupo Dolphin, under the terms established in the General Shareholders' Meeting and the Unanimous Resolutions adopted outside of the Shareholders' Meeting held om March 28, 2025.

11

Grupo Dolphin, refrain from performing any act or instructing that any act be performed on behalf of any of the companies that make up Grupo Dolphin.

*    *    *

ORDERED that, as a result of the revocation of their powers, to refrain from introducing themselves as agents and/or representatives of the companies in the Dolphin Group and must refrain from carrying out any act or instructing that any act be carried out on behalf of any of the companies that make up the Dolphin Group AND ESPECIALLY SO that they refrain from disposing of any assets of the companies that make up the Dolphin Group and, in general, from performing any act that affects the legal and property sphere of the companies that make up the Dolphin Group. [21]

Further, the April 4, 2025 Order required Mr. Albor and others to provide Mr. Strom

"unrestricted access to" and "free use" of Controladora Dolphin's assets. [22]

---

[21] April 4, 2025 Order of the Mexico City State Court, 3.  This provision in its entirety reads:

IT IS ORDERED for EDUARDO ALBOR VILLANUEVA, CONCEPIÓN ESTEBAN MANCHADO, MARTIN FLORES MERINO, VALERIA MARGARITA ALBOR DOMINGUEZ and SERGIO SERGIO SAID JACOME PALMA, as removed members from the Board of Directors or Managers of the companies that make up Grupo Dolphin, refrain from performing any act or instructing that any act be performed on behalf of any of the companies that make up Grupo Dolphin.  AND, IN PARTICULAR, that they refrain from disposing of, transferring, encumbering, or otherwise dealing with assets belonging to the companies comprising the Dolphin Group and, more generally, from undertaking any act affecting the legal or proprietary rights and interests of any company within the Dolphin Group; EDUARDO ALBOR VILLANUEVA, CONCEPIÓN ESTEBAN MANCHADO, MARTIN FLORES MERINO, VALERIA MARGARITA ALBOR DOMINGUEZ and SERGIO SERGIO SAID JACOME PALMA, as former representatives of the companies that make up the Dolphin Group, are ORDERED that, as a result of the revocation of their powers, to refrain from introducing themselves as agents and/or representatives of the companies in the Dolphin Group and must refrain from carrying out any act or instructing that any act be carried out on behalf of any of the companies that make up the Dolphin Group AND ESPECIALLY SO that they refrain from disposing of any assets of the companies that make up the Dolphin Group and, in general, from performing any act that affects the legal and property sphere of the companies that make up the Dolphin Group. . . .

[22] April 4, 2025 Order of the Mexico City State Court, 4.

12

On April 9, 2025, Mr. Albor filed a separate proceeding in the Mexico City State Court against CiBanco. The Mexico City State Court issued an injunction suspending the Corporate Governance Changes that were acknowledged in the April 4 Order. Debtors moved to consolidate the two civil actions in the Mexico City State Court. By Order dated April 25, 2025, the Mexico City State Court determined that until a decision was made on the motion to consolidate and until a decision was made on which injunctive relief should prevail, the March 28, 2025 board resolutions removing Mr. Albor and installing Mr. Strom would be observed.[23] Both Mr. Albor and CiBanco have filed appeals from various orders (to the Ninth Civil Chamber of the Superior Court of Justice) as well as amparos (to the Second Federal District Court in Civil Matters). The current state of play is that the precautionary measures ordered on April 4, 2025 are in place: Mr. Strom and Mr. Wagner are in and Mr. Albor is out.

---

[23]   **EXP. 222/2025**

**Mexico City, April twenty-fifth, two thousand and twenty five**

---Added to records the writ of account with motion number 6163, filed by the plaintiff, through its legal representative, and state to him that this Court reserves to resolve the motion for accumulation of proceedings that he pretends, until the respective interstate judicial communication and records inherent to the services of process of the defendants are on the case file, and derived from the contradiction that it maintains exists of injunctive relief with the other trial, until a decision is made on whether or not to admit the motion of merit AND IT BE DECIDED WHICH INJUNCTIVE RELIEF SHOULD PREVAIL BETWEEN BOTH TRIALS, the respective corporate meetings and corporate resolutions dated March twenty eighth, two thousand twenty five related to the legal entities indicated, will continue to enjoy validity and the presumption of having been issued in accordance with the law because their nullity has not been decided to date and must be observed until a judgment is rendered. **NOTIFIED.** Provided and signed by Judge RODRIGO CORTES DOMINGUEZ TOLEDANO, acting with EDWIN ROSEY DIAZ, Court Clerk B, who authorizes and attests. I attest.

## The Bankruptcy Case

On March 31, 2025, Mr. Strom authorized Leisure Investments and certain affiliated entities to file voluntary bankruptcy proceedings in this court. On April 16, 2025, Mr. Strom authorized the filing of a voluntary chapter 11 case for Controladora Dolphin and another of its wholly owned subsidiaries in this court. All of these cases are administratively consolidated for convenience. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors. A review of the docket reveals that there are over 1300 filings in these cases.

As of the bankruptcy filings, Debtors operated entertainment/recreational venues, including dolphin and other live-animal encounters in parks in the United States, Mexico, the Caribbean and Europe. At that time, Debtors were entrusted with the welfare of approximately 2400 animals, including 295 dolphins, 51 sea lions, 18 manatees and 18 seals. In the last fourteen months, I have approved numerous sales of assets and approved the transfers of hundreds, if not thousands, of animals.

Mr. Albor has been aware of these cases since their inception. Within the first month of filing the cases, on April 25, 2025, Debtors filed a motion to enforce the automatic stay and compel Debtors' former officers to turn over records. Debtors argued that Mr. Albor and others were preventing current management, including Mr. Wagstaff, from entering Debtors' headquarters and accessing records.

An initial hearing was held on April 29, 2025, an evidentiary hearing was held on May 21, 2025 and argument was heard on June 2, 2025. After considering the record and argument, I concluded that Mr. Albor's actions violated the stay, detailed his violations and entered an Order on June 5, 2025, which, among other things, provides:

14

The Court finds and/or concludes that Mr. Albor violated the Automatic Stay imposed by Section 362(a)(3) of the Bankruptcy Code and the Turnover Order, which violations include:

      a.     commencing or continuing actions or proceedings in the United Mexican States by or through which Mr. Albor seeks to exercise corporate governance rights of any Debtor or subsidiary of a Debtor (collectively, the "**MX Control Litigation**");

      b.     blocking access by the Independent Director, the CRO, and persons they designate (such persons, together with the Independent Director and CRO, collectively, "**Authorized Debtor Designees**") to any Debtors' banking and other financial accounts (such accounts, collectively, the "**MX Bank Accounts**") at banking and other financial institutions located in the United Mexican States (such institutions, collectively, the "**MX Banks**");

      c.     blocking access by the Authorized Debtor Designees to Debtors' Records held in the building identified as the Dolphin Group Headquarters;

      d.     instructing employees of the Debtors or their subsidiaries not to cooperate with or take direction from the Authorized Debtor Designees;

      e.     instructing vendors, suppliers, and other business partners or stakeholders of the Mexican Debtors or their subsidiaries not to communicate or do business with the Authorized Debtor Designees;

      f.     blocking the Authorized Debtor Designees' usernames, passcodes, passwords, and other credentials for computers, cloud-based or remotely-located services, devices, electronic locks, phones, servers (including e-mail servers), and other electronic or information technology, containing, in whole or in part, Records or other data or electronically stored information of or relating to the Debtors; and

      g.     holding himself out as a current director, officer, or employee of the Debtors or their subsidiaries.[24]

I also concluded that Mr. Albor has no authority to act on behalf of Debtors with respect to their business operations and, among other things, ordered him to cease prosecution of litigation on behalf of any Debtor, including Controladora Dolphin. That litigation

---

[24] Order (I) Enforcing (A) the Automatic Stay and (B) the Court's Order Compelling Debtors' Former Officers and Other Required Persons to Turn Over Records, and (II) Granting Related Relief, Dkt.No. 205, 3-4.

15

included the petition before the Mexican Concurso Court and related amparos. Specifically, the Order provides:

> Mr. Albor shall also:
>
> a. cease prosecution of the MX Control Litigation on behalf of any Debtor, including Controladora Dolphin and on behalf of himself personally unless and until this Court lifts the automatic stay upon motion and order . . . .[25]

Mr. Albor was also provided notice that sanctions of $10,000 per day may be awarded in appropriate circumstances if he continued to violate the automatic stay. This Order is final and no appeal was filed.

At a status conference on June 25, 2025, I was presented with undisputed evidence that Mr. Albor filed a new amparo proceeding on June 19, 2025 on behalf of Controladora Dolphin. In that amparo proceeding, Mr. Albor represented himself as the attorney in fact for Controladora Dolphin. Mr. Albor did not seek relief from stay to file the amparo proceeding. As a result, by Order dated June 26, 2025, I imposed a $10,000 per day sanction retroactive to June 19, 2025.[26] The Order provides that the daily sanction will end when Mr. Albor files a declaration under 28 U.S.C. § 1746 that the amparo proceeding has been dismissed. This Order is final and no appeal was filed.

On June 27, 2025, in order to end the daily sanction, Mr. Albor filed the Certification of Eduardo Albor Pursuant to 28 U.S.C. § 1746 ("Albor Certification").[27] In the Albor Certification, signed under penalty of perjury under the laws of the United States of America, Mr. Albor declared:

---

[25] Dkt.No. 205, 4.

[26] Order Imposing Sanctions on Eduardo Albor for Violation of the Automatic Stay, Dkt. No. 257.

[27] Dkt. No. 259.

16

Corrective Measure No. 3. In compliance with the Stay Enforcement Order, as well as the Amparo Sanctions Order, I certify that the two *amparos* filed on June 18, 2025 (the "**New Amparo Proceedings**") have been withdrawn as of June 26, 2025. A copy of the dismissals are attached as composite **Exhibit A**. I further certify that I will not prosecute the MX Control Litigation on behalf of any Debtor, including Controladora Dolphin, or on my own behalf, unless and until the Court grants stay relief following proper motion and order. Accordingly, I certify that Corrective Measure 3 has been performed.[28]

As is evident from the recitation of the Mexican proceedings detailed above, the Albor Certification was false at the time it was made and remains false. Mr. Albor did not withdraw the two amparos filed in Mexico as of June 26, 2025. Rather, contrary to his certification and as reflected in the Withdrawal of Amparo Proceeding attached as Exhibit A to the Albor Certification, Mr. Albor did not dismiss the amparo proceedings outright. Rather, he requested that the Mexican Collegiate Court "require [Mr. Albor] to **ratify** this withdrawal within the term established by law."[29] The Mexican Collegiate Court served Mr. Albor with a summons to appear and ratify the withdrawal documents. Mr. Albor did not appear. Accordingly, the Mexican Collegiate Court ordered the amparo proceedings to continue resulting in the March 31, 2026 Amparo Order.[30]

---

[28] Dkt. No. 259, 4-5.

[29] Dkt No. 259-1 (emphasis in original).

[30] The Mexican Collegiate Court explains:

Likewise, pursuant to Articles 175 and 180 of the Amparo Law, the petitioner, Eduardo de Martin Albor Villanueva, was ordered to provide, within five days from the date he was legally notified of the order, proof of his authority to act as the attorney-in-fact for the petitioner Controladora Dolphin, Sociedad Anómina de Capital Variable.

Likewise, considering the briefs filed by Carlos Braulio Reyes Escandón and Eduardo de Martin Albor Villanueva, acting as attorneys for the petitioner Controladora Dolphin, Sociedad Anómina de Capital Variable, in which they withdrew the amparo on behalf of their client, the petitioner was summoned through said individuals to appear before the Court within three days with valid official identification and the power of attorney to ratify the content and signature of

## Discussion

By the Motion to Dismiss, Mr. Albor seeks (i) relief from the stay so that he can "execute his responsibilities under Mexican law" including participating in proceedings before the Mexican Concurso Court and enforcing the precautionary measures; (ii) an order vacating the previous orders I entered regarding Mr. Albor's stay violations and sanctions, and (iii) dismissal of the Controladora Dolphin bankruptcy case, or alternatively, a stay of the case for 90 days, with possible extensions. The premise of all these requests is that the March 31 Amparo Order reinstated Mr. Albor as the President of Controladora Dolphin and ousted Mr. Strom. Mr. Albor now feels he is in "an impossible" position caught between two courts. He also asserts the bankruptcy cases were not properly filed because Mr. Strom could not authorize the filings and that any governance fight must be fought in Mexico. Mr. Albor adds that the governance dispute in Mexico is at an advanced stage and

---

their withdrawal documents, provided that failure to do so would result in the case proceeding as scheduled, and electronic notification was ordered.

By order dated November 19, 2025, Carlos Braulio Reyes Escandón, who claimed to be the attorney-in-fact for the petitioner, Controladora Dolphin, Sociedad Anómina de Capital Variable, appeared in court to confirm his written withdrawal of the amparo petition.

As this case is now ready for a decision, by order of November 25, 2025, it was assigned to Judge **Jose Juan Bracamontes Cuevas** for the drafting of the corresponding decision.

Given that there was no certainty regarding the notification sent to Eduardo de Martin Albor Villanueva as authorized representative of the petitioner, Controladora Dolphin, a variable-capital corporation, of the court order requiring him to appear before the Court within three days valid official identification and the power of attorney to confirm the content and signature of his motion to withdraw the complaint, it was ordered that he be notified again, and once such notification was served, the requirement was not complied with; therefore, by order dated March 26 of this year, it was ordered that the proceedings in this case continue.

March 31 Amparo Order, 5-6.

18

this Court should defer to the Mexican courts.  Finally, Mr. Albor contends that he is likely to win the corporate governance dispute in Mexico and that Debtors are not otherwise harmed by either relief from stay or a dismissal of these cases.

I disagree with Mr. Albor on all fronts.

## I.  The Court will not Grant Relief from Stay

Section 362(d)(1) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . for cause.[31]

The Code does not defined "cause."  Rather, "it is a flexible concept, determined on a case-by-case basis."[32]  Courts consider the totality of the circumstances when determining whether cause exists.[33]  Courts in this district have often analyzed requests to continue prepetition litigation against a debtor in another forum using the three-part balancing test articulated in *Rexene*:

(i)     Whether any great prejudice to either the bankruptcy estate or the debtor will result from continuation of the civil suit;

(ii)    Whether the hardship to the non-bankruptcy party by maintenance of the stay considerably outweighs the hardship to the debtor; and

(iii)   Whether the creditor has a probability of prevailing on the merits.[34]

---

[31]  11 U.S.C. § 362(d)(1).

[32]  *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 548 (Bankr. D. Del. 2016) (citing *In re Tribune*, 418 B.R. 116, 126 (Bankr. D. Del. 2009)).

[33]  *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).

[34]  *F-Squared*, 546 B.R. at 548 (citing *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)).

"The movant has the initial burden of proof to put forth a prima facie case for cause before the debtor must then rebut the case."[35]

Mr. Albor seeks relief from stay to continue with the litigation in the Mexican Concurso Court to vindicate his position that he was not properly removed from his governance position at Controladora Dolphin and that Mr. Strom was not properly appointed as its independent director. Considering the totality of the circumstances, that request comes too late. The facts that underlie Mr. Albor's request existed prepetition and could have been raised at the inception of these bankruptcy cases. Mr. Albor could have immediately filed a motion for relief from stay to pursue the concurso petition, but he did not.

Further, in June, 2025, Mr. Albor was found in violation of the automatic stay for, among other reasons, pursuing the concurso petition/corporate governance disputes in Mexico. As, if not more importantly, Mr. Albor certified to this Court that he had dismissed the amparo proceeding emanating from the concurso petition and would not continue pursuing it unless and until he received relief from the stay. In the year since Mr. Albor made those representations under oath, he did not seek relief from stay to pursue corporate governance litigation in Mexico. Rather, in direct violation of my Order and the Albor Certification, Mr. Albor pursued the litigation resulting in the March 28 Amparo Order which he bootstraps into a reason to grant relief from stay. Such a blatant violation of this Court's order cannot be tolerated or rewarded.[36]

---

[35] *In re Scarborough-St. James Corp.*, 535 B.R. 60, 68 (Bankr. D. Del. 2015) (citing *Rexene*, 141 B.R. at 577).

[36] Mr. Albor asserts that he did not pursue the governance litigation in Mexico. He claims another person separately pursued it. Based on the evidence, I conclude that is not true. But, even if it is,

As to the status of the corporate governance dispute, as detailed above, I already held, albeit in another context, that Mr. Strom is properly in charge of Controladora Dolphin and the other Debtors. That Order was not appealed. Further, the Mexico City State Court recognizes Mr. Strom as the rightful management albeit on a presumptive basis. And, the Mexican Concurso Court determined that it did not need to reach the authority issue (whether the withdrawal of the concurso petition was properly authorized) because the concurso petition itself was not legitimate as it was not filed with unequivocal evidence that Controladora Dolphin's shareholders intended to commence insolvency proceedings.

Thus, the current state of play in Mexico is where it stood a year ago. The Mexican Concurso Court has not ruled on Mr. Albor's assertion that he was not properly removed from office and the Mexico City State Court does not recognize Mr. Albor as management. Notwithstanding the numerous proceedings in the Mexican court system, generally, it is over a year since the concurso petition was filed and there is no resolution of Mr. Albor's dispute, and there may never be.[37] Further, the Mexican courts are not the only court that can decide the corporate governance issue. Bankruptcy courts regularly resolve governance disputes in the contexts of motions to dismiss. If asked to do so, I could have decided the dispute at any time over the past year.[38] But, even today, Mr. Albor does not seek to have this dispute decided here.

---

the Mexican Collegiate Court clearly states that it proceeded with the amparo proceeding because Mr. Albor did not appear in person to ratify his withdrawal of the amparo.

[37] This is certainly not a criticism of the Mexican courts or the Mexican court system. It is simply an acknowledgement of the current status of the proceedings.

[38] Mr. Albor repeatedly cites to a recent decision of mine for the proposition that corporate governance issues are best resolved in the venue where the corporation is formed. *In re Apple Tree Life Sciences, Inc.*, Case No. 25-12177, 2026 WL 1025581 (Bankr. D. Del,. 2026). There, limited partners who filed a winding up petition in the Cayman Islands six months prepetition, filed a

21

Moreover, Mr. Albor's argument that the bankruptcy petition was filed in violation of the Precautionary Measures is incorrect. As I found (a position also taken by Justice Gutiérrez ), the Precautionary Measures did not prevent Wilmington Trust from exercising its pledge rights or replacing Mr. Albor because the Mexican Concurso Court did not adopt Mr. Albor's requested measures.

Further, I am not persuaded by Mr. Oscos's testimony that Precautionary Measure 2 prohibited Wilmington Trust's actions or CIBanco's actions as shareholders. Precautionary Measure 2 provides for "the suspension of all enforcement or extrajudicial proceedings against [Controladora Dolphins's] assets or rights." Mr. Oscos put significant emphasis on the word "rights" in his analysis. He testified that the use of the word "rights" includes Controladora Dolphin's rights and thus prohibited shareholders from changing corporate governance.[39] But, by refusing to send the Mr. Albor's requested letter to the Mexico City State Court, the Mexican Concurso Court has already made clear that the scope of its Precautionary Measures does not extend to the corporate governance dispute.[40] As quoted *supra*, the Mexican Concurso Court ruled that the litigation in the Mexico City State Court shows "no measure or ruling" issued against Controladora Dolphin's "assets and *rights*."

---

motion to dismiss and for relief from stay on the third day of the bankruptcy case. On the facts of that case, including a prompt request, limited relief from stay was granted.

[39] Justice Gutiérrez disagreed specifically opining that Precautionary Measure 2 only dealt with assets and rights of Controladora Dolphin and did not prohibit shareholders from exercising their rights *qua* shareholders.

[40] Mr. Oscos also testified that Wilmington Trust was prohibited from enforcing its pledge rights by Mr. Albor's proposed precautionary measures, and in particular number 14 (*see* fn 10). I found, however, that the Mexican Concurso Court did not adopt these requested precautionary measures. My general impression of Mr. Oscos's testimony is that he testified from a scholarly perspective of how the law should work, but did not focus as much on what the Mexican Concurso Court actually held and/or ordered.

Turning specifically to the *Rexene* factors, they do not support relief from stay either. As to the merits of the underlying dispute, while only a slight probability of success is required, it is not even clear that the Mexican Concurso Court will ever take up the matter. As discussed, the Mexican Concurso Court dismissed the concurso petition based on the logically antecedent determination that the petition was not properly supported in the first instance. While Mr. Albor has filed another amparo proceeding from that ruling, the amparo is in its infancy. So, currently, there is nothing before the Mexican Concurso Court for it to consider.

As for harms to the parties (Mr. Albor versus the bankruptcy estate), I find and conclude that this factor weighs in favor of the bankruptcy estate. There is no doubt that Mr. Albor had a significant personal stake in the governance dispute he champions. He was the founder of this company. But, at this point, there is great prejudice to the estate which was formed over a year ago, its creditors which have been working in the bankruptcy system to maximize recoveries, purchasers of assets from this estate who rely on the finality of their transactions and the DIP lender who has lent $43 million and is looking at the potential of a fifty percent recovery on the DIP financing.

For no given reason, Mr. Albor sat on his rights. I reject the argument that the Motion to Dismiss is timely because the March 31 Amparo Order put Mr. Albor back in charge of Controladora Dolphin as the Order did no such thing. To the extent Mr. Albor argues that his actions in Mexico means he did not sleep on his rights, those actions were in violation of the automatic stay. In any event, it is uncontestable that he took no action in this court to vindicate his rights. The balance of hardship thus weighs against him.

23

Weighing the totality of the circumstances and reviewing the *Rexene* factors, I decline to lift the automatic stay to permit any litigation to go forward in Mexico.

## II.    The Bankruptcy Case will not be Dismissed

As for the request to dismiss the case, for many of the same reasons, I decline to grant this relief as well. Section 1112(b) provides that a court shall convert or dismiss a case, whichever is in the best interests of creditors and the estate. Neither dismissal nor conversion is in the best interest of the creditors or the estate. I heard no evidence to support either action. Further, dismissal of the case serves no purpose. It will not solve Mr. Albor's problem; it will not put him back in charge. It may further confuse employees as to whom they are to report. It will no doubt stymie sales as section 363 relief and protection will no longer be available. And, it could create animal welfare issues.

Moreover, dismissal based on lack of authority is premised on a conclusion by the court that authority did not exist. Mr. Albor, however, expressly asks me not to decide that issue. Therefore, cause does not exist.

Finally, and once again, the motion comes too late in the case. All of the facts necessary to rule on whether the bankruptcy case was properly filed occurred prior to the bankruptcy filings. There is no excuse for Mr. Albor's delay in filing the motion.[41]

## III.    The Court will not Vacate its Prior Orders

As detailed above, my previous Orders finding Mr. Albor violated the automatic stay and awarding sanctions are final. The Orders were not appealed. The time for moving for relief under Federal Rule of Bankruptcy Procedure 9023 is long past. Motions under

---

[41] *See e.g. In re Energy Future Holdings Corp.*, 561 B.R. 630, 645-647 (Bankr. D. Del. 2016) (concluding motion to dismiss case filed 31 months after petition filed was barred by laches).

24

Federal Rule of Bankruptcy Procedure 9024 must be brought within a "reasonable time" and, generally, no more than a year later.  For all the reasons set forth above, this motion was not brought within a reasonable time as there is nothing new—no new facts, no mistakes and no misconduct by an opposing party.

Again, I reject Mr. Albor's stated reason for the timing of the Motion to Dismiss. The March 28 Amparo Order did not place him back in charge or remove Mr. Strom. Further, to the extent Mr. Albor is in an "impossible" position, he has put himself there by violating the automatic stay and this Court's prior orders.[42]

In any event, based on the evidence received, which confirms that Mr. Albor has been in continuous violation of the automatic stay and my previous Orders, there is no principled reason to vacate those Orders.

**Conclusion**

While Mr. Albor may prefer to litigate his disputes in the Mexican court system, his decision to ignore this Court for a year, continue to violate the automatic stay and his false certification have consequences.  The Motion to Dismiss is denied in its entirety.  A separate order will issue.

Dated:  August 4, 2026

LAURIE SELBER SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

---

[42] Mr. Albor has not explained how he is in compliance with the Orders of the Mexican City State Court discussed *supra*.

25